

**BORISON FIRM, LLC.**
Scott C. Borison (State Bar No. 289456)
*scott@borisonfirm.com*
1900 S. Norfolk St Ste 350
San Mateo CA 94403
Telephone: (301) 620-1016
Facsimile: (301) 620-1018

**SHEEHAN & ASSOCIATES, P.C.**
Spencer Sheehan (Pro Hac Vice)
spencer@spencersheehan.com
60 Cuttermill Rd, Ste 409
Great Neck, NY 11021
Telephone: (516) 303-0552
Facsimile: (516) 234-7800
*Counsel for Plaintiff and the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jennifer Fahey, individually, and on behalf of those similarly situated, | CASE NO. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **Demand for Jury Trial** |
| Whole Foods Market Inc., | |
| Defendant. | |

Formatted: Indent: First line: 0.25"

Deleted: Case No. 3:20-cv-03221-JSC

1

CLASS ACTION COMPLAINT

Plaintiff Jennifer Fahey ("Plaintiff"), on behalf of herself and others similarly situated brings this Class Action Complaint against Whole Foods Market, Inc. ("Defendant" or "Whole Foods"), and on the basis of personal knowledge, information and belief, and investigation of counsel, allege as follows:

**INTRODUCTION**

1.  Defendant manufactures distributes, markets, labels and sells almondmilk beverages purporting to be flavored only by vanilla under their Organic 365 brand ("Products" or "Vanilla Almondmilk").

2.  During the Class Period (as defined below), Plaintiff Fahey purchased the Vanilla Almondmilk in California.

3.  Whole Foods falsely and misleadingly markets the Products to consumers as having a primary characterizing flavor of "Vanilla" that comes from vanilla beans, from the vanilla plant.

Formatted: Centered



4.      In fact, the Product contains non-vanilla, artificial flavors, not disclosed to consumers and has less vanilla than consumers expect.

5.      The Product's front label representation of "Vanilla" "leads consumers to believe that it is flavored with vanilla extract, or another vanilla flavoring derived solely from vanilla beans, as defined in the federal standard of identity when in fact it is not."[1]

6.      Whole Foods charges a price premium for its Vanilla Almondmilk identified herein.

7.      Plaintiff seeks damages and an injunction to stop Whole Foods's false and misleading marketing practices with regards to its Vanilla Almondmilk.

_____

[1] Hallagan and Drake at 54; *See also* 21 U.S.C. §343(g) (requiring ingredients to be listed with "the name of the food specified in the definition and standard"); 21 C.F.R. § 101.4(a)(1) (requiring ingredients "be listed by common or usual name").

3

### JURISDICTION

8.      This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d).  The amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and the parties are citizens of different states.

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events and misrepresentations giving rise to Plaintiff's claims occurred in this District, and Defendant (1) is authorized to conduct business in this District and has intentionally availed itself of the laws and markets of this District through the promotion, marketing, distribution and sale of its products here, (2) resides in this District, and (3) is subject to personal jurisdiction in this District.

### PARTIES

10.     Plaintiff Jennifer Fahey is a resident of the City of San Francisco and County of San Francisco, California.  Plaintiff is a citizen of California. During the Class Period (as defined below), in California, she purchased Organic 365 Vanilla Almondmilk for personal, family, or household use on occasions including but not necessarily limited to almost every month from 2017 through 2019.

11.     Plaintiff Fahey purchased the 32-ounce version of the Vanilla Almondmilk at Whole Foods Market locations including 690 Stanyan St, San Francisco, CA 94117, Ocean Ave and 4th Street stores.

12.     Plaintiff would not have purchased or paid more for Vanilla Almondmilk had she realized that much, if not all, of the vanilla flavor came from non-vanilla plant sources.

13.     The front of the Product said "Vanilla" in large letters and placed against a different color background to make it stand out.

14.     Plaintiff relied upon these representations when she purchased the Product.  She believed that the vanilla flavor in the Product was only from vanilla beans and would come only from the vanilla plant.  Plaintiff would not have purchased the Product had Plaintiff understood the true flavor composition of the Product.  Plaintiff would purchase the Product again in the future if the Product were remedied to reflect Defendant's labeling and marketing claims for it.

4

15.     Defendant Whole Foods is a Delaware corporation, with its principal place of business in Austin, Texas.

**BACKGROUND**

16.     Demand for real vanilla "has been steadily increasing…due to consumer demand for natural foods that are free of artificial ingredients."[2]

17.     According to one flavor supplier, today's consumers "want real vanilla, not imitation [vanilla] flavoring."

18.     Nielsen has reported that 62% of consumers say they try to avoid artificial flavors.[3]

19.     Another study by New Hope Network concludes that "71% of consumers today are avoiding artificial flavors."[4]

20.     Label Insight determined that 76% of consumers avoid products with artificial flavors.[5]

21.     Natural flavors "almost always cost[s] much more than an artificial flavor," so companies and consumers are willing to pay higher prices for the real thing – orange flavor from oranges and vanilla flavor from vanilla, as opposed to orange flavor synthesized from lemons or vanillin (the main flavor molecule in vanilla) derived from wood pulp or petroleum derivatives.[6]

22.     Flavoring ingredients, especially for products labeled as vanilla, are typically the most expensive ingredient in a food, and vanilla has reached record high prices in recent years.[7]

---

[2] Chagrin Valley Soap & Salve Company, FAQs, Why Are The Prices of Vanilla Bean Products Always Increasing?
[3] Nielsen, Reaching For Real Ingredients: Avoiding The Artificial, Sept. 6, 2016.
[4] Alex Smolokoff, Natural color and flavor trends in food and beverage, Natural Products Insider, Oct. 11, 2019.
[5] Thea Bourianne, Exploring today's top ingredient trends and how they fit into our health-conscious world, March 26-28, 2018.
[6] David Andrews, Synthetic ingredients in Natural Flavors and Natural Flavors in Artificial flavors, Environmental Working Group (EWG).
[7] Finbarr O'Reilly, Precious as Silver, Vanilla Brings Cash and Crime to Madagascar, New York Times, Sept. 4, 2018.

23.     Vanilla's "desirable flavor attributes…make it one of the most common ingredients used in the global marketplace, whether as a primary flavor, as a component of another flavor, or for its desirable aroma qualities."[8]

24.     Vanilla's unique flavor cannot be duplicated by science due to over 200 compounds scientists have identified, including volatile constituents such as "acids, ethers, alcohols, acetals, heterocyclics, phenolics, hydrocarbons, esters and carbonyls."[9]

25.     An example of the compounds which provide vanilla's flavor are shown in table below, identified through gas chromatography-mass spectrometry ("GC-MS") of a sample of Simply Organic Madagascar Vanilla Extract.

_____

[8] Daphna Havkin-Frenkel, F.C. Bellanger, Eds., Handbook of Vanilla Science and Technology, Wiley, 2018; Kristiana Lalou Queen of flavors: Vanilla rises above transparency concerns to lead category, Food Ingredients First, Sept. 3, 2019 (describing vanilla as "versatile").

[9] Arun K. Sinha et al., "A comprehensive review on vanilla flavor: extraction, isolation and quantification of vanillin and other constituents," International Journal of Food Sciences and Nutrition 59.4 (2008): 299-326.

Table 2

Sheehan & Associates, P.C., Project #7643-2
Simply Organic Madagascar Pure Vanilla Extract
Production Code: 9274
Concentrated Ether Extract (Water-Soluble Components Washed Out) by GC-MS

Data File = TSQA4027

| MS Scan # | Area Integration | Peak Assignment | Peak Area % |
|---|---|---|---|
| 67 | 16132 | hexanal | 0.0206 |
| 71 | 16235 | butanediol isomer | 0.0207 |
| 81 | 57370 | butanediol isomer | 0.0732 |
| 103 | 36387 | 3-methylbutyric acid | 0.0464 |
| 115 | 33053 | furfural | 0.0422 |
| 141 | 27408 | butanal, diethyl acetal | 0.0350 |
| 262 | 18390 | 3-methylbutanal, diethyl acetal | 0.0235 |
| 281 | 25224 | hexanoic acid | 0.0322 |
| 289 | 2729 | methyl furfural | 0.0035 |
| 299 | 52183 | phenol + trace of benzaldehyde | 0.0665 |
| 349 | 2385 | 1H-pyrrole-2-carboxaldehyde | 0.0030 |
| 379 | 47287 | limonene + benzyl alcohol | 0.0603 |
| 397 | 13835 | heptanoic acid | 0.0176 |
| 409 | 31102 | gamma-hexalactone | 0.0397 |
| 415 | 19338 | p-cresol | 0.0247 |
| 425 | 4470 | hexanal, diethyl acetal | 0.0057 |
| 443 | 287479 | guaiacol | 0.3666 |
| 453 | 5947 | nonanal | 0.0076 |
| 477 | 10000 | phenylethyl alcohol | 0.0128 |
| 496 | 112067 | ? | 0.1429 |
| 505 | 44668 | benzoic acid + octanoic acid | 0.0570 |
| 522 | 4551 | diethyl succinate | 0.0058 |
| 536 | 2461 | ethyl benzoate | 0.0031 |
| 544 | 11769 | 1,2-benzenediol | 0.0150 |
| 555 | 145356 | 2-methoxy-4-methylphenol | 0.1854 |
| 567 | 2537 | methyl salicylate | 0.0032 |
| 587 | 8552 | hydroxy methyl furfural (HMF) | 0.0109 |
| 594 | 5555 | benzeneacetic acid | 0.0071 |
| 605 | 101562 | nonanoic acid | 0.1295 |
| 624 | 6802 | hydroquinone | 0.0087 |
| 631 | 3864 | 4-methoxybenzaldehyde (p-anisaldehyde) | 0.0049 |
| 642 | 6356 | ethyl nonanoate | 0.0081 |
| 653 | 53264 | 4-methoxybenzyl alcohol (p-anisyl alcohol) | 0.0679 |
| 676 | 14481 | cinnamyl alcohol | 0.0185 |
| 685 | 16094 | 3-hydroxybenzyl alcohol | 0.0205 |
| 718 | 12188570 | 3-hydroxybenzaldehyde + 4-ethoxymethylphenol | 15.5440 |
| 751 | 122634 | methyl cinnamte | 0.1564 |
| 759 | 60715743 | vanillin | 77.4301 |
| 796 | 90969 | methyl-p-methoxybenzoate (methyl paraben) | 0.1156 |
| 809 | 2228588 | vanillyl ethyl ether + trace of 4-hydroxy-3-methoxybenzyl alcohol | 2.8421 |
| 832 | 224829 | p-hydroxybenzoic acid | 0.2867 |
| 839 | 37335 | acetovanillone | 0.0476 |
| 892 | 950342 | vanillic acid | 1.2120 |
| 909 | 405589 | 3,4-dihydroxybenzaldehyde | 0.5172 |
| 935 | 82429 | 3,4-dihydroxy-5-methoxybenzaldehyde | 0.1051 |
| 954 | 6212 | ethyl homovanillate | 0.0079 |
| 975 | 78148 | syringaldehyde | 0.0997 |
| 1266 | 14130 | ethyl palmitate | 0.0180 |
| 1518 | 21477 | ethyl linoleate | 0.0274 |
| | 78411588 | Total | 100.0000 |

26.    These compounds can be detected and extracted because they have defined chemical structures.[10]

27.    While vanillin is the most abundant compound (MS Scan # 759, 77.4301 Peak Area %), numerous other compounds contribute to vanilla's taste in small amounts.

28.    Methyl cinnamate (MS Scan # 751) and p-cresol (MS Scan # 415) provide cinnamon and creamy flavor notes to vanilla.

[10] Kaj Petersen, Flavour and Fragrance Analysis: Wondrous Vanilla, The Column, Chromatography Online, November 7, 2014, Volume 10, Issue 20 ("To determine vanilla origin, and for quality control purposes, laboratories typically rely on headspace or thermal desorption techniques used in combination with gas chromatography–mass spectrometry (GC–MS).").

29.     In early 2018, in response to rampant misleading labeling of vanilla products, attorneys for the flavor industry urged their peers to truthfully label vanilla foods so that consumers are not misled. John B. Hallagan and Joanna Drake, The Flavor and Extract Manufacturers Association of the United States ("FEMA"), "Labeling Vanilla Flavorings and Vanilla-Flavored Foods in the U.S.," Perfumer & Flavorist, Vol. 43 at p. 46, Apr. 25, 2018 ("Hallagan & Drake") ("There are many current examples of food products that are labeled as 'vanilla' that are clearly mislabeled and therefore in violation of FDA regulations.").

30.     The authors explain that relevant regulations "require that food products be labeled accurately so that consumers can determine whether the product is flavored with a vanilla flavoring derived from vanilla beans, in whole or in part, or whether the food's vanilla flavor is provided by flavorings not derived from vanilla beans.[11]

31.     The authors noted "Adulteration of vanilla flavorings and foods containing them has long been a problem in the U.S. and there continue to be modern examples."

32.     The harms caused by misleading vanilla labeling include economic deception and use of toxic ingredients:

> While the concern at the time was for the "economic" adulteration of vanilla extract with an artificial and less valuable substance—synthetic vanillin—there was also some concern over the use of other adulterants such as coumarin that were thought to pose a possible safety concern. [12]

33.     To prevent consumer deception in the labeling of significant food products, the government established "food standards allow[ing] consumers to trust that a standardized food is what it purports to be because they establish[ed] explicit specifications for the standardized food."[13]

34.     Requirements for vanilla products were "established by the FDA in the 1960s over growing concern of adulteration of vanilla extract with less valuable substances," which

---

[11] Hallagan and Drake.

[12] John B. Hallagan and Joanna Drake, The Flavor and Extract Manufacturers Association of the United States, "Labeling Vanilla Flavorings and Vanilla-Flavored Foods in the U.S.," Perfumer & Flavorist, Vol. 43 at p. 46, Apr. 25, 2018.

[13] *Id.*

alleviated "potential consumer fraud by establishing specific requirements for vanilla extract and other standardized vanilla products."[14]

35.     The vanilla standards were promulgated to end practices which "deprive the consumer of value the product is represented to have, and for which the consumer pays," such as "the widespread and exceedingly serious adulteration of vanilla extracts that are now labeled 'pure.'"[15]

36.     At the time, the FDA stated that "the purposes of the standards are to assure that the consumer gets what is expected when purchasing vanilla products."[16]

37.     The FDA section chief in charge noted: "The prime purpose sought to be served by the standards adopted was to promote honest, fair dealing with housewives and other consumers of the flavorings covered by the standards."[17]

38.     Industry leaders supported vanilla standards to "insure, for the protection of both the consumers and our industry, that all vanilla products are correctly labeled and meet at least minimum standards."[18]

39.     The vanilla standards are:

[A] series of individual standards that describe the common or usual name and recipes for eight flavorings: vanilla extract, concentrated vanilla extract, vanilla flavoring, concentrated vanilla flavoring, vanilla powder, vanilla-vanillin extract, vanilla-vanillin flavoring, and vanilla-vanillin powder.

These eight individual standards, at 21 CFR 169.175 – 169.182, are supported by specific requirements for the vanilla beans that may be used to produce vanilla extract and other vanilla products.[19]

40.     Three of these standards "combine vanilla extract with the primary chemically defined flavoring substance in vanilla beans, vanillin."[20]

---

[14] *Id*.
[15] Letter from McCormick & Company Inc. to HEW Secretary, January 15, 1960.
[16] Press Release U.S. Department of Health, Education, and Welfare, September 13, 1963.
[17] Memorandum of Telephone Conversation between Mr. Alfred Daibock, Commercial Policy Division, Department of State and Tom Bellis, Food Standards Branch, FDA.
[18] Letter from McCormick & Company Inc. to HEW Secretary, January 15, 1960.
[19] *Id*.
[20] *Id*.

41.     That Hallagan and Drake felt they needed to publicly identify the misleading labeling of vanilla products to their peers in the flavor and food industry is indicative that many are unaware, misunderstand or ignore vanilla labeling requirements.

42.     To correctly label foods with a characterizing flavor of vanilla, Hallagan and Drake stress two key points:

    a.  "The federal standards of identity for vanilla flavorings at 21 CFR Section 169 [and ice cream at 21 CFR Section 135,] and their labeling requirements, take precedence over the general flavor and food labeling regulations at 21 CFR Section 101.22;" and

    b.  "The federal standard of identity for vanilla flavorings at 21 CFR Section 169 applies to both the flavorings sold directly to consumers and to food manufacturers [for use in finished food products]."[21]

43.     This confusion in labeling vanilla products is exacerbated because the regulations are not complete on their own, but require incorporating external documents of limited availability. Hallagan and Drake ("A variety of resources are available to flavor and food manufacturers and consumers that facilitate an understanding of the proper labeling of vanilla flavorings and vanilla-flavored foods.").

44.     These resources include:

    [A] formal advisory opinion issued by FDA and a variety of regulatory correspondence issued by FDA in response to inquiries from other federal agencies, industry, and the public.

45.     The regulatory correspondence clarifies the relationship between the general flavor regulations and vanilla regulations:

    It is important to emphasize that these [at 21 CFR Sections 101.22(i)(1), (2) and (3)] regulations apply only to foods that are not subject to a federal standard of identity.

    …

_____

[21]

These regulations, found at 21 CFR Section 101.22, apply to all foods except for those subject to a federal standard of identity and this has often resulted in some confusion with the standards governing vanilla flavorings and ice cream that have their own requirements for proper labeling as required in FFDCA Section 403.

Hallagan and Drake (emphasis added).

46.     A significant distinction noted by Hallagan and Drake is that:

The U.S. federal standard of identity for vanilla flavorings does not provide for the designation of any vanilla flavorings as "vanilla with other natural flavors" or "vanilla WONF."[22]

47.     The purpose of not providing for the designation of "Vanilla WONF" was to prevent consumers from being misled by a small amount of vanilla, boosted by artificial vanilla flavors, including vanillin.

48.     According to Hallagan and Drake, "Severe price and supply dislocations have historically coincided with changes in practices related to the composition and labeling of vanilla flavorings."[23]

49.     Where vanilla prices are high, "synthetic vanillin-based flavorings may be used to replace vanilla extract, or to adulterate vanilla extract in violation of the federal standard of identity."

50.     Moreover, "Recent increased emphasis on consumers' desires for foods containing 'natural' food ingredients has resulted in the exploration of vanilla flavoring alternatives that are not derived from vanilla beans."

51.     These two trends – high vanilla prices and an industry focus on providing "natural flavors" – have coincided with a third development – the manufacture of vanillin through a purportedly natural process, such as fermentation.

52.     Many flavor suppliers have mistakenly touted their vanillin products as "natural vanillin" and promoted such flavors as replacements for vanilla extract. *See* Kristine Sherred, Natural vanillin: Is it the stable flavor source the industry needs? Confectionary News, June 14, 2019 (erroneously stating that the "FDA has certified only Rhovanil as 'natural vanillin' since

_____

[22] Labeling Vanilla Flavors.

[23] *Id*.

changing its rules in 2007.") compare with Hallagan and Drake, p. 48 ("FDA has clearly stated that the only vanillin that the agency will regard as 'natural vanillin' is vanillin derived from vanilla beans, which is rarely if ever produced for economic reasons.").

53.     Producers of vanillin made through natural processes promote it as a substitute for "real vanilla extract drop-for-drop."

54.     This "natural vanillin" is then added to real vanilla, and companies erroneously and/or intentionally identify it as a "natural flavor" to consumers.

55.     California has adopted all federal regulations for food labeling through the Sherman Law, which means the requirements explained by Hallagan and Drake apply to labeling of vanilla products in California.

## SPECIFIC MISREPRESENTATIONS, MATERIAL OMISSIONS, AND DECEPTIVE ACTS

### Misleading and Deceptive Flavor Designation

56.     A food is considered misbranded if "its labeling is false or misleading in any particular." 21 U.S.C. § 343(a).

57.     A food label contains numerous pieces of information including a (1) statement of identity and/or common or usual name, (2) flavor designation and (3) ingredient list.

58.     These consumer preferences are reflected in identical federal and California state regulations requiring a food's label to accurately describe the nature of the food product and its characterizing flavors. 21 C.F.R. § 102.5(a).

59.     A recognizable primary flavor identified on the front label of a food is referred to as a "characterizing flavor." 21 C.F.R. § 101.22.

60.     Based on the term "Vanilla" and the absence of any qualifying terms, consumers expect the Product's vanilla taste to be only from vanilla beans. See 21 C.F.R. § 101.22(i)(1) ("If the food contains no artificial flavor which simulates, resembles or reinforces the characterizing flavor, the name of the food on the principal display panel or panels of the label shall be accompanied by the common or usual name of the characterizing flavor, e.g., 'vanilla'").

61.     This conclusion is consistent with a consumer survey commissioned by plaintiff's counsel, finding that over seventy-one (71) percent of consumers expected the Product's vanilla taste "comes from vanilla beans" from the vanilla plant. Exhibit "A," Propeller Insights, Report for Project - 081720-2 - Milk Alternative Study 2 V2 Survey #5787321, August 17, 2020.

62.     When asked to consider whether they would be less likely to purchase the Product had they known the vanilla flavoring did not come from the vanilla plant, almost sixty (60) percent agreed. Exhibit "A," p. 4.

63.     However, the ingredient list discloses the Product is flavored by "natural flavor" in addition to "vanilla extract."

INGREDIENTS: ORGANIC ALMONDMILK (FILTERED WATER, ORGANIC ALMONDS), ORGANIC NATURAL FLAVOR, SEA SALT, ORGANIC VANILLA EXTRACT, TRICALCIUM PHOSPHATE, GELLAN GUM, ORGANIC LOCUST BEAN GUM, VITAMIN A PALMITATE, ERGOCALCIFEROL (VITAMIN D2), DL-ALPHA-TOCOPHEROL ACETATE (VITAMIN E), CYANOCOBALAMIN (VITAMIN B12).

64.     The representation of the Product as "Vanilla" is misleading because the "Natural Flavor" is a non-vanilla, artificial vanilla flavor which provides much of the Product's vanilla taste, yet this is not disclosed to consumers.

65.     This conclusion is supported by GC-MS analysis, a scientific method capable of targeted and non-targeted analysis.

13

Table 1

Sheehan & Associates, P.C., Project #7549
Whole Foods 365 Organic Unsweetened Vanilla Almond Milk (32 FL OZ Tetra Pak)
Production Code: 9221P8F2A
Methylene Chloride Extract of 10.0 g with 1 ppm Matrix-Spiked Int. Std. by P&T-TD-GC-MS

Data File = TSQA3572

| MS Scan # | Area Integration | Peak Assignment | Conc. PPM w/w |
|---|---|---|---|
| 202 | 44876 | acetic acid | 0.013 |
| 245 | 540855 | diacetyl | 0.155 |
| 341 | 14811 | acetoin | 0.004 |
| 451 | 89076 | hexanal | 0.025 |
| 525 | 23381 | furfuryl alcohol | 0.007 |
| 544 | 15460 | pentanoic acid | 0.004 |
| 589 | 32667 | dimethyl sulfone | 0.009 |
| 603 | 146173 | 2,5-dimethylpyrazine | 0.042 |
| 663 | 175152 | hexanoic acid | 0.050 |
| 673 | 121456 | benzaldehyde | 0.035 |
| 692 | 36085 | 2-pentylfuran | 0.010 |
| 752 | 270443 | benzyl alcohol | 0.077 |
| 810 | 284391 | guaiacol | 0.081 |
| 818 | 210679 | nonanal | 0.060 |
| 865 | 103867584 | maltol | 29.722 |
| 881 | 534157 | octanoic acid | 0.153 |
| 888 | 94433 | benzoic acid | 0.027 |
| 920 | 56519 | 2-methoxy-4-methylphenol | 0.016 |
| 936 | 3494636 | naphthalene-d8 (internal standard) | 1.000 |
| 974 | 651320 | nonanoic acid | 0.186 |
| 1016 | 297882 | 2,4-decadienal | 0.085 |
| 1040 | 516248 | 2,4-decadienal | 0.148 |
| 1064 | 90476 | decanoic acid | 0.026 |
| 1082 | 16433768 | piperonal | 4.703 |
| 1139 | 100286288 | vanillin | 28.697 |
| 1171 | 200409 | vanillyl ethyl ether | 0.057 |
| | | **Total (excluding internal standard)** | **64.394** |

66.     Approximately twenty-five (25) flavor compounds were detected, of which several are also found in vanilla extract.

67.     The absence of many of the compounds associated with vanilla, typically at levels less than 1 PPM, means the Product contains a smaller amount of vanilla than consumers expect, based upon the unqualified front label of "Vanilla."

68.     This means the Product contains a smaller amount of vanilla than consumers expect, based upon the unqualified front label of "Vanilla."

69.     The analysis revealed the Product contains "an abnormal excess of vanillin (MS Scan # 1139, 28.697 PPM) relative to the profile of minor components in a vanilla preparation," indicating vanillin from non-vanilla sources. *See* Sinha at 319-20.

70.     The presence of added vanillin and less vanilla than expected is supported by disparate ratios of compounds detected in the Product.

14

71.     Consider that the ratio of vanillin to p-hydroxybenzoic acid in the sample of vanilla extract is 270 (vanillin, MS Scan # 759, 77.4301 divided by p-hydroxybenzoic acid, MS Scan # 832, 0.2867).

72.     P-hydroxybenzoic acid is one of the compounds used to evaluate the authenticity of vanilla ingredients.[24]

73.     In Defendant's Product, if all the vanillin came from vanilla beans, it would be expected to contain p-hydroxybenzoic acid at 0.10 PPM.

74.     That p-hydroxybenzoic acid was not detected – despite this compound being analyzed for – does not mean the Product does not contain vanilla – after all, it is present in low amounts in real vanilla.

75.     Instead, it means at least some of the vanillin is from non-vanilla sources.

76.     Additionally, the ratio of vanillin to vanillyl ethel ether (0.057 PPM) in the Product is 503, compared to 27 (vanillin, 77.4301 divided by vanillyl ethel ether, 2.8421) in the sample of Simply Organic Madagascar Pure Vanilla Extract.

77.     Vanillyl ethel ether is a compound seldom used on its own for flavoring, because it forms in cured vanilla beans.

78.     The cause of the disparity in the ratios of vanillin to vanillyl ethel ether is because the Product contains added vanillin, since vanillyl ethel ether will only be present where the entire vanilla bean is used.

79.     Further support for the presence of added vanillin is based on the typical usage of vanilla at not greater than one percent of the total weight of ingredients.

80.     The absolute amount of vanillin in such a percentage would be approximately 0.1% or 10 PPM.

81.     However, the vanillin content of 28.697 PPM is almost four times greater than if a standard amount of vanilla was used.

---

[24] K. Gassenmeier and E. Binggeli, Vanilla Bean Quality – A Flavour Industry View, Expression of Multidisciplinary Flavour Science, Givaudan Schweiz AG, Ueberlandstrasse 138, CH-8600 Switzerland.

82. The Product also contains maltol, which the FDA lists as an artificial flavor. *See* 21 C.F.R. § 172.515(b) ("Synthetic flavoring substances and adjuvants.").

83. Though maltol is sometimes detected in vanilla at levels between 0.004 and 0.01 PPM, its presence in the Product at 29.722 PPM means it was added to the Product as a component of the "Natural Flavor."

84. Maltol "can improve overall flavor, potentiate sweetness, increase the sensation of creaminess" and has "a mild flavor and sweet caramel-like odor." [25]

85. Maltol "can help to smooth authentic style vanilla bean flavors" at modest levels.[26]

86. The Product contains piperonal (heliotropine) (4.703 PPM), an artificial flavor not found in vanilla. See 21 C.F.R. § 172.515(b) ("Synthetic flavoring substances and adjuvants.").

87. Piperonal contributes "a sweet vanilla olfactory note as well as a sweet, aromatic, vanilla, and benzaldehyde taste" and imparts "vanilla flavors to food and beverage products."

88. The flavor analysis supports the inferences and allegations that the "Natural Flavor" consists of compounds which enhance, resemble, simulate, reinforce and extend the "complex array of flavor notes and aromas" of vanilla.[27]

89. The relation of the "Natural Flavor" to the "Vanilla Flavor" *appears* to trigger the requirement that the front label state "With Other Natural Flavor." *See* 21 C.F.R. § 101.22(i)(1)(iii) (use of some flavor from the named characterizing food ingredient, supplemented by flavor from natural sources other than the named flavor requires a food to be labeled "With Other Natural Flavor" (WONF)).[28]

90. However, Hallagan and Drake emphasize that vanilla is the one exception to the "WONF" requirement:

---

[25] Lisa Kobs, The Sweet Taste of Success – Part Two, Food Ingredients Online, 1998; Maltol, UL Prospector, Bryan W Nash & Sons Ltd.
[26] John Wright, Flavor Bites: Maltol, Perfumer & Flavorist, June 2020.
[27] Vanilla, Taste Foundations, Virginia Dare Company.
[28] Hallagan and Drake, FEMA GRAS and U.S. Regulatory Authority: U.S. Flavor and Food Labeling Implications, Perfumer & Flavorist, Oct. 25, 2018; Charles Zapsalis et al., *Food chemistry and nutritional biochemistry*. Wiley, 1985, p. 611 (describing the flavor industry's goal to develop vanilla compound flavors "[T]hat *Seem*[s] to be Authentic or at Least Derived from a Natural Source") (emphasis added).

The standards for vanilla extract and the other standardized vanilla products at 21 CFR 169 expressly do not provide WONF designation. This means that a flavoring mixture of vanilla extract and vanillin produced through a "natural" process (i.e. a process consistent with the definition of natural flavor at 21 CFR Section 101.22(a)(3)) cannot be described as "vanilla extract WONF," "vanilla WONF" or other similar descriptive terms.[29]

Labelling Vanilla.

91.     The Product's use of flavor ingredients such as artificial vanillin, piperonal and maltol with vanilla, without designating these flavors as artificial is deceptive and misleading to consumers.

92.     According to Hallagan and Drake, the FDA first indicated this in 1983, when it stated:

FDA will treat natural flavor compounds that simulate vanilla but are not derived from vanilla beans as artificial flavors that simulate the natural characterizing flavor.[30]

93.     In all circumstances, according to FEMA:

[V]anillin is characterizing for vanilla and [that] the addition of vanillin, whether derived from lignin or from other sources, must be clearly declared as in one of the three standardized vanilla flavorings or else the flavoring (most likely to be vanilla extract) is adulterated as would be any food containing it. [31]

94.     These "standardized vanilla flavorings" include vanilla-vanillin extract, which is a combination of vanilla and non-vanilla vanillin. *See* 21 C.F.R. § 169.180(b) ("Vanilla-vanillin extract"); 21 C.F.R. § 169.181(b) ("Vanilla-vanillin flavoring").

95.     The addition of non-vanilla flavors, including vanillin and maltol, to enhance the taste of a standardized vanilla ingredient, requires the resulting combination flavor be designated as an artificial (or imitation) flavor and reflected on the ingredient list and front label.

96.     The Product's ingredient list is misleading because even assuming the "Natural Flavor" is from natural source material made in a natural process, it fails to disclose the presence of vanillin, which must be disclosed as an artificial flavor when paired with vanilla, piperonal and

---

[29] Hallagan and Drake, p. 46.
[30] Hallagan and Drake, p. 48.
[31] Hallagan and Drake.

maltol. *See* 21 C.F.R. § 169.181(b) ("Vanilla-vanillin flavoring") (requiring ingredient list to state "'contains vanillin, an artificial flavor (or flavoring).'"); Labeling Vanilla.

97.     Defendant's Product, "containing vanillin derived from a non vanilla bean source needs to be labeled as artificially flavored [because] the food is characterized/labeled as vanilla flavored." FDA, Letter, Margaret-Hanna Emerick to Richard Brownell, February 25, 2016.

98.     The front label is misleading to consumers because it does not state "artificial flavor," based on the presence of vanillin, piperonal and maltol as part of the "Natural Flavor."

99.     By omitting "artificial flavor" or "artificially flavored" from the front label, consumers are not told that the Product's taste is not provided exclusively, or even predominantly, by vanilla beans, but by artificial vanillin, piperonal and maltol.

100.     Consumers, including Plaintiff, are not capable of knowing the composition of the "Natural Flavor" ingredient by looking at the ingredient list and are misled to believe that the Product contains more vanilla than it does.

101.     The Product's front label does not state "contains some vanilla" or "made with a drop of vanilla," but designates the characterizing flavor as "Vanilla" without qualifying terms and lists "Vanilla."   This is misleading to consumers, as well as violating FDA regulations.

102.     Consumers, including Plaintiff, expect the Product's vanilla taste to only come from vanilla beans because they are accustomed to labels with terms such as "flavored," "artificial flavors" and "with other natural flavors." See 21 C.F.R. § 101.22(i)(1)(i) ("e.g., 'natural strawberry flavored shortcake,' or 'strawberry flavored shortcake'."); 21 C.F.R. § 101.22(i)(1)(ii) and 21 C.F.R. § 101.22(i)(2) ("artificially flavored"); 21 C.F.R. § 101.22(i)(1)(iii) ("with other natural flavor").

103.     These qualifying and descriptive terms tell consumers that a food's characterizing flavor does not exclusively come from its characterizing food ingredient.

## Reliance and Economic Injury

104.     When purchasing the Organic 365 Vanilla Almondmilk, Plaintiff sought a product with a materially greater amount of vanilla than it actually contained.

105.    When purchasing the Organic 365 Vanilla Almondmilk, Plaintiff sought a product that was natural in that its vanilla flavor was provided exclusively by vanilla beans.

106.    Plaintiff read and relied on Whole Foods' false and misleading product name – Vanilla Almondmilk), statements, statement of identity and misleading claims in its labeling and advertising of the product.

107.    Plaintiff also saw and relied on statements on the Vanilla Almondmilk, which misleadingly reference only "vanilla" even though much, if not all, of the vanilla flavoring comes from non-vanilla sources.

108.    Plaintiff purchased Organic 365 Vanilla Almondmilk, and paid more for it than she would have paid believing the product had qualities she sought (*e.g.*, only vanilla flavor from vanilla beans from the vanilla plant) based on the misleading labeling and marketing; but the product was unsatisfactory to her because those representations were false and misleading.

109.    Organic 365 Vanilla Almondmilk costs significantly more per ounce at Defendant's stores compared to other similar products which lack prominent and unqualified front label claims of "Vanilla."

110.    Plaintiff paid more for Organic 365 Vanilla Almondmilk than she would have had she not been misled by the false and misleading labeling and advertising complained of herein.

111.    For these reasons, the Products were worth less than what Plaintiff paid for them.

112.    Plaintiff purchased Vanilla Almondmilk based on the false and misleading representations described herein.

113.    Plaintiff lost money as a result of Whole Foods' deception in that Plaintiff did not receive what she paid for.

114.    Plaintiff altered her position to her detriment and suffered damages in an amount equal to the amount she paid for the Product.

115.    By engaging in its misleading and deceptive marketing, sales and pricing scheme, Whole Foods reaped and continues to reap increased sales and profits.

## CLASS ACTION ALLEGATIONS

116.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.  The class that Plaintiff seeks to represent (the "Class" or "the California Class") is composed of and defined as follows:

> All persons residing in California who have purchased Vanilla Almondmilk for their own use (which includes feeding their families), and not for resale, since May 9, 2014.  Excluded from the Class are: governmental entities; Defendant; any entity in which Defendant has a controlling interest; Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns; and, any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

117.    For the purposes of this Complaint, the term "Class Members" refers to all members of the Class, including the Plaintiff .

118.    This action is maintainable as a class action under Federal Rules of Civil Procedure Rule 23(a), and (b)(2) and (b)(3).

119.    **Numerosity**.  The Class consists of thousands of persons throughout the State of California.  The Class is so numerous that joinder of all members is impracticable, and the disposition of their claims in a class action will benefit the parties and the Court.

120.    **Commonality and Predominance**.  The questions of law and fact common to the Class has the capacity to generate common answers that will drive resolution of this action.  They predominate over any questions affecting only individual class members.  Common questions of law and fact include, but are not limited to, the following:

a.    Whether Whole Foods contributed to, committed, or is responsible for the conduct alleged herein;

b.    Whether Whole Foods's conduct constitutes the violations of law alleged herein;

c.    Whether Whole Foods acted willfully, recklessly, negligently, or with gross negligence in the violations of laws alleged herein;

d.    Whether Class Members are entitled to injunctive relief; and

e.    Whether Class Members are entitled to restitution and damages.

121.    By seeing the name, labeling, display and marketing of the Product, and by purchasing Organic 365, all Class Members were subject to the same wrongful conduct.

122.    Absent Whole Foods's material deceptions, misstatements and omissions, Plaintiff and other Class Members would not have purchased Vanilla Almondmilk at all, or would have paid less than what they did for it.

123.    **Typicality**.  Plaintiff's claims are typical of the claims of the Class, respectively, because she purchased Organic 365 Vanilla Almondmilk products and was injured thereby.  The claims of Plaintiff and other Class Members are based on the same legal theories and arise from the same false, misleading and unlawful conduct.

124.    **Adequacy**.  Plaintiff is an adequate representative of the Class because her interests do not conflict with those of other Class Members.  Each Class Member is entitled to damages reflecting a similar and discrete purchase or purchases that each Class Member made.  Plaintiff has retained competent and experienced class action counsel, who intends to prosecute this action vigorously.  The Class Members' interests will be fairly and adequately protected by Plaintiff and her counsel.

125.    **Superiority**.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because joinder of all Class Members is impracticable.  The amount at stake for each consumer, while significant, is such that individual litigation would be inefficient and cost-prohibitive.  Plaintiff anticipates no difficulty in the management of this action as a class action.

126.    This Court should certify a class under Rule 23(b)(2) because Defendant has acted or refused to act on grounds that apply generally to the Class, by making illegal, unfair, misleading and deceptive representations and omissions regarding Organic 365 Vanilla Almondmilk.

127.    This Court should certify a class under Rule 23(b)(3) because the common issues identified above predominate over any questions affecting individual members and a class is superior to other available methods to fairly and efficiently adjudicate the claims.

128.   **Notice to the Class**.  Plaintiff anticipates that this Court can direct notice to the Class, to be effectuated by publication in major media outlets and the Internet.

**FIRST CLAIM**
**(ON BEHALF OF THE CALIFORNIA CLASS)**
**(Violation of California Business & Professions Code §§ 17200 *et seq.* –**
**Unlawful Conduct Prong of the UCL)**

129.   Plaintiff Clark incorporates by reference all allegations contained in the complaint as if fully set forth herein. California Business & Professions Code section 17200 ("UCL") prohibits any "unlawful, unfair or fraudulent business act or practice."

130.   The acts, omissions, misrepresentations, practices, and non-disclosures of Whole Foods, as alleged herein, constitute "unlawful" business acts and practices in that they violate the Federal Food, Drug, and Cosmetic Act ("FFDCA") and its implementing regulations, including, at least, the following sections:

131.   21 U.S.C. § 343, which deems food misbranded when the label contains a statement that is "false or misleading in any particular," with "misleading" defined to "take[] into account (among other things) not only representations made or suggested by statement, word, design, device, or any combination thereof, but also the extent to which the labeling or advertising fails to reveal facts material";

132.   21 U.S.C. § 321(n), which states the nature of a false and misleading advertisement;

133.   21 C.F.R. § 101.18(b), which prohibits true statements about ingredients that are misleading in light of the presence of other ingredients;

134.   21 C.F.R. Part 169, Food Dressings and Flavorings;

135.   21 C.F.R. § 101.22(i), which sets forth a framework to truthfully identify the source of a product's flavor; and

136.   21 C.F.R. § 102.5 which prohibits misleading common or usual names.

137.   Whole Foods's conduct is further "unlawful" because it violates the California False Advertising Law ("FAL") and the Consumer Legal Remedies Act ("CLRA"), as discussed in the claims below.

138.     Whole Foods's conduct also violates the California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Saf. Code section 109875, *et seq.* ("Sherman Law"), including, at least, the following sections:

139.     Section 110100 (adopting all FDA regulations as state regulations);

140.     Section 110290 ("In determining whether the labeling or advertisement of a food … is misleading, all representations made or suggested by statement, word, design, device, sound, or any combination of these, shall be taken into account.  The extent that the labeling or advertising fails to reveal facts concerning the food … or consequences of customary use of the food … shall also be considered.");

141.     Section 110390 ("It is unlawful for any person to disseminate any false advertisement of any food…. An advertisement is false if it is false or misleading in any particular.");

142.     Section 110395 ("It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food … that is falsely advertised.");

143.     Section 110398 ("It is unlawful for any person to advertise any food, drug, device, or cosmetic that is adulterated or misbranded.");

144.     Section 110400 ("It is unlawful for any person to receive in commerce any food … that is falsely advertised or to deliver or proffer for delivery any such food…."); and

145.     Section 110660 ("Any food is misbranded if its labeling is false or misleading in any particular.").

146.     Each of the challenged statements made and actions taken by Whole Foods violates the FFDCA, the CLRA, the FAL, and the Sherman Law, and therefore violates the "unlawful" prong of the UCL.

147.     Whole Foods leveraged its deception to induce Plaintiff and members of the Class to purchase products that were of lesser value and quality than advertised. Whole Foods's deceptive advertising caused Plaintiff  and members of the Class to suffer injury in fact and to lose money or property, as it denied them the benefit of the bargain when they decided to purchase Vanilla Almondmilk over other products that are less expensive, and contain virtually

the same or immaterially different amounts of vanilla.  Had Plaintiff  and the members of the

Class been aware of Whole Foods's false and misleading advertising tactics, they would not have

purchased Organic 365 Vanilla Almondmilk at all, or would have paid less than what they did for

it.

148.    In accordance with California Business & Professions Code section 17203,

Plaintiff  seeks an order enjoining Whole Foods from continuing to conduct business through

unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising

campaign.

149.    Plaintiff  also seeks an order for the disgorgement and restitution of all monies

from the sale of Organic 365 Vanilla Almondmilk products that were unjustly acquired through

acts of unlawful, unfair and/or fraudulent competition.

**SECOND CLAIM**
**(ON BEHALF OF THE CALIFORNIA CLASS)**
**(Violation of California Business & Professions Code §§ 17200, *et seq.* –**
**Unfair and Fraudulent Conduct Prong of the UCL)**

150.    Plaintiff Clark incorporates by reference all of the allegations of the preceding

paragraphs as if fully set forth herein.

151.    California Business & Professions Code section 17200 prohibits any "unlawful,

unfair or fraudulent business act or practice."

152.    The false and misleading labeling of Organic 365 Vanilla Almondmilk, as alleged

herein, constitutes "unfair" business acts and practices because such conduct is immoral,

unscrupulous, and offends public policy.  Further, the gravity of Whole Foods's conduct

outweighs any conceivable benefit of such conduct.

153.    The acts, omissions, misrepresentations, practices, and non-disclosures of Whole

Foods as alleged herein constitute "fraudulent" business acts and practices, because Whole

Foods's conduct is false and misleading to Plaintiff and members of the Class.

154.    Whole Foods's labeling and marketing of Organic 365 Vanilla Almondmilk is

likely to deceive Class Members about the flavoring source and amount of vanilla in Vanilla

Almondmilk.

155.    Whole Foods either knew or reasonably should have known that the claims and statements on the labels of Organic 365 Vanilla Almondmilk were likely to deceive consumers.

156.    In accordance with California Business & Professions Code section 17203, Plaintiff seeks an order enjoining Whole Foods from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

157.    Plaintiff Clark also seeks an order for the disgorgement and restitution of all monies from the sale of Organic 365 Vanilla Almondmilk products that were unjustly acquired through acts of unlawful, unfair and/or fraudulent competition.

**THIRD CLAIM**
**(ON BEHALF OF THE CALIFORNIA CLASS)**
**(Violation of California Business & Professions Code §§ 17500, *et seq.* – False and Misleading Advertising)**

158.    Plaintiff incorporates by reference all allegations contained in the complaint as if fully set forth herein.

159.    California False Advertising Law (Cal. Business & Professions Code sections 17500 and 17508) prohibits "mak[ing] any false or misleading advertising claim."

160.    As alleged herein, Whole Foods, in its labeling of Organic 365 Vanilla Almondmilk, makes "false [and] misleading advertising claim[s]," as it deceives consumers as to the flavor composition and amount of vanilla in Vanilla Almondmilk.

161.    In reliance on these false and misleading advertising claims, Plaintiff and members of the Class purchased and used Organic 365 Vanilla Almondmilk without the knowledge that Organic 365 Vanilla Almondmilk did not get its vanilla taste from vanilla beans.

162.    Whole Foods knew or should have known that its labeling and marketing was likely to deceive consumers.

163.    As a result, Plaintiff and the Class are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Whole Foods was unjustly enriched.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and other members of the proposed Class herein, prays for judgment and relief on all of the legal claims as follows:

A.   Certification of the Class, certifying Plaintiff as representative of the Class, and designating Plaintiff's counsel for the Class;

B.   A declaration that Defendant has committed the violations alleged herein;

C.   For restitution and disgorgement pursuant to, without limitation, the California Business & Professions Code §§ 17200, *et seq.* and Cal Civ. Code § 1780;

D.   For declaratory and injunctive relief pursuant to, without limitation, the California Business & Professions Code §§ 17200, *et seq.* and 17500, *et seq.*;

E.   An award of compensatory damages, the amount of which is to be determined at trial;

F.   For punitive damages;

G.   For interest at the legal rate on the foregoing sums;

H.   For attorneys' fees;

I.   For costs of suit incurred; and

J.   For such further relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all causes of action so triable.

Dated:  September 27, 2020

**Borison Firm, LLC.**

/s/Scott Borison
Scott C. Borison (State Bar No. 289456)
1900 S. Norfolk St Ste 350
San Mateo CA 94403
Telephone: (301) 620-1016
Facsimile:  (301) 620-1018
scott@borisonfirm.com

**Sheehan & Associates, P.C.**
Spencer Sheehan (*Pro hac vice forthcoming*)
60 Cuttermill Road Ste 409
Great Neck NY 11021
Tel: (516) 303-0552
Fax: (516) 234-7800
spencer@spencersheehan.com

*Counsel for Plaintiff and the Proposed Class*

27