1  BRIAN R. BLACKMAN (SBN 196996)
   bblackman@blaxterlaw.com
2  J.T. WELLS BLAXTER (SBN 190222)
   wblaxter@blaxterlaw.com
3  DAVID P. ADAMS (SBN 312003)
   dadams@blaxterlaw.com
4  BLAXTER | BLACKMAN LLP
   601 California Street, Suite 1505
5  San Francisco, California 94108
   Telephone: (415) 500-7700
6
   Attorneys for defendant WHOLE FOODS
7  MARKET CALIFORNIA, INC.

8

9                  UNITED STATES DISTRICT COURT

10                NORTHERN DISTRICT OF CALIFORNIA

11  JENNIFER FAHEY, individually, and on          Case No. 20-cv-06737-JST
    behalf of those similarly situated,
12                                                **DEFENDANT'S NOTICE OF MOTION
                     Plaintiff,                   AND MOTION TO DISMISS
13                                                PLAINTIFF'S FIRST AMENDED
              v.                                  COMPLAINT; MEMORANDUM OF
14                                                POINTS AND AUTHORITIES**
    WHOLE FOODS MARKET CALIFORNIA,
15  INC.                                          Date:   February 24, 2021
                                                  Time:   2:00 P.M.
16                   Defendant.                   Dept.:  6, 2nd Floor

17                                                The Honorable Jon S. Tigar

18

19

20

21

22

23

24

25

26

27
                                                           Case No. 20-CV-06737-JST
28                                                         DEF.'S MTN. TO DISMISS FAC

# NOTICE OF MOTION AND MOTION TO DISMISS

TO THE HONORABLE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on February 24, 2021 at 2:00 P.M., or as soon thereafter as counsel may be heard in Courtroom 6 of the above-entitled Court, located in the United States District Court – Oakland Courthouse, 1301 Clay Street, Oakland, California 94612, defendant Whole Foods Market California, Inc. ("WFM California"), will and hereby does move to dismiss plaintiff Jennifer Fahey's ("Plaintiff") First Amended Complaint ("FAC") pursuant to Fed. R. Civ. 12(b)(6). WFM California moves to dismiss Plaintiff's claims on the grounds that the FAC does not alleged a plausible theory of deception and Plaintiff has an adequate remedy at law.

This Motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, all other pleadings, papers, records and documentary materials on file in this action, and such further evidence and argument as the Court may allow at the hearing on this Motion.

Dated: January 6, 2021                     BLAXTER | BLACKMAN LLP


                                       By _____
                                              /s/ *Brian R. Blackman*
                                            BRIAN R. BLACKMAN
                                            J.T. WELL BLAXTER
                                            DAVID P. ADAMS
                                            Attorneys for Defendant
                                       WHOLE FOODS MARKET CALIFORNIA, INC.

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................1

I.      STATEMENT OF ISSUES TO BE DECIDED .................................................1

II.     INTRODUCTION..............................................................................................1

III.    FACTUAL ALLEGATIONS..............................................................................2

IV.    LEGAL STANDARDS ......................................................................................3

V.      LEGAL ARGUMENT .......................................................................................4

     A.     The FAC Fails to State a Plausible Claim Under the UCL, FAL, or CLRA. ...........4

         1.    Plaintiff Has Not Plausibly Alleged That the 365 Almondmilk Label Does Not Comply with Applicable FDA Flavor Regulations ...........4

             a.    365 Almondmilk Only Contains Natural Flavors. ...........................5

             b.    The FDCA Regulations Do Not Require 365 Almondmilk Include "Artificially Flavored" On Its Label ................................7

         2.    Plaintiff's Claims of Consumer Deception Based on Alleged Regulatory Violations Are Preempted ..........................................................9

         3.    The FAC Does Not Plausibly Allege That Reasonable Consumers Are Deceived by the Use of "Vanilla" on the 365 Almondmilk Label .....11

             a.    Plaintiff's Consumer Survey is Materially Flawed, Biased and Unreliable. ................................................................15

             b.    Plaintiff's Gas Chromatography Analysis Is Flawed and Unreliable. ..............................................................................16

             c.    Because 365 Almondmilk Contains Vanilla Extract, Its Label Is Not Materially Misleading. ....................................18

             d.    Any Ambiguity in the 365 Almondmilk Label Can Be Resolved by Consulting the Ingredient List. ...................................19

     B.     Plaintiff Cannot Seek Restitution Because She Has an Adequate Legal Remedy..20

VI.    CONCLUSION ................................................................................................21

## **TABLE OF AUTHORITIES**

### **CALIFORNIA CASES**

*Brady v. Bayer Corp.*
 26 Cal. App. 5th 1156 (2018) ......................................................19

*Lavie v. Procter & Gamble Co.*
 105 Cal. App. 4th 496 (2003) ......................................................12

*Nationwide Biweekly Admin., Inc. v. Superior Court of Alameda Cty.*
 9 Cal. 5th 279 (2020) ......................................................20

### **FEDERAL CASES**

*Ashcroft v. Iqbal*
 556 U.S. 662, 129 S. Ct. 1937 L.Ed.2d 868 (2009) ......................................................3, 4

*Becerra v. Dr. Pepper/Seven Up, Inc.*
 945 F.3d 1225 (9th Cir. 2019) ......................................................12, 16

*Bell Atl. Corp. v. Twombly*
 550 U.S. 544, 127 S.Ct. 1955 L.Ed.2d 929 (2007) ......................................................3, 4

*Brown v. Starbucks Corp.*
 No. 18-cv-2286-JM, 2019 WL 996399 (S.D. Cal. Mar. 1, 2019) ......................................................12

*Chuang v. Dr. Pepper Snapple Grp., Inc.*
 No. 17-cv-01875-MWF, 2017 WL 4286577 (C.D. Cal. Sept. 20, 2017) ......................................................18

*Clark v. Westbrae Natural, Inc.*
 No. 20-cv-03221-JSC, 2020 WL 7043879 (N.D. Cal. Dec. 1, 2020) ......................................................2, 13, 14, 16

*Cosgrove v. Blue Diamond Growers*
 No. 19-cv-8993-VM, 2020 WL 7211218 (S.D.N.Y. Dec. 7, 2020) ......................................................2, 12, 13

*Ebner v. Fresh, Inc.*
 838 F.3d 958 (9th Cir. 2016) ......................................................11, 19

*Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*
 458 U.S. 141 (1982) ......................................................10

*Freeman v. Time, Inc.*
 68 F.3d 285 (9th Cir. 1995) ......................................................19

*Garcia v. Sony Computer Entmt. Am.*
 859 F. Supp. 2d 1056 (N.D. Cal. 2012) ......................................................12

*Gibson v. Jaguar Land Rover N. Am., LLC*
 No. 20-cv-769-CJC, 2020 WL 5492990 (C.D. Cal. Sep. 9, 2020) ......................................................21

*Hairston v. S. Beach Beverage Co.*
 No. 12-cv-1429-JFW, 2012 WL 1893818 (C.D. Cal. May 18, 2012) ......................................................12

*In re PepsiCo, Inc., Bottled Water Mktg. & Sales Practices Litig.*
    588 F. Supp. 2d 527 (S.D.N.Y. 2008) ........................................................................10

*Jou v. Kimberly-Clark Corp.*
    No. 13-cv-03075-JSC, 2013 WL 6491158 (N.D. Cal. Dec. 10, 2013) ........................18

*Kearns v. Ford Motor Co.*
    567 F.3d 1120 (9th Cir. 2009) ....................................................................................3

*Krommenhock v. Post Foods, LLC*
    No. 16-cv-4958-WHO, 2020 WL 6074107 (N.D. Cal. Sep. 29, 2020) ........................21

*Lam v. General Mills, Inc.*
    859 F. Supp. 2d 1097 (N.D. Cal. 2012) ....................................................................11

*Manchouck v. Mondelez Int'l Inc.*
    No. 13-cv-02148 WHA, 2013 WL 5400285 (N.D. Cal. Sept. 26, 2013) ....................18

*McKinnis v. Kellogg USA*
    No. 07-cv-2611-ABC, 2007 WL 4766060 (C.D. Cal. Sept. 19, 2007) ........................19

*O'Shea v. Littleton*,
    414 U.S. 488, 502 (1974) ..........................................................................................21

*Peviani v. Hostess Brands, Inc.*
    750 F. Supp. 2d 1111 (C.D. Cal. 2010) ................................................................10, 11

*Pichardo v. Only What You Need, Inc.*
    No. 20-cv-493-VEC, 2020 WL 6323775 (S.D.N.Y. Oct. 27, 2020) ........................2, 13

*Red v. Kraft Foods, Inc.*
    No. CV 10-1028-GW AGRX, 2012 WL 5504011 (C.D. Cal. Oct. 25, 2012) ..............18

*Romero v. Flowers Bakeries, LLC*
    No. 14-cv-05189-BLF, 2016 WL 469370 (N.D. Cal. Feb. 8, 2016) ..........................18

*Salazar v. Honest Tea Inc.*
    74 F. Supp. 3d 1304 (E.D. Cal. 2014) ......................................................................10

*Sensible Foods, LLC v. World Gourmet, Inc.*
    No. 11-cv-2819 SC, 2012 WL 566304 (N.D. Cal. Feb. 21, 2012) ..........................19

*Sonner v. Premier Nutrition Corp.*
    971 F.3d 834 (9th Cir. 2020) ................................................................................20, 21

*Steele v. Wegmans Food Markets, Inc.*
    472 F. Supp. 3d 47 (S.D.N.Y. 2020) ..............................................................2, 13, 14, 17

*Trazo v. Nestle USA, Inc.*
    No. 12-cv-2272-PSG, 2013 WL 4083218 (N.D. Cal. Aug. 9, 2013)..........................11

*Viggiano v. Hansen Natural Corp.*
    944 F. Supp. 2d 892 (C.D. Cal. 2013) ......................................................................19

*Walker v. B&G Foods, Inc.*
    No. 15-cv-03772-JST, 2016 WL 463253 (N.D. Cal. Feb. 8, 2016) ..........................10

*Williams v. Gerber Products, Co.*
    552 F.3d 934 (9th Cir. 2008) .................................................................................11

*Zaback v. Kellogg Sales Co.*
    No. 20-cv-00268-BEN, 2020 WL 6381987 (S.D. Cal. Oct. 29, 2020) ........................20, 21

## <u>STATUTES</u>

21 C.F.R. section 100.1(c)(4) .................................................................................10

21 C.F.R. section 101.22, *et seq.*..................................................................4, 5, 6, 7, 8, 9

21 C.F.R. section 170.3(o)(12)..................................................................................5

21 U.S.C. section 321(f) ........................................................................................4

21 U.S.C. section 343-1 (a) ...................................................................................10

21 U.S.C. section 343-1 (a)(3) .................................................................................4

California Business & Professions Code section 17200, *et seq.* ........................................3

California Business & Professions Code section 17500, *et seq.* ........................................3

California Civil Code section 1750, *et seq.* ...............................................................3

California Civil Code section 1780(1)(a)...................................................................21

Fed. R. Civ. P. 9(b) ..............................................................................................3

Fed. R. Civ. P. 12(b)(6)........................................................................................10

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    STATEMENT OF ISSUES TO BE DECIDED

1.     Does Plaintiff fail to plausibly and adequately allege that the product does not comply with federal and state food laws and regulations?

2.     Are Plaintiff's claims preempted by the Federal Food, Drug and Cosmetic Act?

3.     Has Plaintiff plausibly alleged that reasonable consumers are deceived by 365 Almondmilk's label?

4.     Can Plaintiff seek restitution under the UCL, FAL and CLRA if she has an adequate legal remedy?

## II.    INTRODUCTION

This lawsuit challenges the labeling of 365 Everyday Value Organic Almond Vanilla Almondmilk Beverage ("365 Almondmilk").  Defendant Whole Foods Market California, Inc. ("WFM California") sells 365 Almondmilk at its retail grocery stores in California.  The product's front label includes the word "vanilla" to identify how the product will taste and to differentiate it from other versions of 365 Almondmilk, including original and chocolate.

Plaintiff Jennifer Fahey ("Plaintiff") alleges that the use of "vanilla" on the product's front label is unlawful and misleading because it leads consumers to believe that the product's vanilla flavor comes ***exclusively and/or predominately*** from vanilla beans.  Plaintiff makes these allegations even though she admits 365 Almondmilk contains natural flavoring extracted from vanilla beans (i.e., organic vanilla extract), as confirmed in the product's ingredient statement, and that its packaging does not affirmatively represent that the product is "made with" or "contains" a specific amount of vanilla extract or that its flavoring is "exclusively," "purely," or "100%" derived from vanilla beans.

Plaintiff's claims are implausible.  They lack the factual support necessary to push them across the line from the "possible" to the "plausible."  Indeed, common sense and common knowledge compel the conclusion that *reasonable* consumers understand the label statement "vanilla" to refer to how the product will taste – not what specific ingredient imparts that flavor. There is nothing in the word "vanilla" or in the 365 Almondmilk label that would suggest to

reasonable consumers that the product's flavor comes exclusively and/or predominately from the vanilla bean.

This action is largely indistinguishable from an ongoing lawsuit filed in October 2019 by Plaintiff's counsel in the United States District Court for the Southern District of New York, entitled *Pinkston v. Whole Foods Market Group, Inc.,* Case No. 19-cv-09362-LJL. Together these cases are part of an ever-growing number of consumer deception lawsuits filed in California and New York targeting vanilla flavored products based on the same general allegations. Several recent district court decisions, however, have dismissed several of the vanilla lawsuits in New York, and at least one in California, on the basis the plaintiffs have not alleged plausible claims of consumer deception. *See Clark v. Westbrae Natural, Inc.*, No. 20-cv-03221-JSC, 2020 WL 7043879, at *1 (N.D. Cal. Dec. 1, 2020); *Steele v. Wegmans Food Markets, Inc.*, 472 F. Supp. 3d 47 (S.D.N.Y. 2020); *Pichardo v. Only What You Need, Inc.*, No. 20-cv-493-VEC, 2020 WL 6323775, **3-5 (S.D.N.Y. Oct. 27, 2020); and *Cosgrove v. Blue Diamond Growers*, No. 19-cv-8993-VM, 2020 WL 7211218 (S.D.N.Y. Dec. 7, 2020). The legal reasoning and conclusions of these cases apply with equal force to the present matter. All of Plaintiff's claims fail as a matter of law and should be dismissed.

### III.  FACTUAL ALLEGATIONS

WFM California owns and operates the Whole Foods Market stores only in the Northern California Region. WFM California sells a variety of private label food products at its stores under the "365 Everyday Value" brand name, including Organic Unsweetened Almond Vanilla Almondmilk Beverage. ECF No. 19 [FAC], ¶1. The 365 Almondmilk comes in two sizes (32 oz and 64 oz) and several flavors, including original, vanilla and chocolate.

Plaintiff alleges that she purchased 365 Almondmilk from several Whole Foods Market stores in San Francisco, California roughly every month for three years (from 2017 through 2019). ECF No. 19, ¶¶9-10. Plaintiff claims the use of the term "vanilla" on the front label is misleading because it leads consumers to believe that 365 Almondmilk's vanilla taste comes "exclusively and/or predominately" from vanilla beans. ECF No. 19, ¶¶3, 45 & 48. Plaintiff admits 365 Almondmilk contains, at least in part, vanilla flavoring from vanilla beans (i.e., vanilla extract) as

referenced in the product's ingredient list. *Id.*, ¶¶4, 50. Plaintiff also admits that the product's ingredient list discloses the presence of "Organic Natural Flavors." *Id.*, ¶50. Further, the 365 Almondmilk label does not state "natural vanilla" or that the product's vanilla flavor is derived "only," "entirely," "exclusively" or "100%" from vanilla beans. *Id.*, ¶3.

Plaintiff does not allege how much she paid, or if she paid a range of prices, for her 365 Almondmilk or what other stores charge for a similar product. *Id.* at ¶¶9-11, 89, 91, & 94-95. Plaintiff only alleges that the value of 365 Almondmilk was less than the value as represented, and that the product is sold at a premium. *Id.* at ¶¶5, 11, 89, 91-92. Contrary to Plaintiff's unsupported price premium allegations, WFM California sells the unflavored version of 365 Almondmilk for the exact same price.

Based on these allegations, Plaintiff asserts claims of unlawful and deceptive business practices and advertising in violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§17200, *et seq.* ("UCL), False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.* ("FAL"), and Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* ("CLRA"). ECF No. 19, ¶¶110-153. Plaintiff brings her claims on behalf of herself and a class of "[a]ll persons in California and Idaho who have purchased Vanilla Almondmilk for their own use … and not for resale, since May 9, 2014." *Id.*, ¶97.

## IV.    LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The Supreme Court has emphasized, as relevant here, that "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not [survive a motion to dismiss]," and "courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 50 U.S. at 555 (internal quotation marks and citations omitted). In addition, Rule 9(b)'s heightened requirements apply to consumer protection claims like Plaintiff's that sound in fraud. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).

After accepting the well-pleaded allegations, a court then determines whether a complaint alleges a "plausible" claim for relief. *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between 'possibility and plausibility of entitlement to relief.'" *Id.*, quoting *Twombly*, 550 U.S. at 557.

## V.     LEGAL ARGUMENT

### A.     The FAC Fails to State A Plausible Claim Under the UCL, FAL, or CLRA.

Plaintiff alleges claims under the UCL, FAL and CLRA for unlawful and deceptive business practices. *See* ECF No. 19, ¶¶110-152. Each of these claims fails, as a matter of law, for the fundamental reason that Plaintiff has not alleged any unlawful or deceptive business practice(s). First, Plaintiff has not plausibly alleged a basis for inferring that the 365 Almondmilk label does not comply with applicable Food and Drug Administration ("FDA") regulations for flavor designations on food product labels. Further, to the extent Plaintiff is relying on FDA flavoring regulations as a predicate for her UCL unlawful claim (Count 1) or to bolster the plausibility of her consumer deception claims, Plaintiff's reliance is misplaced. Second, Plaintiff's claims of unlawful and deceptive business practices based on alleged regulatory violations are expressly preempted. Finally, as several California and New York district courts have recently held in almost identical vanilla cases, Plaintiff has not plausibly alleged that reasonable consumers would be deceived by the "Vanilla" statement on 365 Almondmilk's front label.

### 1.     Plaintiff Has Not Plausibly Alleged That the 365 Almondmilk Label Does Not Comply with Applicable FDA Flavor Regulations.

The Federal Food Drug and Cosmetic Act ("FDCA") governs the labeling of 365 Almondmilk and expressly preempts any state law provision(s) that is not identical to federal law. 21 U.S.C. § 343-1(a)(3). The FDA has issued regulations, i.e., 21 C.F.R. section 101.22, that address the use and labeling of flavoring agents in food products and, as relevant to the present case, permit manufacturers to identify a product's characterizing flavors on its label.[1]

---

[1] The FDCA defines "food" to include drink products intended for human consumption. *See* 21 U.S.C. § 321(f).

Plaintiff contends that WFM California violates these federal flavor regulations, and by extension the California Sherman Act, through its use of the term "Vanilla" on the 365 Almondmilk front label. *See* ECF No. 19, ¶¶40-45, 110-117 & 119-126. Specifically, Plaintiff alleges that because 365 Almondmilk contains both "organic natural flavors" and "organic vanilla extract" its front label must include the qualifying language "artificially flavored." *Id.* at ¶¶43, 45, 48-52, 69-70, 74-77, 82. She contends manufacturers are only allowed to use the standalone term "vanilla" when the product is exclusively flavored by vanilla extract. *Id.* Thus, according to Plaintiff, the absence of the qualifying language "artificially flavored" from the almondmilk's front label renders the product's label false and misleading to reasonable consumers. *Id.*

FDCA regulations, however, define natural and artificial flavorings differently and only require the use of the phrase "artificially flavored," or other similar qualifying language, on a product's label in specific and limited circumstances – namely those involving artificial flavors. *See* 21 C.F.R. §§ 101.22(a)(1), (a)(3), (i)(1) & (i)(2). Plaintiff's FAC does not plausibly allege that 365 Almondmilk uses artificial flavors – rather it admits the flavoring agents are natural (*see* ECF No. 19, ¶50) – nor the existence of either condition that might require the product's front label state "artificially flavored." Accordingly, Plaintiff has not alleged a plausible basis for inferring that the 365 Almondmilk label violates FDCA regulations nor that consumers are deceived because the 365 Almondmilk label does not allegedly comply with Plaintiff's inaccurate interpretation of those regulations.

### a) 365 Almondmilk Only Contains Natural Flavors.

FDCA regulations define "flavoring" as any ingredient "whose significant function in food is flavoring rather than nutritional," 21 C.F.R. § 101.22(a)(3), and which is used "to impart or help impart a taste or aroma in food," 21 C.F.R. § 170.3(o)(12). Thus, flavoring ingredients can be used to impart a particular flavor, texture, smell or any other attribute of taste or aroma. Creating the taste profile of a product like 365 Almondmilk is not as simple as adding vanilla extract as Plaintiff contends. A vanilla flavor is only one dimension of the taste profile for a product like 365 Almondmilk. The complete profile can require the selection and combination of any number of flavor and non-flavoring ingredients to achieve a consistent and differentiated taste and aroma.

As to the flavoring ingredients themselves, FDCA regulations distinguish between natural flavors and artificial flavors. The term "natural flavors" refers to "the essential oil, oleoresin, essence or extractive … which contain the flavoring constituents derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof, whose significant function in food is flavoring rather than nutritional." 21 C.F.R. § 101.22(a)(3). The term "artificial flavors," on the other hand, refers to "any substance, the function of which is to impart flavor, which is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof." 21 C.F.R. § 101.22(a)(1). The regulations also require that natural and artificial flavors be declared as such in the product's statement of ingredients. *See* 21 C.F.R. § 101.22(h)(1).

Plaintiff contends that the vanilla flavor in 365 Almondmilk comes, at least in part, from artificial flavors. ECF No. 19, ¶¶52 & 59. The FAC, however, does not include sufficient factual allegations either to establish or even infer the use of any artificial flavors in 365 Almondmilk.[2] Nothing on the product's packaging or label gives Plaintiff any valid basis for such a claim. Quite the opposite. The product's ingredient statement, as required by the regulations, affirms it only uses *natural* flavoring agents – "organic natural flavors" and "organic vanilla extract." *See* ECF No. 19, ¶50. Further, the product is USDA certified Organic, as stated on its front label, which means that all ingredients (with a few exceptions not relevant here) must be not only natural, but organically derived. Plaintiff does not dispute the product's organic certification, yet her allegations about its ingredients are inconsistent with its organic status, and she fails to reconcile this. These indicators on the product's packaging should have alerted Plaintiff that her suspicions

---

[2] Plaintiff relies, in large part, on a purported gas chromatography-mass spectrometry analysis conducted by an unidentified researcher to establish the existence of artificial flavors in 365 Almondmilk. For the reasons detailed in the Section V(A)(3)(b) below, however, this analysis is flawed, unreliable and does not actually establish the presence of a specific "artificial ingredient(s)."

regarding the use of artificial flavors are not only unfounded, but incorrect. 365 Almondmilk uses natural, not artificial, flavors.

**b)** **The FDCA Regulations Do Not Require 365 Almondmilk Include "Artificially Flavored" On Its Label.**

Plaintiff next contends that the 365 Almondmilk label violates FDA regulations because it does not include the qualifying language "artificially flavored" on its front panel. *See* ECF No. 19, ¶¶69, 74 & 82. FDCA regulations, however, only require the use of "artificially flavored" in two circumstances and Plaintiff has not plausibly alleged that either circumstance applies to 365 Almondmilk.

*First,* the FDCA regulations require that a label include the phrase "artificial flavor" or "artificially flavored" when the food item contains an "artificial flavor which simulates, resembles or reinforced the characterizing flavor." 21 C.F.R. § 101.22(i)(2). The FAC, as detailed above, does not allege sufficient facts to infer the use of any artificial flavors in 365 Almondmilk – let alone the use of artificial flavoring ingredients that simulate, resemble or reinforce the organic vanilla extract used in the product. It is insufficient for Plaintiff to merely allege that some of the flavoring ingredients are not derived from vanilla beans. Rather, to establish the presence of "artificial flavors," Plaintiff must allege facts plausibly showing that some of the flavoring ingredients are not derived from plant material or other authorized sources of natural flavors. Plaintiff has not done that. The 365 Almondmilk label, therefore, is not required to include the statement "artificially flavored" under 21 C.F.R. 101.22(i)(2).

*Second*, the FDCA regulations provide that a product containing natural flavor must be labeled as "artificially flavored," or with "the name of the product from which the flavor is derived," when "*none* of the natural flavor used in the food is derived from the product whose flavor is simulated." 21 C.F.R. § 101.22(i)(1)(ii) (emphasis added). In this case, however, Plaintiff admits that 365 Almondmilk contains vanilla extract. *See* ECF No. 19, ¶50. Thus, 365 Almondmilk contains a natural flavoring ingredient derived from the vanilla bean and is not required to include "artificially flavored" on its label under 21 C.F.R. § 101.22(i)(1)(ii).

Plaintiff also more generally contends that the 365 Almondmilk label violates 21 C.F.R. § 101.22(i)(1) by not including any qualifying language (e.g., "flavored" or "artificially flavored" or "with other natural flavors") and therefore misleads reasonable consumers as to the source of its vanilla taste. *See* ECF No. 19, ¶¶45, 81 & 116. These contentions are equally without merit or factual support. Plaintiff has simply not alleged the facts necessary to show that any qualifying language is required. Section 101.22(i)(1) states:

> (i) If the label, labeling, or advertising of a food makes any direct or indirect representations with respect to the primary recognizable flavor(s), by word, vignette, e.g., depiction of a fruit, or other means, or if for any other reason the manufacturer or distributor of a food wishes to designate the type of flavor in the food other than through the statement of ingredients, such flavor shall be considered the characterizing flavor and shall be declared in the following way:
>
> (1) If the food contains no artificial flavor which simulates, resembles or reinforces the characterizing flavor, the name of the food on the principal display panel or panels of the label shall be accompanied by the common or usual name of the characterizing flavor, e.g., "vanilla", in letters not less than one-half the height of the letters used in the name of the food, except that:
>
> > (i) If the food is one that is commonly expected to contain a characterizing food ingredient, e.g., strawberries in "strawberry shortcake", and the food contains natural flavor derived from such ingredient and an amount of characterizing ingredient insufficient to independently characterize the food, or the food contains no such ingredient, the name of the characterizing flavor may be immediately preceded by the word "natural" and shall be immediately followed by the word "flavored" in letters not less than one-half the height of the letters in the name of the characterizing flavor, e.g., "natural strawberry flavored shortcake," or "strawberry flavored shortcake".
> >
> > (ii) If none of the natural flavor used in the food is derived from the product whose flavor is simulated, the food in which the flavor is used shall be labeled either with the flavor of the product from which the flavor is derived or as "artificially flavored."
> >
> > (iii) If the food contains both a characterizing flavor from the product whose flavor is simulated and other natural flavor which simulates, resembles or reinforces the characterizing flavor, the food shall be labeled in accordance with the introductory text and paragraph (i)(1)(i) of this section and the name of the food shall be immediately followed by the words "with other natural flavor" in letters not less than one-half the height of the letters used in the name of the characterizing flavor.

The product at issue here is named "365 Everyday Value Organic Unsweetened Almond Vanilla Almondmilk Beverage." ECF No. 19, ¶3. The term "vanilla" in the product name is

considered a characterizing flavor. *See* 21 C.F.R. § 101.22(i). If, as is the case here, a "food contains no artificial flavor which simulates, resembles or reinforces the characterizing flavor," the regulations only require that the name of the food on the front label "be accompanied by the common or usual name of the characterizing flavor, e.g., 'vanilla' …" 21 C.F.R. § 101.22(i)(1). The 365 Almondmilk label does precisely that.

Moreover, the FAC does not allege any of the triggers of the sub-paragraphs to 21 C.F.R. § 101.22(i)(1) that might require qualifying language or additional verbiage besides "vanilla" on the 365 Almondmilk label. First, Plaintiff admits the product contains vanilla extract (ECF No. 19, ¶50), but does not allege facts showing that the product contains an insufficient amount of this ingredient to "independently characterize the food." Plaintiff, therefore, has not alleged any basis for claiming that the product name must include the word "flavored" pursuant to 21 C.F.R. §101.22(i)(1)(i). Second, as just addressed above, because Plaintiff admits the product contains vanilla extract, she cannot claim that 365 Almondmilk must be labeled "artificially flavored" pursuant to 21 C.F.R. § 101.22(i)(1)(ii). Finally, Plaintiff does not explicitly allege that the product contains "other natural flavor which simulates, resembles or reinforced the characterizing flavor," under 21 C.F.R. § 101.22(i)(1)(iii), and the 365 Almondmilk ingredient statement provides no basis for such an allegation because the "organic natural flavors" may not simulate vanilla.

In short, Plaintiff pleads no facts supporting a plausible violation of 21 C.F.R. § 101.22(i)(1) or (i)(2) and her allegations of a regulatory violation, and any result consumer deception, are both legally and factually inadequate. Plaintiff, therefore, has not plausibly alleged that 365 Almondmilk is mislabeled under FDA regulations or the parallel provisions of California's Sherman Law. The 365 Almondmilk's use of "vanilla" on the front label complies with the applicable regulations and is consistent with a product flavored by vanilla extract, alone or in combination with other natural flavors.

**2.      Plaintiff's Claims of Consumer Deception Based on Alleged Regulatory Violations Are Preempted.**

In 1990, Congress amended the FDCA by passing the Nutritional Labeling & Education

Act ("NLEA") to, among other things, "'clarify and … strengthen the [FDA's] legal authority to require nutrition labeling on foods.'" *Peviani v. Hostess Brands, Inc.*, 750 F. Supp. 2d 1111, 1117 (C.D. Cal. 2010), quoting *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1116 (N.D. Cal. 2010). The FDCA, as amended by NLEA, established comprehensive and uniform federal standards for the labeling of food products. *Walker v. B&G Foods, Inc.*, No. 15-cv-03772-JST, 2016 WL 463253, at *3 (N.D. Cal. Feb. 8, 2016), citing *Reid v. Johnson & Johnson*, 780 F.3d 952, 959 (9th Cir. 2015).

To achieve its goal of uniformity, Congress included an express preemption provision in NLEA that preempts any state law requirement that is "not identical to" the federal requirement. 21 U.S.C. § 343-1(a) ("no State…may directly or indirectly establish…any requirement for a food which is the subject of a standard of identity established under section 342 of this title that is not identical to such standard of identity or that is not identical to the requirement of section 343(g) of this title."). The express preemption provision covers federal statutes as well as labeling regulations. *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982).

The phrase "not identical," as used under NLEA, means that the "State requirement directly or indirectly imposes obligations or contains provisions concerning the composition or labeling of food [that] …[a]re not imposed by or contained in the applicable" federal statute or regulation. 21 C.F.R. § 100.1(c)(4) (1977). In other words, States cannot impose their own unique labeling standards that go "beyond, or [are] different from" the federal labeling standards that the FDA has established. *In re PepsiCo, Inc., Bottled Water Mktg. & Sales Practices Litig.*, 588 F. Supp. 2d 527, 532 (S.D.N.Y. 2008). Accordingly, a consumer protection lawsuit is subject to dismissal under Fed. R. Civ. P. 12(b)(6) where it seeks to impose any new or different requirement from that which the applicable federal standards require. *See Salazar v. Honest Tea Inc.*, 74 F. Supp. 3d 1304 (E.D. Cal. 2014) ("because plaintiff's allegations do not show a violation of the FDCA, plaintiff's state laws claims [were] preempted; if allowed to proceed, the state law claims would impose liability inconsistent with the FDCA."); *see also Peviani v. Hostess Brands, Inc.,* 750 F. Supp. 2d at 1120 (finding preemption because otherwise plaintiff "would

necessarily impose a state-law obligation for trans-fat disclosure that is not required by federal law"); *Trazo v. Nestle USA, Inc.*, No. 12-cv-2272-PSG, 2013 WL 4083218, at *6 (N.D. Cal. Aug. 9, 2013) ("To the extent that Plaintiff seeks to regulate the term 'source' in the same manner as 'good source,' going beyond the boundaries of the regulation, this claim is preempted).

The 365 Almondmilk label, as detailed above, complies with FDCA regulations governing the designation of flavor agents in food products. Plaintiff's state law consumer claims of deception based on a regulatory violation, therefore, attempt to impose additional requirements inconsistent with FDCA regulations. That is, a judgment in Plaintiff's favor would impose different or additional requirements (i.e., require qualifying language such as "flavored" or "artificially flavored" on the product's front label) than those of the FDCA. Thus, Plaintiff's claims of consumer deception based on the absence of qualifying language are expressly preempted. *See Lam v. General Mills, Inc.*, 859 F. Supp. 2d 1097, 1102-03 (N.D. Cal. 2012) (finding express preemption where the defendant's uses of the terms at issue on the products were in compliance with FDA regulations); *see also Peviani v. Hostess Brands, Inc.*, 750 F. Supp. 2d at 1118 ("[c]onsumer protection laws, such as the UCL, FAL, and [CLRA] are . . . preempted if they seek to impose requirements that contravene the requirements set forth by federal law.").

### 3. The FAC Does Not Plausibly Allege That Reasonable Consumers Are Deceived by the Use of "Vanilla" on the 365 Almondmilk Label.

Even assuming for argument's sake that Plaintiff's consumer deception claims are not preempted, this Court should dismiss Plaintiff's FAC on the independent ground that it fails to state a claim upon which relief can be granted. Plaintiff has not plausibly alleged that reasonable consumers interpret the use of "vanilla" on the 365 Almondmilk front label as a statement that the product's taste comes exclusively or predominately from vanilla beans, nor that it is otherwise misleading to reasonable consumers.

Claims under the UCL, FAL and CLRA are governed by the "reasonable consumer" standard. *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016). This standard requires that Plaintiff allege facts demonstrating that the "vanilla" statement on 365 Almondmilk's front label is

"likely to deceive a reasonable consumer." *See Williams v. Gerber Products, Co.*, 552 F.3d 934, 938 (9th Cir. 2008); *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003). Courts may determine whether a label is likely to mislead reasonable consumers on a motion to dismiss based on a review of the product packaging. *See, e.g. Brown v. Starbucks Corp.*, No. 18-cv-2286-JM, 2019 WL 996399, at *3 (S.D. Cal. Mar. 1, 2019).

To show a product label is "likely to deceive" reasonable consumers, Plaintiff must allege facts showing "more than a mere possibility that [a] label 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.' Rather, the reasonable consumer standard requires a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably under the circumstances, could be misled.'" *Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228-1229 (9th Cir. 2019) (quoting *Lavie*, 105 Cal. App. 4th at 508). Although the question of whether a reasonable consumer is likely to be deceived is often a question of fact, the issue is not triable if plaintiff "cannot first identify a plausible misrepresentation." *Garcia v. Sony Computer Entmt. Am.*, 859 F. Supp. 2d 1056, 1066 (N.D. Cal. 2012); *see also Hairston v. S. Beach Beverage Co.*, No. 12-cv-1429-JFW, 2012 WL 1893818, **4-5 (C.D. Cal. May 18, 2012) ("where a Court can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging, dismissal is appropriate.").

Here, Plaintiff alleges that the use of term "vanilla," as it appears on the 365 Almondmilk's front label (i.e., "Organic Unsweetened Almond – Vanilla – Almondmilk Beverage"), misleads consumers into believing that the product's vanilla flavor comes exclusively or predominantly from vanilla bean extract. *See* ECF No. 19, ¶¶3, 11, 45, 51, 57 & 74. No *reasonable* consumer would draw such a conclusion from the product's "vanilla" statement. The consumer in a grocery store is looking, first and foremost, for almondmilk – not vanilla. The vanilla statement "on the front of the [365 Almondmilk] allows the consumer to quickly understand the flavor of the almond milk and differentiate between products." *Cosgrove v. Blue Diamond Growers,* 2020 WL 7211218, at *3 (S.D.N.Y. Dec. 7, 2020). Reasonable consumers read the flavor indicator "vanilla" and conclude the product tastes like vanilla, as opposed to chocolate, plain or some other flavors

of almondmilk. The label does not state "made with vanilla extract" or "100% pure vanilla extract" or anything else that might lead a reasonable consumer to conclude that the product's vanilla flavors comes exclusively or predominantly from vanilla beans. The fact 365 Almondmilk actually contains vanilla, which Plaintiff does not dispute (ECF NO. 19, ¶50), confirms there is nothing misleading about the use of "vanilla" in its label.

In fact, several recent decisions from district courts in California and New York have rejected this precise ingredient deception theory raised by the same plaintiff's counsel in the context of vanilla flavored soymilk, protein drink, almondmilk and ice cream. For example, in *Clark v. Westbrae Natural*, the plaintiff made almost identical allegations regarding vanilla soymilk and alleged the same type of product testing and consumer survey results as support for his contentions. *Clark v. Westbrae Natural, Inc.*, No. 20-cv-03221-JSC, 2020 WL 7043879, at *1 (N.D. Cal. Dec. 1, 2020). The district court dismissed plaintiff's UCL, FAL and CLRA claims, finding plaintiff had not alleged sufficient facts to infer that the soymilk label was materially misleading. *Id.* at *3. "Plaintiff has not alleged facts that plausibly support an inference that a reasonable consumer would interpret 'vanilla' on the Product's label to mean that the Product's flavor is derived exclusively from the vanilla bean." *Id.* The court reasoned that "[t]he word vanilla does not suggest to the reasonable consumer that the flavor comes exclusively from the vanilla bean," and "the labels do not contain any other words or pictures that suggest the vanilla flavor is derived from the vanilla bean." *Id.*

Several district court decisions in New York used the same reasoning to dismiss largely indistinguishable consumer deception claims brought under New York's General Business Laws relating to vanilla protein drink, almondmilk and ice cream. *See Steele v. Wegmans Food Markets, Inc.*, 472 F. Supp. 3d 47, 50 (S.D.N.Y. 2020) (dismiss consumer deception claims against vanilla ice cream product because the product was in fact vanilla flavored and the label did not reference vanilla beans or vanilla extract); *Pichardo v. Only What You Need, Inc.*, No. 20-cv-493-VEC, 2020 WL 6323775, **3-5 (S.D.N.Y. Oct. 27, 2020) (protein drink labeled "Smooth Vanilla" not misleading because, without additional language such as "made with," "reasonable

consumers associate the word vanilla with a flavor, not with an ingredient."); *Cosgrove v. Blue Diamond Growers*, 2020 WL 7211218, at *3 ("Defendant's [Almondmilk] does not use the words 'vanilla bean' or 'vanilla extract,' nor does it use language such as 'made with vanilla' or anything similar. The Product makes one representation – that it is vanilla flavored – and Plaintiffs do not allege that the Product did not deliver on that representation. This alone is fatal to Plaintiffs' case.").

The same reasoning and analysis of these cases applies to the present matter. The 365 Almondmilk label promises the product will taste like vanilla; it does not promise a specific or exclusive vanilla ingredient. The label also does not include any other words or images on its packaging that might convey to consumers that the vanilla comes exclusively from vanilla beans or bean extract. *See* ECF No. 19, ¶3. Thus, the bare allegations of Plaintiff's FAC do not plausibly support an inference that reasonable consumers interpret "vanilla" on the 365 Almondmilk front label to mean that its flavor is derived exclusively from vanilla beans. Rather, consumers of 365 Almondmilk got what they paid for – vanilla flavored almondmilk. As the *Steele* court rhetorically questioned: "What is misrepresented?" *Steele,* 2020 WL 3975461, at *2. The answer here is the same as in *Steele*: nothing.

Nothing in Plaintiff's FAC distinguishes this case from *Clark, Steele, Pichardo* or *Cosgrove*, or renders Plaintiff's theory more plausible. While Plaintiff relies on product testing and consumer survey results as support for her allegations that 365 Almondmilk contains less vanilla than consumers expect, these cases considered and rejected similar allegations and arguments. Regardless, as detailed below, Plaintiff's testing and survey results are materially flawed, unreliable, and biased, leaving her allegations without substance or factual support. Further, even if the 365 Almondmilk label were susceptible to Plaintiff's interpretation, her claims would still fail for two additional reasons: (1) 365 Almondmilk actually contains vanilla extract; and (2) the ingredient list discloses the presence of both organic natural flavors and organic vanilla extract.

**a)** **Plaintiff's Consumer Survey is Materially Flawed, Biased and**
**Unreliable.**

Plaintiff cites to the results of a consumer survey as support for her allegations regarding consumer understanding of the 365 Almondmilk label. *See* ECF No. 19, ¶¶46-47. The survey asked roughly 400 *New York* consumers, after being shown an image of the 365 Almondmilk front label: "[b]ased on the image above, where do you believe the vanilla taste comes from?"[3] *See* ECF No. 1-1, at 3, 5-6. Plaintiff concludes from this survey that consumers find the labeling misleading because 71.1% of consumers responded "[t]hat it comes from vanilla beans." ECF No. 19, ¶46 & No. 1-1 at 7. Plaintiff's conclusion, however, lacks substance and factual support for several reasons.

*First*, these consumers have their expectations met because the product contains organic vanilla extract. *See* ECF No. 19, ¶50. There is no deception. *Second*, the question itself presupposes that the product's front label makes a claim regarding the source of the flavor (which is not true). This type of flawed survey question is known as a "demand artifact," which conditions the responding party to guess at the surveyor's purpose (i.e., to establish that consumers have expectations regarding the source of vanilla flavoring) and subconsciously change their answer to suit this purpose. *Third*, the question does not include a response option allowing the respondent to state that the label does not convey any information regarding the source of the product's vanilla flavor.[4] Thus, not only does the question condition respondents to assume there is a message regarding the source of the flavor, but it does not even allow respondents to assert an interpretation contrary to Plaintiff's initial assumption(s). *Finally*, and most importantly, the survey does not address the core question at issue in this case – does the term "vanilla" as used on the front label of the 365 Almondmilk tell you what the product will taste like or what ingredients

---

[3] Notably, slightly more than ninety-five percent (95%) of the survey respondents agreed that the 365 Almondmilk label conveyed to them that the product has a vanilla taste. ECF No. 1-1 at 5.

[4] The survey allowed respondents to answer: 1) "That it comes from vanilla beans; 2) That it does not come from vanilla beans; 3) Other (please specify) (click to view)." *See* ECF No. 1-1, at 7.

are used in the flavoring. Accordingly, Plaintiff's survey is biased and unreliable, and should be disregarded.

The Ninth Circuit, in *Becerra v. Dr. Pepper/Seven Up, Inc.*, recently affirmed the rejection of a consumer survey introduced in a complaint as factual support of consumer deception for some of the same reasons. *Becerra v. Dr. Pepper/Seven Up, Inc.*, *supra*, 945 F.3d at 1231. In particular, the Ninth Circuit held that the survey alone could not "salvage [plaintiff's] claim," because the survey did not address the key issue of consumer understanding as to either the term "diet" or how consuming low-calorie products will impact one's weight. *Id*. The court further concluded that "the survey does not shift the prevailing reasonable understanding of what reasonable consumers understand the word 'diet' to mean or make plausible the allegation that reasonable consumers are misled by the term 'diet.'" *Id.*

Similarly, reasonable consumers understand what the word "vanilla" means in this context – that the almondmilk has a vanilla flavor – and asking them whether that flavor comes for vanilla beans does make plausible the allegation that reasonable consumers are misled by the term "vanilla." In fact, the *Clark* court held as much when it rejected the plaintiff's survey allegation, concluding "the vague survey allegation does not make plausible that reasonable consumers understand 'vanilla' soymilk is flavored exclusively with vanilla beans." *Clark,* 2020 WL 7043879, at *4.

        **b)**     **Plaintiff's Gas Chromatography Analysis Is Flawed and Unreliable.**

In a further effort to bolster her allegations of deception, Plaintiff references a purported gas chromatography-mass spectrometry ("GC-MS") analysis conducted by an unidentified researcher as her basis for alleging that the vanilla flavor in 365 Almondmilk does not come exclusively from vanilla extract. *See* ECF No. 19, ¶¶53-56. Plaintiff claims that because the analysis did not detect some markers in the quantities she claims are present in vanilla extract, she has a plausible basis for her allegations with respect to the product's flavoring. *Id.*, ¶¶51-56. Significantly, no one with any scientific expertise supports Plaintiff's claims on this point. Rather, Plaintiff's attorney reviewed the test results and concluded himself that the product was predominantly flavored by natural flavors other than vanilla extract because the CG-MS test

detected maltol and piperonal as well as vanillin in an amount disproportional to the other components of vanilla extract.  (*Ibid*.)  Plaintiff's GC-MS analysis is flawed and unreliable for several reasons.

As a preliminary matter, Plaintiff does not attach the GC-MS analysis to the FAC, so there is no way for the Court to review its complete objectives, methodology, results, controls and conclusions.  The Court is instead asked to rely only on Plaintiff's attorney's impermissible, inadmissible lay interpretation of selectively presented results from the GC-MS analysis.  Plaintiff's counsel is not qualified to offer these conclusions, nor address the numerous questions left open by the study.

For instance, it is unclear why the study did not specifically test for maltol, piperonal, and vanillin if their presence was a key indicator used in Plaintiff's argument.  This is the same flaw noted by the court in *Steele,* where the court dismissed a similar GC-MS analysis on methodological grounds: "What is needed is to test, not for the universe of the ice cream's contents, but specifically for the presence of the particular chemical markers."  *Steele*, 472 F. Supp. 2d at 51.  The court accordingly dismissed plaintiff's contention that the lack of vanilla extract's chemical markers indicated that Wegmans' ice cream did not contain vanilla extract, holding that "the test was not sensitive enough to detect the markers with smaller profiles in the bean."  *Id.*  The same problem attends here because Plaintiff's summary of the GC-MS test does not indicate whether that specific chemical markers were tested, and the Court is unable to review the actual GC-MS analysis itself.

It is likewise unclear how a GS-MS test is able to discern between 365 Almondmilk's "flavors" and other ingredients, and whether such flavors are able to survive the barrage of transformations, including vaporization, ionization, mixing with other chemicals, extraction with methylene chloride, clarification, drying with anhydrous sodium sulfate, and concentration with nitrogen which are part and parcel of the GC-MS methodology.  Such transformations could cause reactions that modify or eliminate some chemicals in the product.

Plaintiff's methodology is further flawed as Plaintiff's summary of the test indicates that that no control experiment was conducted on a sample with known and agreed flavor composition.

ECF No. 19, ¶¶51-56.  Without such a control, Plaintiff has no basis to allege that her test could or should have detected the small amounts of chemicals associated with vanillin which she claims are truant.  Accordingly, any inferences drawn from Plaintiff's unattached GC-MS analysis are unreliable and should be disregarded.

**c)** **Because 365 Almondmilk Contains Vanilla Extract, Its Label Is Not Materially Misleading**

Plaintiff admits that 365 Almondmilk actually contains vanilla extract.  *See,* ECF No. 19, ¶50.  Accordingly, Plaintiff's theory of liability and misrepresentation goes beyond merely including vanilla extract in the product to contend that consumers expect a particular *proportion* of vanilla extract to other flavoring ingredients.  *Id.*, ¶¶3, 45, 49, 55.  The FAC, however, does not allege any factual basis for such an unreasonable interpretation of the word "vanilla."

"[C]ourts in this circuit have dismissed complaints contending that 'made with' claims or images of a certain ingredient on labels convey to consumers that the product contains a "significant" amount of that ingredient, as Plaintiff here contends."  *Chuang v. Dr. Pepper Snapple Grp., Inc.*, No. 17-cv-01875-MWF, 2017 WL 4286577, at *4 (C.D. Cal. Sept. 20, 2017); *accord Romero v. Flowers Bakeries, LLC*, No. 14-cv-05189-BLF, 2016 WL 469370, at *6–7 (N.D. Cal. Feb. 8, 2016) ("the Court cannot agree with Plaintiff that the word 'wheat' combined with 'wholesome wheat' and 'healthy grains' or 'Healthy White' alongside images of wheat stalks and honey pots could lead a reasonable consumer to conclude that the breads 'contain a *significant amount* of whole wheat and are thus healthier than other white breads.'") (emphasis in original)*; see also Jou v. Kimberly-Clark Corp.*, No. 13-cv-03075-JSC, 2013 WL 6491158, at *10 (N.D. Cal. Dec. 10, 2013) ("Contrary to Plaintiffs' contentions, the phrase "Soft Organic Cotton" does not in any way connote that the entire diaper is made of only that material; the phrase simply communicates the presence of that ingredient, which is true."); *Manchouck v. Mondelez Int'l Inc.*, No. 13-cv-02148 WHA, 2013 WL 5400285, at *2–3 (N.D. Cal. Sept. 26, 2013), aff'd, 603 F. App'x 632 (9th Cir. 2015) ("made with real fruit" label is not misleading because products contained a small amount of fruit and because consumers could review back label ingredients list to confirm expectations); *Red v. Kraft Foods, Inc.,* No. CV 10-1028-GW, 2012 WL 5504011, at

*4 (C.D. Cal. Oct. 25, 2012) ("Plaintiffs do not provide a specific argument as to how [the phrase "Made With Real Vegetables"] is misleading. The labeling statement does not claim a specific amount of vegetables in the product, but rather speaks to their presence in the product, which is not misleading."); *Sensible Foods, LLC v. World Gourmet, Inc.*, No. 11-cv-2819 SC, 2012 WL 566304, at *6–7 (N.D. Cal. Feb. 21, 2012) ("Veggie Chips" and "Apple Straw" crackers not misleadingly named when product contained advertised ingredient, even if not the primary ingredient).  Similarly, here, the mere allegation that there is not a significant amount of vanilla extract does not render 365 Almondmilk's label misleading to reasonable consumers because it contains the ingredient and its label does not promise a specific amount.

### d) Any Ambiguity in the 365 Almondmilk Label Can Be Resolved by Consulting the Ingredient List.

Even if consumers somehow inferred from the 365 Almondmilk label that it was exclusively flavored with vanilla extract from vanilla beans, the product's ingredient list would resolve any such confusion.  When determining whether a particular statement is misleading, the Court must consider the "promotion as a whole."  *Freeman v. Time, Inc*. 68 F.3d 285, 290 (9th Cir. 1995).  Qualifiers on a product's packaging "can ameliorate any tendency of the label to mislead."  *Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156, 1167 (2018).

If a consumer cannot be sure of vanilla's meaning on the product's front label, then the term is ambiguous, and the consumer may refer to the back-label ingredient list to dispel this ambiguity because the front label makes no affirmative misrepresentations.  *Brady,* 26 Cal. App. 5th at 1167; *Ebner v. Fresh, Inc.,* 838 F.3d at 965–66 (only "*if* the defendant commits an act of deception, the presence of fine print revealing the truth is insufficient to dispel that deception."); *see also McKinnis v. Kellogg USA,* No. 07-cv-2611-ABC, 2007 WL 4766060, at *4 (C.D. Cal. Sept. 19, 2007) (plaintiff's UCL, FAL, and CLRA claims failed where the box of "Froot Loops" did not contain affirmative misrepresentations that the product contained fruit, and a consumer's expectation that the product contained actual fruit could be corrected by looking to the ingredient panel); *Viggiano v. Hansen Natural Corp.* 944 F. Supp. 2d 892, 892 n.38 (C.D. Cal. 2013) ("In cases where a product's front label is accurate and consistent with the statement of ingredients,

courts routinely hold that no reasonable consumer could be misled by the label, because a review of the statement of ingredients makes the composition of the [product] clear.")

Thus, even if the use of vanilla on the 365 Almondmilk label could be considered ambiguous and that ambiguity could plausibly lead a hypothetical consumer to assume that the product's vanilla flavoring resulted entirely from vanilla extract, then the ingredient list would dispel any ambiguity because it identifies both "organic natural flavor" and "organic vanilla extract." ECF No. 19, ¶50.

## B. Plaintiff Cannot Seek Restitution Because She Has an Adequate Legal Remedy.

If this Court does not dismiss Plaintiff's lawsuit outright, it should nonetheless dismiss her claims for restitution under the UCL, FAL and CLRA. Plaintiff's claims under the UCL and FAL sound in equity, *see Nationwide Biweekly Admin., Inc. v. Superior Court of Alameda Cty.*, 9 Cal. 5th 279, 292 (2020)*,* and Plaintiff has requested restitution in part of her CLRA claim. ECF No. 19, ¶153. As the Ninth Circuit recently made clear in *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020), a plaintiff cannot seek restitution under these statutory claims without establishing that she lacks an adequate remedy at law. Plaintiff makes no effort at such a showing in her FAC. Accordingly, this provides an alternative basis for dismissal of her UCL and FAL claims and her request for restitution under the CLRA.

In *Sonner*, the plaintiff initially asserted claims for both restitution and damages, but later abandoned her damages claim under the CLRA in favor of her claims for equitable restitution. *Sonner,* 971 F.3d at 834. The district court subsequently dismissed the plaintiff's remaining claims for restitution, holding that she "failed to establish that she lacked an adequate legal remedy for the same past harm for which she sought equitable restitution." *Id*. at 838. The Ninth Circuit affirmed, agreeing that "the traditional principles governing equitable remedies in federal courts, including the requisite inadequacy of legal remedies, apply when a party requests restitution under the UCL and CLRA in a diversity action." *Id*. at 844. And because the plaintiff had not alleged — let alone demonstrated — that she lacked an adequate legal remedy, the court held that she could not seek restitution. *Id*.

Several district courts in this circuit, following *Sonner*, have granted motions to dismiss claims for equitable relief under the UCL, FAL and CLRA. For example, in *Zaback v. Kellogg Sales Co.*, No. 20-cv-00268-BEN, 2020 WL 6381987, at *4 (S.D. Cal. Oct. 29, 2020) – another "vanilla" case – the court concluded that *Sonner* "require[d]" dismissal of the entire case because all the claims sounded in equity and the plaintiff failed to allege that he lacks an adequate remedy at law. The *Zaback* court also rejected the argument that the *Sonner* decisions should be limited its unique procedural circumstances, citing a number of district court decisions that have applied *Sonner* to dismiss similar claim at early stages of the litigation. *Zaback*, 2020 WL 6381987, at *4, citing *In re MacBook Keyboard Litig.*, No. 18-cv-2813-EJD, 2020 WL 6047253, at *3 (N.D. Cal. Oct. 13, 2020); *Krommenhock v. Post Foods, LLC*, No. 16-cv-4958-WHO, 2020 WL 6074107, at *1 (N.D. Cal. Sep. 29, 2020); *Gibson v. Jaguar Land Rover N. Am., LLC*, No. 20-cv-769-CJC, 2020 WL 5492990, at *3 (C.D. Cal. Sep. 9, 2020).

*Sonner* precludes Plaintiff's demand for restitution and equitable relief in this case. As the Ninth Circuit made clear, a plaintiff seeking restitution must "plead 'the basic requisites of the issuance of equitable relief' including 'the inadequacy of remedies at law." *Id.* at 844 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974)) (emphasis added). Plaintiff, however, has not alleged that she lacks an adequate remedy at law in her FAC, nor could she since the CLRA (one of the three statutes under which she proceeds) authorizes "actual damages" in addition to equitable restitution. *See* Cal. Civ. Code § 1780(a)(1). Absent any plausible allegation that the CLRA's damages remedy is inadequate to compensate Plaintiff for her alleged harm, *Sonner* bars her from seeking restitution — or any other equitable remedy.

## VI.   CONCLUSION

For the reasons stated herein, WFM California asks that this Court grant its motion and dismiss Plaintiff's FAC with prejudice.

Dated:  January 6, 2021

BLAXTER | BLACKMAN LLP

By _____
                /s/*Brian R. Blackman*
              BRIAN R. BLACKMAN
              J.T. WELLS BLAXTER
              DAVID P. ADAMS
              Attorneys for Defendant
      WHOLE FOODS MARKET CALIFONRIA, INC.