**BORISON FIRM, LLC.**
Scott C. Borison (State Bar No. 289456)
*scott@borisonfirm.com*
1900 S. Norfolk St Ste 350
San Mateo CA 94403
Telephone: (301) 620-1016
Facsimile: (301) 620-1018

**SHEEHAN & ASSOCIATES, P.C.**
Spencer Sheehan (admitted *pro hac vice*)
60 Cuttermill Rd Ste 409
Great Neck, NY 11021-3409
Tel: (516) 268-7080
spencer@spencersheehan.com

*Counsel for Plaintiff and the Proposed Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER FAHEY, individually, and on behalf of all others similarly situated,<br><br>              Plaintiff,<br><br>vs.<br><br>WHOLE FOODS MARKET CALIFORNIA, INC.,<br><br>              Defendant. | Case No. 4:20-cv-06737-JST<br><br>**CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Date:  March 3, 2021<br>Time:  2:00 p.m.<br>Courtroom: 6, 2nd Floor |

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................... i

TABLE OF AUTHORITIES ..................................................................................... iii

STATEMENT OF ISSUES TO BE DECIDED ........................................................... 1

STATEMENT OF FACTS ............................................................................................ 1

LEGAL STANDARDS ................................................................................................. 3

ARGUMENT ................................................................................................................ 5

I.    PLAINTIFF'S CLAIMS ARE NOT PREEMPTED ........................................... 5

      A.    There is a Strong Presumption Against Preemption ............................. 5

      B.    Express Preemption is Very Narrow ..................................................... 5

      C.    Plaintiff's Claims are Not Preempted Because the Labeling Does not
            Comply With Minimum Disclosure Requirements ................................ 6

II.   IT CANNOT BE CONCLUDED AS A MATTER OF LAW THAT A
      REASONABLE CONSUMER COULD NOT BE MISLED ............................ 7

      A.    As a Matter of Law, it is Not Unreasonable for Consumers to Believe the
            Flavoring Comes Exclusively or Predominantly from Vanilla and that it
            Does Not Contain Artificial Vanilla Flavor ......................................... 8

      B.    The Products Contain Undisclosed Artificial Flavor ........................... 10

      C.    That the Product Contains Some Vanilla is Irrelevant to the Merits of
            Plaintiff's Claims ................................................................................. 13

      D.    Consumers Expect a Flavor Designation to Tell them the Source of the
            Flavor    15

      E.    Defendant Cannot Disclaim the Prominent "Vanilla" Representation
            Through an Ingredient List .................................................................. 16

      F.    Defendant's Citations are to Non-Binding Authorities that are Factually
            Distinct ................................................................................................. 19

      G.    Plaintiff's Allegations Regarding the Consumer Survey are Adequately
            Pled    21

III.  Plaintiff is Entitled to Equitable Relief ......................................................... 22

CONCLUSION ........................................................................................ 23

**TABLE OF AUTHORITIES**

**CASES**

*Aberin v. Am. Honda Motor Co., Inc.*,
   No. 16-cv-04384-JST, 2018 WL 1473085 (N.D. Cal. Mar. 26, 2018) ....................................26

*Allred v. Frito-Lay N. Am., Inc.*,
   No. 17-cv-1345-JLS-BGS, 2018 WL 1185227 (S.D. Cal. Mar. 7, 2018).............................12

*Andriesian v. Cosmetic Dermatology, Inc.*,
   No. 3:14-cv-01600-ST, 2015 WL 1925944 (D. Or. Apr. 28, 2015) ....................................17

*Asghari v. Volkswagen Grp. of Am., Inc.*,
   42 F. Supp. 3d 1306 (C.D. Cal. 2013)........................................................................22

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...........................................................................................3

*Augustine v. Talking Rain Beverage Co., Inc.*,
   386 F. Supp. 3d 1317 (S.D. Cal. 2019) ....................................................................12

*Bates v. Dow Agrosciences LLC*,
   544 U.S. 431 (2005) ...........................................................................................6

*Becerra v. Dr. Pepper/Seven Up, Inc.*,
   945 F.3d 1225 (9th Cir. 2019)...............................................................................15

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...........................................................................................3

*Bell v. Publix Super Markets, Inc.*,
   No. 19-2581, 2020 WL 7137786 (7th Cir. Dec. 7, 2020) ...............................................10

*Brady v. Bayer Corp.*,
   26 Cal. App. 5th 1156, 237 Cal. Rptr. 3d 683 (Ct. App. 2018) .............................................19

*Branca v. Bai Brands, LLC*,
   No. 3:18-cv-00757-BEN-KSC, 2019 WL 1082562 (S.D. Cal. Mar. 7, 2019)...................12, 14

*Cactus Corner, LLC v. US Dept. of Agriculture*,
   346 F. Supp. 2d 1075 (E.D. Cal. 2004).....................................................................18

*Chavez v. Blue Sky Nat. Beverage Co.*,
   340 F. App'x 359 (9th Cir. 2009)............................................................................27

*Clark v. Westbrae Natural, Inc.*,
   No. 20-cv-3221 (JSC), 2020 U.S. Dist. LEXIS 224966 (N.D. Cal. Dec. 1, 2020)..................18

*Cohen v. East West Tea Company, LLC*,
   No. 17-cv-2339-JLS-BLM, 2018 WL 3656112 (S.D. Cal. Aug. 2, 2018) ................................ 14

*Conley v. Gibson*,
   355 U.S. 41 (1957) ............................................................................................................ 3

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018) ..................................................................................... 27, 28

*Davison v. Santa Barbara High Sch. Dist.*,
   48 F. Supp. 2d 1225 (C.D. Cal. 1998) ............................................................................. 4

*Deras v. Volkswagen Group of America, Inc.*,
   2018 WL 2267448 (N.D. Cal. May 17, 2018) ............................................................... 26

*Derbaremdiker v. Applebee's Int'l, Inc.*,
   No. 12-cv-01058-KAM, 2012 WL 4482057 (E.D.N.Y. Sept. 26, 2012) ......................... 19

*Dumont v. Reilly Foods Co.*,
   934 F.3d 35 (1st Cir. 2019) ........................................................................................... 10

*Durnford v. MusclePharm Corp.*,
   907 F.3d 595 (9th Cir. 2018) ......................................................................................... 5

*Ehrlich v. BMW of N. Am., LLC*,
   801 F. Supp. 2d 908 (C.D. Cal. 2010) ......................................................................... 11

*Engurasoff v. Coca-Cola Co.*,
   No. 13-cv-03990 (JSW), 2014 WL 4145409 (N.D. Cal. Aug. 21, 2014) ....................... 12

*Falk v. Gen. Motors Corp.*,
   496 F. Supp. 2d 1088 (N.D. Cal. 2007) ....................................................................... 11

*Florida Lime & Avocado Growers, Inc. v. Paul*,
   373 U.S. 132 (1963) ........................................................................................................ 5

*Goldman v. Bayer AG*,
   No. 17-cv-0647-PJH, 2017 U.S. Dist. Lexis 117117 (N.D.Cal., July 26, 2017) ..................... 19

*Gross v. Vilore Foods Co.*,
   No. 3:20-cv-00894-DMS-JLB, 2020 WL 6319131 (S.D. Cal. Oct. 28, 2020) ...................... 26

*Hall v. Diamond Foods, Inc.*,
   No. 14-cv-02148-MMC, 2014 WL 5364122 (N.D. Cal. Oct. 21, 2014) ................................ 17

*Hawkins v. Kroger Company*,
   906 F.3d 763 (9th Cir. 2018) ......................................................................................... 5

*Henderson v. Gruma Corp.*,

2011 WL 1362188 (C.D. Cal. Apr. 11, 2011) ............................................................ 9

*Henderson v. The J.M. Smucker Company,*
   No. 2:10-cv-04524-GHK-VBK, 2011 WL 1050637 (C.D. Cal Mar. 17, 2011) ............... 16, 23

*Hilsley v. Gen. Mills, Inc.,*
   376 F. Supp. 3d 1043 (S.D. Cal. 2019) .................................................................. 12, 13

*Holk v. Snapple Beverage Corp.,*
   575 F.3d 329 (3d Cir. 2009) .................................................................................... 5

*Howard v. Bayer Corp.,*
   No. 4:10-cv-1662-DPM, 2011 U.S. Dist. Lexis 161583 (E.D.Ark., July 22, 2011 ................ 19

*In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.,*
   MDL No. 2672-CRB-JSC, 2020 WL 1829045 (N.D. Cal. April. 10, 2020) ........................... 22

*Ivie v. Kraft Foods Global, Inc.,*
   No. 12-cv-2554-RMW, 2013 WL 685372 (N.D. Cal. Feb. 25, 2013) ..................................... 14

*Kasky v. Nike, Inc.,*
   45 P.3d 243 (Cal. 2002) ......................................................................................... 9

*Knievel v. ESPN,*
   393 F.3d 1068 (9th Cir. 2005) .................................................................................. 4

*Kosta v. Del Monte Corp.,*
   No. 12-cv-1722-YGR, 2013 WL 2147413 (N.D. Cal. May 15, 2013) ..................................... 5

*Kwikset Corp. v. Superior Court,*
   51 Cal. 4th 310 (2011) ........................................................................................... 27

*Mantikas v. Kellogg Co.,*
   910 F.3d 633 (2d Cir. 2018) ..................................................................................... 10

*Martin v. Tradewinds Beverage Co.,*
   No. 2:16-cv-09249-PSG-MRW, 2017 WL 1712533 (C.D. Cal. Apr. 27, 2017) ..................... 17

*McCellen v. Fitbit, Inc.,*
   No. 3:16-cv-0036-JD, 2018 WL 2688781 (N.D. Cal. June 5, 2018) ..................................... 22

*Pichardo v. Only What You Need, Inc.,*
   No. 20-cv-0493 (VEC), 2020 U.S. Dist. LEXIS 199791
   (S.D.N.Y. Oct. 27, 2020) ........................................................................................ 17

*Red v. Kraft Foods, Inc.,*
   2012 WL 5504011 (C.D. Cal. Oct. 25, 2012) .............................................................. 15

*Reid v. Johnson & Johnson,*

780 F.3d 952 (9th Cir. 2015) ............................................................................................. 5

*Sagan v. Apple Computer, Inc.*,
   874 F. Supp. 1072 (C.D. Cal. 1994) ................................................................................. 4

*Shalikar v. Asahi Beer U.S.A., Inc.*,
   No. 17–cv-02713, 2017 WL 9362139 (C.D. Cal. 2017) ................................................. 21

*Shank v. Presidio Brands, Inc.*,
   No. 17-cv-00232-DMR, 2018 WL 1948830 (N.D. Cal. Apr. 25, 2018) .......................... 16

*Sharpe v. A & W Concentrate Company and Keurig Dr. Pepper Inc.*,
   __ F. Supp.3d __, No. 1:19-cv-00768 (BMC), 2020 WL 4931045 (E.D.N.Y. Aug. 24, 2020) 18

*Silva v. Unique Beverage Co., LLC*,
   No. 3:17-cv-00391-HZ, 2017 WL 4896097 (D. Or. Oct. 30, 2017) ............................... 15

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) ................................................................................... 25, 26

*Spirtos v. Allstate Inc., Co.*,
   2003 WL 25900368 (C.D. Cal. Jan. 10, 2003) ................................................................ 26

*Starbuck v. City of San Francisco*,
   556 F.2d 450 (9th Cir.1977) ........................................................................................... 18

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011) .......................................................................................... 4

*Steele v. Wegmans Food Markets, Inc.*,
   No. 19-cv-09227, 2020 WL 3975461 (S.D.N.Y. Jul. 14 2020) ................................. 16, 18

*Tucker v. Post Consumer Brands, LLC*,
   No. 19-cv-03993-YGR, 2020 WL 1929368 (N.D. Cal. April 21, 2020) ............................ 16,

*Victor v. R.C. Bigelow, Inc.*,
   No. 13-cv-02976-WHO, 2014 WL 1028881 (N.D. Cal. Mar. 14, 2014) .......................... 25

*Vizcarra v. Unilever United States, Inc.*,
   No. 4:20-cv-02777, 2020 WL 4016810 (N.D. Cal. July 16, 2020) .................................. 12

*Von Grabe v. Sprint PCS*,
   312 F. Supp. 2d 1285 (S.D. Cal. 2003) ........................................................................... 23

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008) ............................................................................................ 9

*Workman v. Plum Inc.*,
   141 F. Supp. 3d 1032 (N.D. Cal. 2015) ........................................................................... 15

*Wyeth v. Levine*,
    555 U.S. 555 (2009) ..................................................................................... 5

**STATUTES**

21 U.S.C. § 343 ............................................................................................... 7

Cal. Health & Saf. Code Section 110290 ...................................................... 7

**RULES**

Fed. R. Civ. P. 12(b)(6) ................................................................................. 4

**REGULATIONS**

21 C.F.R. § 101.9(a) ...................................................................................... 15

21 C.F.R. § 101.9(c) ...................................................................................... 15

21 C.F.R. § 101.9(j)(2)(i) ............................................................................... 15

21 C.F.R. § 101.9(j)(2)(ii) .............................................................................. 15

In compliance with Northern District of California Local Rule 7-4, Plaintiff Jennifer Fahey ("Plaintiff"), through her undersigned counsel, respectfully submit the following opposition to the motion filed by Defendant Whole Foods Market California, Inc. ("Defendant") to dismiss Plaintiff's Amended Class Action Complaint ("Complaint" or "Am. Compl."), Dkt 21. Defendant asks this Court to dismiss the entirety of Plaintiff's Complaint. *See* Defendant's Notice of Motion and Motion to Dismiss Plaintiff's Amended Complaint; Memorandum of Points and Authorities In Support Thereof ("Def. Mem.") Dkt. 21. Defendant's arguments should be rejected for the reasons set forth below.

## STATEMENT OF ISSUES TO BE DECIDED

1.      Does Plaintiff state a claim under the UCL, FAL, and CLRA where Plaintiff alleges that a reasonable consumer would understand "Vanilla" without qualification to represent that an ice cream cone is made with real vanilla where the ice cream cone is made predominantly or exclusively with added vanilla from non-vanilla bean sources?

2.      Has Plaintiff sufficiently asserted economic injury by alleging that she spent money that, absent Defendants' actions, he would not have spent, which the Ninth Circuit has found to be a quintessential injury-in-fact?

3.      Did Plaintiff provide the required pre-suit notice to Defendant?

4.      Can Plaintiff assert claims for equitable relief?

## STATEMENT OF FACTS

Defendant markets its soft serve ice cream or reduced fat ice cream purporting to be flavored only by vanilla under the Defendant's brand (the "Product'). *See* Compl. at ¶ 1. The Defendant's Product is labeled "Vanilla" without qualification. Compl. at ¶ 3; *see* below ("Vanilla" representation circled).



Consumers want the vanilla in vanilla-flavored products to come from a real source, *i.e.,* from vanilla beans from the vanilla plant. Am. Compl. at ¶ 15. The representation of the Product as "Vanilla" without qualification causes consumers, like Plaintiff, to believe that the Product is vanilla flavored and the vanilla flavor comes exclusively, if not predominantly, from the vanilla plant and that the Product tastes like vanilla. Am. Compl. at ¶¶ 4, 46-47. According to survey data, consumers reasonably believe that the "Vanilla" representation, without qualification, means that, with respect to the vanilla flavor, the flavor is a natural flavor that comes from the vanilla plant. Am. Compl. at ¶¶ 46-47.

Unfortunately for consumers, Defendants' "Vanilla" representation is false and misleading. Specifically, scientific testing of the products revealed that the vanilla flavoring of the Products does not come exclusively or predominantly from the vanilla plant. Rather, the opposite is true. The testing revealed that the predominant, if not exclusive, source of the vanilla flavor is from added vanillin not from the vanilla plant. Am. Compl. at ¶ 55. Given the total absence of the non-vanillin marker compounds and the high level of vanillin, if the Products contains any real vanilla at all, it is in trace or *de minimis* amounts not detectable by even advanced scientific means. Am. Compl. at ¶¶ 53-56.

As a result of the misleading labeling at issue, the Products are sold at a premium price, as compared to similar products. Am. Compl. at ¶ 5.

Plaintiff purchased the Product on multiple occasions. Am. Compl. at ¶ 9. Plaintiff saw the "Vanilla" representation and relied on it to believe that the Products were vanilla-flavored and that the vanilla flavor came from the vanilla plant. Am. Compl. at ¶ 13. Had Plaintiff known the truth that the "Vanilla" representation was false, Plaintiff would not have purchased the Product at a premium price or bought the Product at all. Am. Compl. at ¶ 13. If the Product was reformulated such that the vanilla flavor came exclusively from the vanilla plant, or the Products were not deceptively labeled, Plaintiff would purchase the Product again in the future. Am. Compl. at ¶ 13.

Plaintiff alleges violations of both the unlawful and unfair/fraudulent prongs of the UCL, the FAL and the CLRA. Compl. at ¶¶ 110-153. Plaintiff seeks monetary damages and injunctive relief.

**LEGAL STANDARDS**

A pleading that sets forth a claim for relief "must contain a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8; *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (holding that the purpose of pleading a "short and plain statement of the claim" is merely to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Indeed, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is

improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (requiring a complaint to only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'").

Federal Rule of Civil Procedure 12(b) states that "[e]very defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required." Fed. R. Civ. P. 12(b). However, Rule 12(b) does provide seven defenses that a party may assert….by motion." *See* Fed. R. Civ. P. 12(b). Among the available defenses under Rule 12(b) is a defense "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, the court accepts "allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). Thus, to survive a motion to dismiss, a plaintiff is required to allege only "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 697.

"The Ninth Circuit has clarified that (1) a complaint must 'contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively,' and (2) 'the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.'" *Burton v. Time Warner Cable Inc.*, No. 12-cv-06764-JGB-AJW, 2013 WL 3337784, at *2 (C.D. Cal. Mar. 20, 2013) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). The liberal pleading standard applied by federal courts comports with Rule 8(e), which says, "Pleadings must be construed so as to do justice." Fed. R. Civ. P. 8(e); *cf. Sagan v. Apple Computer, Inc.*, 874 F. Supp. 1072, 1077 (C.D. Cal. 1994) ("Parties are expected to use discovery, not the pleadings, to learn the specifics of the claims being asserted."); *Davison v. Santa Barbara High Sch. Dist.*, 48 F. Supp. 2d 1225, 1228 (C.D. Cal. 1998) ("If the moving party could obtain the missing detail through discovery, the motion should be denied.").

**ARGUMENT**

**I.     PLAINTIFF'S CLAIMS ARE NOT PREEMPTED**

### A.     There is a Strong Presumption Against Preemption

It is well understood that "[l]aws regulating the proper marking of food, including the

prevention of deceptive sales practices, are [] within states' historic police powers." *Cortina v.*

*Goya Foods, Inc.*, 94 F. Supp. 3d 1174, 1187 (S.D. Cal. 2015); *see Plumley v. Massachusetts*, 155

U.S. 461, 472 (1894) ("If there be any subject over which it would seem the states ought to have

plenary control . . . it is the protection of the people against fraud and deception in the sale of food

products"); *Holk v. Snapple Beverage Corp.*, 575 F.3d 329, 334 (3d Cir. 2009) ("[h]ealth and safety

issues have traditionally fallen within the province of state regulation," including "the regulation

of food and beverage labeling and branding."). Thus, state food labeling requirements "are not to

be superseded by the Federal Act unless that was the clear and manifest purpose of Congress."

*Hawkins v. Kroger Company*, 906 F.3d 763, 789 (9th Cir. 2018), quoting *Wyeth v. Levine*, 555

U.S. 555, 565 (2009). Accordingly, as this Court has emphasized, "[t]here is a strong presumption

against federal preemption in the area of proper marketing and regulation of food, a realm

traditionally in the power of the States." *Kosta v. Del Monte Corp.*, No. 12-cv-1722-YGR, 2013

WL 2147413, at *6 (N.D. Cal. May 15, 2013), citing *Florida Lime & Avocado Growers, Inc. v.*

*Paul*, 373 U.S. 132, 144 (1963); *see also Durnford v. MusclePharm Corp.*, 907 F.3d 595, 601 (9th

Cir. 2018) ("a presumption against preemption applies to the extent the FDCA is used to displace

state law in an area of traditional state police power . . . [c]onsumer protection falls well within

that category.").

### B.     Express Preemption is Very Narrow

Defendant contends that Plaintiff's claims are preempted by the FDCA, which prohibits

the misbranding of food in interstate commerce. 21 U.S.C. § 331. In 1990, the FDCA was amended

by the Nutrition Labeling and Education Act (the "NLEA") to provide that it "shall not be

construed to preempt any provision of State law, unless such provision is *expressly* preempted."

NLEA § 6(c) (statutory note to § 343-1) (emphasis added).

Thus, there is no "conflict" or "field" preemption under the FDCA, only "express preemption." *Reid v. Johnson & Johnson*, 780 F.3d 952, 959 (9th Cir. 2015). Moreover, there is not express preemption of state law claims "that are identical to the federal labeling requirements." *Hawkins*, 906 F.3d at 769, quoting *Reid*, 780 F.3d at 959. This means that "a state-law labeling requirement is not pre-empted . . . if it is equivalent to, and fully consistent with [federal] misbranding provisions." *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 447 (2005); *see Kosta*, 2013 WL 2147413, at *7 ("the many district courts addressing this issue have found that state law claims are not preempted where the food labeling requirements under state law are identical to their federal FDCA and NLEA counterparts.").

Here, Defendant claims that Plaintiff is attempting to additional requirements inconsistent with FDCA regulations. Def. Mem. at 11. As explained below, the regulations Defendant claims do not apply are, in fact, applicable, and Plaintiff's claims are not preempted.

## C. Plaintiff's Claims are Not Preempted Because the Labeling Does not Comply With Minimum Disclosure Requirements

Whole Foods argues that the Product complies with the FDA's flavor labeling regulation, 21 C.F.R. § 101.22(i), because the Product tastes like vanilla, which is its "primary recognizable flavor." However, the regulations require consumers be provided *more* information, such as the source of the vanilla flavor and whether a food contains flavors that simulate the characterizing flavor from natural and artificial sources, which Defendant has not done. Am. Compl. at ¶ 45.

By labeling the Product "Vanilla," Defendant identified the flavor in a way that tells consumers that all of the characterizing vanilla flavor comes from the ingredient of vanilla beans. 21 C.F.R. § 101.22(i)(1) (permitting a flavor designation of "vanilla" if a food has enough vanilla *ingredient* to characterize the flavor without added flavor from other natural or artificial sources); 21 C.F.R. § 101.22(i)(1)(i)-(iii).

Not only does Whole Foods fail to identify the Vanilla Almondmilk as "Artificially Flavored," it does not even disclose the flavor source through the "with other natural flavor" disclosure. Am. Compl. at ¶¶ 80-81("Defendant fails to even consider any relevant regulations in

labeling its Product "Vanilla," such as 21 C.F.R. § 101.22(i)(1)(iii).

As has often been recognized, "if some aspects of a label are required or permitted, the rest of the label must still comply with § 343(a)(1) and not be 'false or misleading in any particular.'" *Reynolds v. Wal-Mart Stores, Inc.*, No. 4:14-cv-381-MW-CAS, 2015 WL 1879615, at *12 (N.D. Fla. Apr. 23, 2015) *citing United States v. An Article of Food Labeled Nuclomin,* 482 F.2d 581, 583 (8th Cir. 1973). Simply stated, Whole Foods is not protected from a claim of deceptive flavor labeling simply by having complied (arguably) with a flavor labeling regulation.

In addition to Plaintiff's core allegation that Whole Foods' labeling and packaging of the Product is unlawful, Plaintiff asserts that the name "Vanilla Almondmilk" violates California law by referencing "vanilla" while failing to mention the more predominant artificial alternative, vanillin. Am. Comp. ¶ 111-112.

## II. IT CANNOT BE CONCLUDED AS A MATTER OF LAW THAT A REASONABLE CONSUMER COULD NOT BE MISLED

It is axiomatic that courts apply the "reasonable consumer" standard in determining whether a manufacturer's representations regarding a product are misleading or deceptive in violation of the UCL, FAL, and CLRA. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). Under this standard, a cognizable claim exists "if a reasonable consumer could find [a] statement would be 'either actually misleading' or having the 'capacity, likelihood, or tendency to deceive or confuse the public.'" *Bailey v. Rite Aid Corp.*, No. 18-cv-06926-YGR, 2019 WL 4260394, at *6 (N.D. Cal. Sept. 9, 2019); *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (affirming dismissal where dispenser disclosed the accurate net weight of the lip product).

It is equally well-settled that in evaluating deceptiveness, "context is crucial." *Sandoval v. PharmaCare US, Inc.,* 730 Fed. App'x. 417, 419 (9th Cir. 2018) ("when read in context, the label's statements could convey to a reasonable consumer that IntenseX will increase the consumer's endurance and stamina"); *see also Williams,* 552 F.3d at 939 n. 3 ("Given the context of this statement, we decline to give Gerber the benefit of the doubt by dismissing the statement as puffery.").

Furthermore, as the Ninth Circuit has emphasized, application of the reasonable consumer

standard "raises questions of fact that are appropriate for resolution on a motion to dismiss ***only in 'rare situation[s]*.*" *Reid*, 780 F.3d at 958 (emphasis supplied); *Williams*, 552 F.3d at 938–39 ("Whether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires 'consideration and weighing of evidence from both sides' and which usually cannot be made on demurrer."). In sum, dismissal is only appropriate if "the advertisement itself [makes] it ***impossible*** for the plaintiff to prove that a reasonable consumer was likely to be deceived." *Id.* at 939 (emphasis supplied).

### A. As a Matter of Law, it is Not Unreasonable for Consumers to Believe the Flavoring Comes Exclusively or Predominantly from Vanilla and that it Does Not Contain Artificial Vanilla Flavor

The labeling of Defendant's "Vanilla Almondmilk" highlights the presence of vanilla in the Product, which is what consumers expect. Am. Compl. at ¶ 45 ("Based on the term "Vanilla" and the absence of any qualifying terms, consumers and Plaintiff expected the Product to have a vanilla taste, exclusively or predominantly from vanilla beans.").

In its motion, Whole Foods has not taken issue with these facts or with Plaintiff's characterization of its labeling. It is equally apparent, that the substitution of vanilla with vanillin is recognized as a deceptive practice. Also as noted, the FDA has long required products with a characterizing flavor of vanilla to be labeled as "artificially flavored" where they contain vanillin.

Thus, it cannot be considered unreasonable as a matter of law that Plaintiff viewed Defendant's "Vanilla" flavor designation as indicating how – and with what – the Product is flavored. Namely, that vanilla is the predominant source of the vanilla taste, and that it did not contain artificial vanillin.

Mirroring Plaintiff's experience is a 2020 survey of over 400 consumers which found that, based on the Product's principal display panel, 71% of respondents believed the Product's vanilla taste comes from the vanilla plant. Am. Compl. at ¶ 46.

These facts are more than sufficient to show that a significant portion of the public would be misled by Defendant's labeling of its Vanilla Almondmilk. For this fundamental reason, Defendant's position must be rejected as without merit. That Plaintiff's allegations meet the

reasonable consumer test is supported by well-reasoned case law.

In *Williams*, plaintiffs asserted that products with fruit images on the packages misled them as to the products' healthfulness given that the two most prominent ingredients were corn syrup and sugar. The allegations were held sufficient to state claims under California law. *Williams,* 552 F.3d at 939.

Similarly, in *Mantikas v. Kellogg Co.,* 910 F.3d 633 (2nd Cir. 2018)*,* the Second Circuit found that "large, bold-faced claims of 'Whole Grain'" on boxes of crackers created "reasonable expectations" that the food was predominantly whole grain.

Plaintiff's claims here are directly analogous. Defendant's highlighting of vanilla on its "Vanilla Almondmilk" creates the "reasonable expectation" that the almondmilk is flavored mainly from the vanilla plant when it is not. The Second Circuit in *Mantikas* held that since plaintiffs alleged the crackers were not, in fact, predominantly made with whole grain, their deception claims under California law could proceed. *Mantikas,* 910 F.3d at 637.

Likewise, in *Henderson v. Gruma Corp.*, No. 10-cv-4173-AHM, 2011 WL 1362188 at *12 (C.D. Cal. Apr. 11, 2011), defendant's packaging displayed the name "GUACAMOLE" in large capital letters with large pictures of avocados. Plaintiff alleged this was deceptive because the product contained less than 2% avocado powder.

Like Whole Foods' strategy here, the manufacturer sought dismissal on the ground that the product "tasted" like guacamole. The court ruled that the large print and graphics could mislead a reasonable consumer into thinking the product was actually guacamole.

Finally, in *Kosta*, this Court reviewed a number of product labeling claims and found they all met the reasonable consumer test for deception. In particular, the Court found it plausible "that a reasonable consumer, finding a plastic container of fruit in the refrigerated produce section labeled "must be refrigerated' and identifying no ingredients on the label as chemical preservatives would believe that the product is fresh cut fruit and would be influenced by that appearance to purchase it." *Kosta,* 2013 WL 2147413 at * 12.

Clearly, therefore, here it cannot be said as a matter of law that Defendant's highlighting

1  of vanilla – coupled with the lack of any "front of the package" disclosure of other non-vanilla

2  artificial flavors – could not mislead a reasonable consumer.

3          Defendant tries to overcome this solid precedent by positing that the name "Vanilla

4  Almondmilk" is equivalent to puffery, meaning that it should not be viewed by consumers as

5  having any basis in reality. Def. Mem. at 14 ("The 365 Almondmilk label promises the product

6  will taste like vanilla; it does not promise a specific or exclusive vanilla ingredient."); Def. Mem.

7  at 19 citing *McKinnis v. Kellogg USA*, No. 07-cv-2611, 2007 WL 4766060, at *4 (C.D. Cal. Sept.

8  19, 2007) (implausible for reasonable consumer to expect "FROOT LOOPS" contained real fruit

9  since name of the food was "SWEETENED MULTIGRAIN CEREAL"); *see also Werbel v.*

10  *Pepsico, Inc.*, No. 09-cv-4456, 2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010) (expectation of

11  cereal containing actual "crunch berries" implausible since product name "SWEETENED CORN

12  & OAT CEREAL" resolved any ambiguity).

13          Clearly, Whole Foods is grasping at straws, as the gulf between the name "Vanilla

14  Almondmilk" and fanciful names such as "Froot Loops" is wide. Moreover, in all cases involving

15  "fancifully-named" products, consumers alleged deception as to what was actually in the products

16  (namely, actual fruit), not the proportion of a particular ingredient that was actually in the product

17  – as is the case here.

18          Accordingly, given Whole Foods' emphasis on an ingredient contained in the Product, it

19  is hardly unreasonable for consumers to conclude that vanilla is its predominant or exclusive flavor

20  source, particularly when viewed in context of most products displaying qualifying terms for their

21  flavor.

22      **B.      The Products Contain Undisclosed Artificial Flavor**

23          The Complaint alleges that the representation of the Products as "Vanilla" is "false,

24  deceptive and misleading" because the almondmilk is flavored by artificial vanillin yet omits

25  "Artificial" from the product name. Am. Compl. at ¶ 52, 55-56.

26          Defendants claims that the presence of artificial vanillin is of no significance because the

27  Amended Complaint does not allege that Whole Foods represented that vanilla was the only or

28

predominant ingredient used in the flavoring. Def. Mem. at 12.

This disregards that Plaintiff's theory is one of omission, whereby Defendant had the affirmative obligation to disclose the flavor source of the Organic 365 Vanilla Almondmilk. Compl. at ¶ 88 ("Plaintiff also saw and relied on statements on the Unsweetened Vanilla Almondmilk, which misleadingly reference only "vanilla" even though much, if not all, of the vanilla flavoring comes from non-vanilla sources.")

The FFDCA prohibits representations on food which is "false or misleading in any particular." Compl. at ¶ 112 citing 21 U.S.C. § 343, which defines "misleading" to "take[] into account (among other things)…the extent to which the labeling or advertising fails to reveal facts material;" at ¶ 121 citing California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Saf. Code Section 110290 ("Sherman Law").

Defendant's omission of the word "artificial" is actionable because it "is contrary to a representation actually made by the defendant," that the Product only contained flavor from vanilla, and because it was obligated to disclose this fact. *Ehrlich v. BMW of N. Am., LLC,* 801 F. Supp. 2d 908, 916 (C.D. Cal. 2010) (quoting *Falk v. Gen. Motors Corp.,* 496 F. Supp. 2d 1088, 1094-95 (N.D. Cal. 2007) (citing standard for omission-based claims under the UCL).

Since the only natural vanillin is from vanilla beans, it is misleading to omit "artificially flavored" from the term "Vanilla." Am. Compl. at ¶ 43, 52.

The FDA has long considered vanillin an artificial flavor when added to vanilla. E.g., Am. Compl. 42. Courts have often denied motions to dismiss where it was plausibly alleged a food or beverage contained undisclosed artificial flavors. *Hilsley v. Gen. Mills, Inc.*, 376 F. Supp. 3d 1043, 1047 (S.D. Cal. 2019) (plaintiff's allegation that fruit snacks contained the artificial flavor "synthetic d-l malic acid [which] simulates, resembles, and reinforces the characterizing fruit flavor for the Products," and should have been disclosed based on 21 C.F.R. § 101.22(i)(2) was plausible); *Engurasoff v. Coca-Cola Co.*, No. 13-cv-03990 (JSW), 2014 WL 4145409, at *3 (N.D. Cal. Aug. 21, 2014) (refusing to dismiss claims that defendants used the artificial flavor phosphoric

acid to "add a tartness to Coke," yet failed to declare this fact, in violation of 21 C.F.R. § 101.22(i)(2)); *Allred v. Frito-Lay N. Am., Inc.*, No. 17-cv-1345-JLS-BGS, 2018 WL 1185227, at *5 (S.D. Cal. Mar. 7, 2018) (denying motion to dismiss because "The issue [of] whether malic acid is an 'artificial characterizing flavor' that reinforces or resembles the natural vinegar flavor" is "a factual determination" that "would be inappropriately resolved on a motion to dismiss."); *Branca v. Bai Brands, LLC*, No. 3:18-cv-00757-BEN-KSC, 2019 WL 1082562, at *3 (S.D. Cal. Mar. 7, 2019) (denying motion to dismiss where plaintiff alleged fruit drinks contained the artificial flavor d-1-malic acid but failed to disclose this to consumers as required by law); *Augustine v. Talking Rain Beverage Co., Inc.*, 386 F. Supp. 3d 1317, 1322–23 (S.D. Cal. 2019) (denying motion to dismiss where plaintiff alleged the defendant "omits the legally required 'artificially flavored' disclosure"); *see also Vizcarra v. Unilever United States, Inc.*, No. 4:20-cv-02777, 2020 WL 4016810, at *1 (N.D. Cal. July 16, 2020) (denying motion to dismiss where plaintiff's analytical testing showed ice cream did not contain flavor exclusively from vanilla plant).

"Assuming the truth of the allegations, as the Court must at the pleading stage," it is plausible that "the FDA regulations require Defendants to label the [vanilla almondmilk] as artificially flavored" based on the added vanillin. *Hilsley*, 376 F. Supp. 3d at 1047 (citation omitted).

Plaintiff has clearly described the omissions and regulatory requirements when vanillin is used to imitate vanilla. Compl. at ¶ 43 ("Defendant's Product, "containing vanillin derived from a non vanilla bean source needs to be labeled as artificially flavored [because] the food is characterized/labeled as vanilla flavored.").

As other courts within this Circuit have held, "at the pleading stage, [the] Court does not operate as a fact-finder, but, instead, must presume all facts plead as true." *Branca*, 2019 WL 1082562, at *3 (crediting plaintiff's allegations that the products contained the artificial flavor d-1-malic acid); *See Ivie v. Kraft Foods Global, Inc.*, No. 12-cv-2554-RMW, 2013 WL 685372, at *10 (N.D. Cal. Feb. 25, 2013) (the factual determinations of whether the artificial product is used

as a sweetener and/or flavoring agent in the product is inappropriate for determination on a motion to dismiss); *Allred*, 2018 WL 1185227, at *4-5 (whether malic acid is an "artificial flavor" or a "flavor enhancer" under the federal regulations is a factual determination inappropriate at the pleadings stage).

### C. That the Product Contains Some Vanilla is Irrelevant to the Merits of Plaintiff's Claims

Defendant asks this Court to rule contrary to *Williams* by allowing a conspicuous, misleading statement regarding an ingredient Defendant chooses to highlight, vanilla, so long as it contains that ingredient in some minute amount or it supposedly tastes of vanilla. *Williams*, 552 F.3d at 939 ("[T]he statement that Fruit Juice Snacks was made with 'fruit juice and other all natural ingredients' could easily be interpreted by consumers as a claim that all the ingredients in the product were natural, which appears to be false"); *Cohen*, 2018 WL 3656112 at *3 ("Because Defendant's Products say they contain kombucha, but do not contain live organisms, it is plausible the packaging is deceiving.").

The consumer protection laws do not require literal falsity; only that a reasonable consumer is "likely to be deceived," which can occur even with a technically true statement. *See Kasky v. Nike, Inc.*, 45 P.3d 243, 250 (Cal. 2002) (laws prohibit "not only advertising which is false, but also advertising which, although *true*, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public") (emphasis added).

Defendant's position, which is clearly without merit, is advanced simply to obfuscate the real issue – namely, whether Whole Foods' labeling is deceptive as to the *relative amount* of vanilla in the Product vis-à-vis artificial vanilla flavoring - not whether vanilla is present at all (or in a particular amount).

Not surprisingly, the cases which Defendant cites are patently inapposite. In *Chuang v. Dr. Pepper Snapple Group, Inc.*, No. 17-cv-01875-MWF-MRW, 2017 WL 4286577, at *4 (C.D. Cal. Sept. 20, 2017), *Sensible Foods, LLC v. World Gourmet, Inc.*, No. 11-cv2819-SC, 2012 WL 566304, at *6–7 (N.D. Cal. Feb. 21, 2012), and *Red v. Kraft Foods, Inc.*, No. 10-cv-1028-GW-

AGR, 2012 WL 5501044, at *4 (C.D. Cal. Oct. 25, 2012), the issue was whether the phrases "made with real fruit" and "made with real vegetables" conveyed to reasonable consumers that significant amounts of these ingredients were present.

These cases turned on the fact that the qualifier "made with" arguably put reasonable consumers on notice that a product may not contain a significant amount of an ingredient; here, by contrast, no such qualifying language appears on Whole Foods' principal display panel, and Plaintiff is not complaining that Organic 365 Vanilla Almondmilk lacks a significant amount of vanilla, rather, that the *proportion* of vanilla vis-à-vis artificial vanilla flavoring is deceptively small. And again, the consumer survey here evidences that Defendant's packaging of the Product causes consumers to believe that the vanilla flavor is provided predominantly by the vanilla plant.

Similarly, in *Romero v. Flowers Bakeries, LLC*, No. 14-cv-05189-BLF, 2016 WL 469370, at *6–7 (N.D. Cal. Feb. 8, 2016), plaintiff complained that bread did not contain a significant amount of whole wheat, but it was not marketed as a "whole wheat" product and the packaging prominently disclosed that it contained "a blend" of grains. The case is also distinguishable because, as noted, Plaintiff is not complaining about the amount of vanilla *per se* (negligible though it may be), but rather about the relative amount of vanilla compared to artificial vanillin.

Defendant also says that because Plaintiff does not specify the amount of vanilla, and the label does not promise any amount, the Amended Complaint does not state a claim. Def. Mem. at 19.

Once again, Defendant mischaracterizes Plaintiff's claims, which assert that the labeling is deceptive as to *relative amounts* of vanilla. Plaintiff's allegations to this effect – which appear multiple times throughout the Am. Compl. - adequately inform Defendant of the challenged misconduct. *Sandoval v. PharmaCare US, Inc.*, 145 F. Supp. 3d 986, 997 (S.D. Cal. 2015) ("Rule 9(b) is satisfied if the allegations of fraud are 'specific enough to give defendants notice of the particular misconduct . . .so that they can defend against the charge and not just deny that they have done anything wrong.'"); *In re 5-hour ENERGY Mktg. & Sales Practices Litig.*, MDL No. 13-cv-2438-PSG-PLA, 2014 WL 5311272, at *17 (C.D. Cal. Sept. 4, 2014)("[m]any courts in

California have applied a relatively straightforward test for the application of Rule 9(b) to label-based fraud claims," under which "[t]he 'who' are the defendants; the 'what' are their allegedly misleading claims; the 'when' is the proposed class period, during which those claims were made; the 'where' is the offending label; and the 'how' is the plaintiff's explanation why the defendant's claims are misleading.").

Indeed, the Second Circuit adopted *Williams* and rejected the precise proposition advanced by Defendant, explaining: "The rule that Defendant [urges] – that, as a matter of law, it is not misleading to state that a product is made with a specified ingredient if that ingredient is in fact present – would validate highly deceptive advertising and labeling. . ..[and] would validate highly deceptive marketing." *Mantikas,* 910 F.3d at 638. This rationale is sound and should be followed here.

### D.     Consumers Expect a Flavor Designation to Tell them the Source of the Flavor

In deeming the "vanilla" representation as referring to a "flavor," Defendant disregards that flavors *come from* ingredients. Defendant's position – that "vanilla" without qualification refers to the flavor or taste – creates an ambiguity regarding how a consumer interprets the phrase "vanilla" that cannot be resolved on a motion to dismiss. *See Cohen v. East West Tea Company, LLC,* No. 17-cv-2339-JLS-BLM, 2018 WL 3656112, at *3 (S.D. Cal. Aug. 2, 2018) (denying motion to dismiss where "there is ambiguity regarding the definition of a word of the Products' labeling.").

Here, as in *Williams*, the fact that the "Vanilla" statement may technically be accurate with respect to the flavor or a small quantity of an ingredient does not make the statement unactionable as a matter of law. Plaintiff plausibly alleged that the Product's statement of "Vanilla" without qualification is likely to mislead reasonable consumers. Am. Compl. ¶ 83 ("Defendant knows consumers will pay more for the Product because the front label only states "vanilla" and not "artificially flavored").

The purpose of labeling requirements is not only so consumers will know the flavor or taste

of a food, but so consumers are informed of the source of that flavor. This is especially so in the case of vanilla flavors, where there has been a history of consumer deception. Am. Compl. at ¶ 42 (requirements for vanilla labeling to protect against consumer deception).

Nowhere in the representation of the Product does Defendant disclose it contains artificial vanillin, as it is identified only as "Vanilla" and not "Artificially Flavored Vanilla." *See, e.g.*, *Workman v. Plum Inc.*, 141 F. Supp. 3d 1032, 1035 (N.D. Cal. 2015) (dismissing claim where truthful amounts of ingredients were disclosed on the back of the label); *Silva v. Unique Beverage Co., LLC*, No. 3:17-cv-00391-HZ, 2017 WL 4896097, at *6 (D. Or. Oct. 30, 2017) (denying motion to dismiss where product identified as "coconut" lacked this ingredient).

While Defendant cites *Red* for the proposition that a "called-out" ingredient, vegetables, is not plausibly contained in an appreciable amount in a product based on wheat (crackers), the analogy fails when used in the context of a flavor. *Red v. Kraft Foods, Inc.*, 2012 WL 5504011, at *3-4 (C.D. Cal. Oct. 25, 2012) (holding that wheat crackers could not plausibly contain any more than a de minimis amount of vegetables because crackers are made from wheat).

Flavorings are necessarily present in small amounts, though are the most valuable components. Labeling almondmilk as "vanilla" or "strawberry" refers to the flavor from these ingredients. Plaintiff knows she did not buy a "bowl of vanilla," but expected that the representation of the flavor would be truthful and not misleading.

### E. Defendant Cannot Disclaim the Prominent "Vanilla" Representation Through an Ingredient List

Defendant argues that "to the extent there was any ambiguity as to the ingredients in Organic 365 Vanilla Almondmilk, a reasonable consumer would check the familiar ingredient list on the side of the box." Def. Mem. at 19-20. Defendant is wrong.

First, Plaintiff's allegations do not reflect any ambiguity in Defendant's front panel labeling. The Amended Complaint asserts in no uncertain terms that Defendant's labeling conveys the unambiguous message that the vanilla flavor comes predominantly from the vanilla plant, because it says so.

1      Second, Defendant's position flatly contradicts the Ninth Circuit's authority of *Williams v.*

2  *Gerber*:

3      [R]easonable consumers should [not] be expected to look beyond mis-leading
       representations on the front of the box to discover the truth from the ingredient list
4      in small print on the side of the box. ***We do not think that the FDA requires an***
       ***ingredient list so that manufacturers can mislead consumers and then rely on the***
5      ***ingredient list to correct those misinterpretations and provide a shield for liability***
       ***for the deception.***
6

7      552 F.3d at 939–40 (emphases supplied).

8      As a fellow California federal district judge explained in rejecting similarly flawed cases:

9      Notwithstanding the Ninth Circuit's holding in *Williams*, Defendant relies upon
       certain district court decisions that have arrived at the opposite conclusion. *See,*
10     *e.g.*, *In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, 275 F.
       Supp. 3d 910, 922 (N.D. Ill. 2017); *Workman v. Plum Inc.*, 141 F. Supp. 3d 1032,
11     1035 (N.D. Cal. 2015)…This Court [however] is bound to follow *Williams*.

12     *Robinson v. Unilever United States, Inc.*, 2019 WL 2067941, at *3 (C.D. Cal. Mar.
13     25, 2019) (parenthetical quotations omitted).

14     Here, as in *Robinson*, the Court should follow established Ninth Circuit precedent and

15 decline to follow the outlier cases relied upon by Defendant. Post also argues Plaintiff "must be

16 familiar with ingredient lists" because the allegations in his  pleading  draw  information from

17 them. Def. Mem. at 17, 19. This is just another attempt at obfuscation, and is disingenuous to boot.

18 Clearly, that Plaintiff reviewed ingredient lists at some point *following* his purchases while his

19 counsel drafted the Complaint hardly means that he was (or should have been) familiar with them

20 prior to or at the point of purchase, as *Williams* demonstrates.

21     Defendant relies on a case where a court determined "vanilla" was not misleading because

22 the ingredient list "mentions neither vanilla beans nor extracts, but [does list] Natural Flavor." Def.

23 Mem. at 14 quoting *Steele v. Wegmans Food Markets, Inc.*, No. 19-cv-09227, 2020 WL 3975461

24 (S.D.N.Y. Jul. 14, 2020).

25     Plaintiff alleged Organic 365 Vanilla Almondmilk contains artificial flavors, which was

26 never alleged in *Steele*. Additionally, "artificial flavor" does not appear on the ingredient list. See

27 *Williams*, 552 F.3d at 939–40 ("[R]easonable consumers expect that the ingredient list contains

28

*more detailed* information about the product that confirms other representations on the packaging.") (emphasis added).

Moreover, the requirement that a consumer scrutinize an ingredient list has been soundly rejected at the motion to dismiss stage in this district. *See, e.g., Tucker v. Post Consumer Brands, LLC*, No. 19-cv-03993-YGR, 2020 WL 1929368, at *6 (N.D. Cal. April 21, 2020) (noting that it is not the case that "the onus" is "on plaintiff to consult the ingredient list to try to discern" the actual contents of the allegedly mislabeled product); *see also Shank v. Presidio Brands, Inc.*, No. 17-cv-00232-DMR, 2018 WL 1948830, at *5 (N.D. Cal. Apr. 25, 2018) (holding that the plaintiff's "ability to read the products' ingredients does not render [the defendant's] allegedly false advertising that the products contain only naturally-derived ingredients any more truthful"); *Henderson v. J.M. Smucker Co.*, No. 10-cv-244524-GHK-VBK, 2011 WL 1050637, at *4 (C.D. Cal. Mar. 17, 2011) (rejecting argument "that since partially hydrogenated vegetable oil, which contains trans fat, is disclosed as one of the ingredients in its products, no reasonable consumer could be misled" and noting that "[a]lthough this factor may be relevant in the fact-intensive reasonable consumer analysis, *Williams* instructs that such reasoning cannot be the basis for granting a motion to dismiss."); *Andriesian v. Cosmetic Dermatology, Inc.*, No. 3:14-cv-01600-ST, 2015 WL 1925944 (D. Or. Apr. 28, 2015) (adopting report and recommendation and rejecting argument "that a reasonable consumer could not be misled because the allegedly oil-based ingredients were plainly listed on the product's label."); *Hall v. Diamond Foods, Inc.*, No. 14-cv-02148-MMC, 2014 WL 5364122, at *4 (N.D. Cal. Oct. 21, 2014) ("Accordingly, the claims based on Reduced Fat Sea Salt Chips are not subject to dismissal for failure to allege sufficient facts to satisfy the reasonable consumer test.").

Other Courts of Appeal have recently adopted *Williams*, and support Plaintiff's position that it is plausible for consumers to expect to receive what they are promised. *Bell v. Publix Super Markets, Inc.*, No. 19-2581, 2020 WL 7137786, at *1 (7th Cir. Dec. 7, 2020) (reversing dismissal of claims that it was implausible to expect "*100% Parmesan Cheese*" to contain only paremesan cheese where shelf-stable cheese listed ingredients including cellulose) *Mantikas*, 910 F.3d at 637

("We conclude that a reasonable consumer should not be expected to consult the Nutrition Facts panel [and ingredients list] on the side of the box to correct misleading information set forth in large bold type on the front of the box."); *Dumont v. Reilly Foods Co.*, 934 F.3d 35, 42 (1st Cir. 2019) (reversing district court and holding that in case involving a hazelnut creamer that "FDCA requirements effectively established custom and practice in the industry. Accordingly, it may be that a consumer's experience with that custom and practice primes her to infer from the absence of a flavoring disclosure that the product gets its characterizing nutty flavor from the real nut.").

### F. Defendant's Citations are to Non-Binding Authorities that are Factually Distinct

Defendant's argument relies less on whether Plaintiff was misled by the artificial flavor in the Products than by decisions mainly from other districts. Defendant encourages the Court to engage in "herding" and "informational cascades," which "occurs among agents when their decisions are decreasingly determined by their own information and increasingly determined by the actions of others."[1]

In all the cases cited by Defendant, there were not the allegations here that those products contained artificial flavors. *Pichardo v. Only What You Need, Inc.*, No. 20-cv-0493 (VEC), 2020 U.S. Dist. LEXIS 199791 (S.D.N.Y. Oct. 27, 2020) (beverage "does not mislead because reasonable consumers would expect a vanilla taste, and that is exactly what they get."); *Steele*, 2020 WL 3975461, at *2 (dismissing case where product purportedly tasted like vanilla; *see also Cosgrove v. Blue Diamond Growers*, No. 19-cv-8993 (VM), 2020 U.S. Dist. LEXIS 229294 (S.D.N.Y. Dec. 7, 2020); *Clark v. Westbrae Natural, Inc.*, No. 20-cv-3221 (JSC), 2020 U.S. Dist. LEXIS 224966 (N.D. Cal. Dec. 1, 2020) *but see Vizcarra*, 2020 WL 4016810, at *1; *Sharpe v. A & W Concentrate Company and Keurig Dr. Pepper Inc.*, __ F. Supp.3d __, No. 1:19-cv-00768 (BMC), 2020 WL 4931045, at *12 (E.D.N.Y. Aug. 24, 2020) (denying motion to dismiss because "ethyl vanillin, the substance plaintiffs allege is exponentially present compared to natural vanilla,

---

[1] Andrew F. Daugherty and Jennifer F. Reinganum, "Stampede to judgement: Persuasive influence and herding behavior by courts." *American Law and Economics Review* 1.1 (1999): 158-189.

is never explicitly disclosed to consumers…Rather, it took advanced scientific testing to reveal this.").

The district court decisions cited by Defendant do not bind other district courts, even within the same district. *Cactus Corner, LLC v. US Dept. of Agriculture*, 346 F. Supp. 2d 1075, 1106 (E.D. Cal. 2004) citing *Hart v. Massanari,* 266 F.3d 1155, 1176 (9th Cir. 2001) (rejecting argument because it would imply that "district court opinions should bind district courts, at least in the same district"); *Starbuck v. City of San Francisco,* 556 F.2d 450, 457 n. 13 (9th Cir.1977) ("The doctrine of *stare decisis* does not compel one district court judge to follow the decision of another.").

Defendant asks the Court to follow a supposed "weight of authority" in seeking dismissal, and "rely on [this Court's] understanding of a[n] [purported] emerging majority position as the primary or even sole reason to reach a particular conclusion."[2] However, following "non-binding authority for the sake of consensus alone…assumes that the prior decisions (whether individually or collectively) reflect superior information or knowledge" sufficient to override the Court's contrary inclinations."

Defendant's emphasis on "court-counting precedent" relies on the supposed "wisdom of crowds," whereby "the majority view of a group, whose members are each better than random at making decisions, becomes more and more certain to be correct as the number of group members increases."[3]

There is no obligation or principle which requires one court to adopt the factual determinations of another about whether a distinct representation is misleading. *See Brady v. Bayer*

---

[2] Maggie Gardner, Dangerous Citations (June 19, 2020). 95 N.Y.U. L. Rev. (2020 Forthcoming), SSRN.

[3] Brian Soucek and Remington B. Lamons. "Heightened Pleading Standards for Defendants: A Case Study of Court-Counting Precedent." Ala. L. Rev. 70 (2018): 875 (coining the term "court-counting" in a study of how courts apply *Twombly* and *Iqbal* to defendant's answers; discussion of Condorcet Jury Theorem).

*Corp.*, 26 Cal. App. 5th 1156, 1174, 237 Cal. Rptr. 3d 683 (Ct. App. 2018) (finding "One-A-Day Vitamins misleading where the fine print disclosed the necessity to take two per day in contrast to opposite conclusion in *Howard v. Bayer Corp.*, No. 4:10-cv-1662-DPM, 2011 U.S. Dist. Lexis 161583 (E.D.Ark., July 22, 2011 and *Goldman v. Bayer AG*, No. 17-cv-0647-PJH, 2017 U.S. Dist. Lexis 117117 (N.D.Cal., July 26, 2017)).

Regardless of other decisions about other products in other courts, Plaintiff plausibly alleged the Product contains artificial flavors including vanillin, and consumers were misled due to Defendant's failure to disclose this.

### G. Plaintiff's Allegations Regarding the Consumer Survey are Adequately Pled

Here, Plaintiff's deception based on his first-hand experience is bolstered with survey evidence and Defendant's contentions to the contrary are misplaced on a motion to dismiss. *See* Def. Mem. at 15-16;

The consumer survey conducted by Plaintiff is not necessary to establish that conduct was misleading or deceptive under the reasonable consumer test. Am. Compl. at ¶¶ 46-47 ("over seventy-one (71) percent of consumers expected the Product's vanilla taste 'comes from vanilla beans' from the vanilla plant.").

This supports Plaintiff's allegations that reasonable consumers are misled. *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1026 (9th Cir. 2008) (holding that while "[s]urveys and expert testimony regarding consumer assumptions and expectations may be offered," they are not required to prove consumers held a false belief communicated by the advertisements).

Defendant speculates about the reliability of the survey, but the principle is well-established that "when 'consumer survey data is incorporated into . . . [a complaint], . . . the Court must presume its truth on a motion to dismiss, even if a defendant has raised colorable arguments as to the reliability of the survey methodology." *Shalikar v. Asahi Beer U.S.A., Inc.*, No. 17–cv-02713, 2017 WL 9362139, at *7 (C.D. Cal. 2017). "This rule arises from the well-established principle that 'any weighing of evidence is inappropriate on a 12(b)(6) motion.'" *Id.; accord,*

*Branca v. Nordstrom, Inc.*, 2015 WL 10436858 at *7 (S.D. Cal. Oct. 9, 2015) ("The consumer survey data is incorporated into Plaintiff's [complaint], therefore the Court must presume its truth."); *Sharpe*, 2020 WL 4931045 at 4, 12 (expectation that root beer and cream soda would contain vanilla was "bolstered by the persuasive extrinsic evidence that the overwhelming percentage of consumers share this misconception")

Thus, in *Joseph v. J.M. Smucker Company*, No. 17-cv-8735-FMO, 2019 WL 1219708 at *3 (C.D. Cal. Mar. 13, 2019), a sampling of over 250 consumers was deemed satisfactory to defeat a Rule 12(b)(6) motion despite defendant's "speculat[ion] that the survey 'could be a complete fabrication' and 'could have been conducted by Plaintiff's counsel themselves at a backyard barbeque.'"

The court reiterated the basic rule: "that the [complaint] does not incorporate details about the survey's methodology does not disqualify it from the court's consideration." *Shalikar*, 2017 WL 9362139 at *7. Even if the Court were to consider Defendant's criticisms, they would be found wanting. Defendant complains that that Plaintiff asked the wrong questions, failed to use a "control," used "subconscious" methods to alter the answers, etc., but the case law does not require Plaintiff to provide this level of detail. *Id.*; *Branca*, 2015 WL 10436858 at *7.

Defendant's additional arguments are equally unavailing. Defendant says that consumer survey results "cannot salvage a claim that lacks any additional plausible allegations supporting a likelihood of deception," but – as shown - Plaintiff's other allegations are sufficiently plausible to sustain her claims. *Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1231 (9th Cir. 2019) (deeming survey of no value when seeking to impart far-fetched meaning to terms).

## III. PLAINTIFF IS ENTITLED TO EQUITABLE RELIEF

Defendant argues, "[A] plaintiff cannot seek equitable relief under [the UCL and FAL] without first establishing that she lacks an adequate remedy at law. Def. Mem. at 20, citing *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). This interpretation of Ninth Circuit law misreads *Sonner* and cases decided since.

Contrary to Defendant's assertion, the equitable remedy of an injunction is appropriate

where Plaintiff is suffering continual injury. *Spirtos v. Allstate Inc., Co.*, 2003 WL 25900368 at *4 (C.D. Cal. Jan. 10, 2003). Here, Plaintiff and the putative class is continuing to suffer from injuries based on Defendant's representation of "vanilla" without qualification because Plaintiff and class members cannot ascertain whether the Product contains added vanillin not from vanilla beans. A legal remedy is not adequate in these circumstances and it is appropriate therefore to permit Plaintiff to assert the equitable remedy of an injunction. *See Deras v. Volkswagen Group of America, Inc.*, 2018 WL 2267448 at *6 (N.D. Cal. May 17, 2018) (court finding "no bar to pursuit of alternative remedies at the pleadings stage" where plaintiffs argued legal remedy was inadequate) (citing *Aberin v. Am. Honda Motor Co., Inc.*, No. 16-cv-04384-JST, 2018 WL 1473085 at *9 (N.D. Cal. Mar. 26, 2018).

Defendant's citation to *Sonner* is inapposite because *Sonner* only dealt with "past harm" under the UCL, and not future harm. *See Sonner*, 2020 WL 4882896 at *7. Notably, "[i]njunctive relief [was] not at issue" in *Sonner*. *Id*. at *6. Plaintiff's claims for injunctive relief are not precluded by the ruling in *Sonner*. Plaintiff does not have an adequate remedy at law here because an injunction is necessary to stop Defendant's wrongful conduct. *See Gross v. Vilore Foods Co.*, No. 3:20-cv-00894-DMS-JLB, 2020 WL 6319131 at *3 (S.D. Cal. Oct. 28, 2020) (Court agrees that *Sonner* is distinguishable "because it involved only a request for restitution, not a request for injunctive relief.").

## CONCLUSION

For the reasons stated above, Defendants' motion must be denied in its entirety.

Respectfully submitted,

Date: January 21, 2021

**Borison Firm, LLC.**

By: /s/ Scott C. Borison

Scott C. Borison (State Bar No. 289456)
scott@borisonfirm.com
1900 S. Norfolk St Ste 350
San Mateo CA 94403
Telephone: (301) 620-1016
Facsimile: (301) 620-1018

**Sheehan & Associates, P.C.**
Spencer Sheehan (admitted *pro hac vice*)
60 Cuttermill Rd Ste 409
Great Neck, NY 11021
Tel: (516) 268-7080
Fax: (516) 234-7800
spencer@spencersheehan.com


*Counsel for Plaintiff and the Proposed Class*