1   BRIAN R. BLACKMAN (SBN 196996)
    bblackman@blaxterlaw.com
2   J.T. WELLS BLAXTER (SBN 190222)
    wblaxter@blaxterlaw.com
3   DAVID P. ADAMS (SBN 312003)
    dadams@blaxterlaw.com
4   BLAXTER | BLACKMAN LLP
    601 California Street, Suite 1505
5   San Francisco, California 94108
    Telephone: (415) 500-7700
6

7   Attorneys for defendant WHOLE FOODS
    MARKET CALIFORNIA, INC.

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10  JENNIFER FAHEY, individually, and on        Case No: 20-cv-06737-JST
    behalf of those similarly situated,
11                                              **REPLY IN SUPPORT OF**
                    Plaintiff,                  **DEFENDANT'S MOTION TO**
12                                              **DISMISS PLAINTIFF'S FIRST**
            v.                                  **AMENDED COMPLAINT**
13
    WHOLE FOODS MARKET CALIFORNIA,              Date:    March 3, 2021
14  INC.                                        Time:    2:00 P.M.
                                                Dept.:   6, 2nd Floor
15                  Defendant.
                                                The Honorable Jon S. Tigar
16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................1

II. LEGAL ARGUMENT .........................................................................................2

    A. Plaintiff's Opposition Fails to Show Reasonable Consumers Are Deceived

        by the 365 Almondmilk Label..............................................................................2

        1. Plaintiff Relies on Inapposite Cases and Fails to Distinguish the

            Growing Number of Cases Dismissing Similar "Vanilla" Claims

            as Implausible ................................................................................2

        2. The 365 Almondmilk Label Is Not Deceptive Because the Product

            Does Not Contain Artificial Flavors .............................................7

        3. The Fact 365 Almondmilk Actually Contains Vanilla Extract Is

            Material to the Merits of Plaintiff's Claims .....................................9

        4. Reasonable Consumers Can Reference the Product's Ingredient

            Statement to Dispel Any Ambiguity They Perceive in the Front

            Label "Vanilla" Statement...........................................................10

        5. Plaintiff's Consumer Survey Does Not Satisfy the Reasonable

            Consumer Standard .....................................................................12

    B. Plaintiff Does Not State an Actionable Claim for Violation of

        FDA Regulations..............................................................................................13

    C. Plaintiff's Claims for Equitable Relief Must Be Dismissed......................................14

III. CONCLUSION ..................................................................................................15

1

## **TABLE OF AUTHORITIES**

2

## **FEDERAL CASES**

3

*Allred v. Frito-Lay N. Am., Inc.*,
4
    2018 WL 1185227 (S.D. Cal. Mar. 7, 2018)................................................................9

5
*Augustine v. Talking Rain Beverage Co., Inc.*,
    386 F. Supp. 3d 1317 (S.D. Cal. 2019) ................................................................9

6
*Barreto v. Westbrae Nat., Inc.*,
7
    2021 WL 76331 (S.D.N.Y. Jan. 7, 2021) .................................................1, 6, 8

8
*Becerra v. Dr. Pepper/Seven Up, Inc.*,
    945 F.3d 1225 (9th Cir. 2019)................................................................12, 13

9
*Becerra v. Dr Pepper/Seven Up, Inc.*,
10
    2018 WL 3995832 (N.D. Cal. Aug. 21, 2018),................................................12, 13

11
*Branca v. Bai Brands, LLC*,
    2019 WL 1082562 (S.D. Cal. Mar. 7, 2019) ................................................................9

12
*Clark v. Westbrae Natural, Inc.*,
13
    2020 WL 7043879 (N.D. Cal. Dec. 1, 2020) ................................................5, 6, 13

14
*Cosgrove v. Blue Diamond Growers*,
    2020 WL 7211218 (S.D.N.Y. Dec. 7, 2020) ................................................2, 5, 6

15
*Deras v. Volkswagen Group of America, Inc.*,
16
    2018 WL 2267448 (N.D. Cal. May 17, 2018) ................................................15

17
*Ebner v. Fresh, Inc.*,
    838 F.3d 958 (9th Cir. 2016)................................................................2, 11, 12

18
*Engurasoff v. Coca-Cola Co.*,
19
    2014 WL 4145409 (N.D. Cal. Aug. 21, 2014)................................................9

20
*Henderson v. Gruma Corp.*,
    2011 WL 1362188 (C.D. Cal. Apr. 11, 2011)................................................2, 3, 4, 5

21
*Hilsley v. Gen. Mills, Inc.*,
22
    376 F. Supp. 3d 1043 (S.D. Cal. 2019) ................................................8, 9

23
*In re MacBook Keyboard Litig.*,
    2020 WL 6047253 (N.D. Cal. Oct. 13, 2020) ................................................15

24
*Ivie v. Kraft Foods Glob., Inc.*,
25
    2013 WL 685372 (N.D. Cal. Feb. 25, 2013)................................................9

26
*Kennedy v. Mondelez Glob. LLC*,
    2020 WL 4006197 (E.D.N.Y. Jul. 10, 2020) ................................................5

27
*Kosta v. Del Monte Corp.*,
28
    2013 WL 2147413 (N.D. Cal. May 15, 2013) ................................................3, 5

*Mantikas v. Kellogg Co.*,
    910 F.3d 633 (2d Cir. 2018) ........................................................................ 3, 4, 5

*Pichardo v. Only What You Need, Inc.*,
    2020 WL 6323775 (S.D.N.Y. Oct. 27, 2020) ............................................. 5, 6, 13

*Robinson v. Unilever United States, Inc.*,
    2019 WL 2067941 (C.D. Cal. Mar. 25, 2019) ...................................................... 12

*Romero v. Flowers Bakeries, LLC*,
    2016 WL 469370 (N.D. Cal. Feb. 8, 2016) ......................................................... 10

*Sharpe v. A&W Concentrate Co.*,
    2020 WL 4931045 (E.D.N.Y. Aug. 24, 2020) ....................................................... 7

*Spirtos v. Allstate Inc.*,
    2003 WL 25900368 (C.D. Cal. Jan. 10, 2003) .................................................... 15

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ............................................................................. 15

*Steele v. Wegmans Food Markets, Inc.*,
    2020 WL 3975461 (S.D.N.Y. Jul. 14, 2020) .................................................. 4, 5, 6

*Viggiano v. Hansen Natural Corp.*,
    944 F. Supp. 2d 892 (C.D. Cal. 2013) ................................................................ 12

*Vizcarra v. Unilever United States, Inc.*,
    2020 WL 4016810 (N.D. Cal. Jul. 16, 2020) ..................................................... 7, 9

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934, 936 (9th Cir. 2013) ....................................... 2, 3, 5, 10, 11, 12

*Wynn, v. Topco Associates, LLC*,
    2021 WL 168541 (S.D.N.Y. Jan. 19, 2021) ................................... 1, 5, 6, 7, 8, 13

## **CALIFORNIA CASES**

*Brady v. Bayer Corp.*,
    26 Cal. App. 5th 1156 (2018) ....................................................................... 11, 12

*Lavie v. Procter & Gamble Co.*
    105 Cal. App. 4th 496 (2003) ......................................................................... 2, 11

## **STATUTES**

21 U.S.C. § 343-1(a) ........................................................................................... 14

1

## **<u>REGULATIONS</u>**

2   21 C.F.R. §101.22(a)(1) ........................................................................................ 8

3   21 C.F.R. §§ 101.22(i)(1)(ii) .............................................................................. 14

4   21 C.F.R. § 101.22(i)(1)(i) .................................................................................. 14

5   21 C.F.R. § 101.22(i)(1)(iii) ................................................................................ 14

6   21 C.F.R. §§ 101.22(i)(2); ................................................................................... 14

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    INTRODUCTION

Plaintiff Jennifer Fahey's ("Plaintiff") Opposition mistakenly relies on distinguishable case law regarding different ingredients and types of labeling in attempting to argue defendant Whole Foods Market California, Inc.'s ("WFM California") 365 Everyday Value Organic Almond Vanilla Almondmilk Beverage ("365 Almondmilk") is deceptively labeled as "vanilla" when it is flavored by "organic vanilla extract" and "organic natural flavors."  Plaintiff relies on these distinguishable cases while failing to meaningfully address the growing number of cases holding that the word "vanilla" on a front label of similar products informs a consumer how the product will taste, not what its ingredients are.

Indeed, since the filing of WFM California's motion, two more courts have joined the growing consensus and dismissed similar vanilla flavor labeling lawsuits.  *Barreto v. Westbrae Nat., Inc.*, No. 19-cv-9677-PKC, 2021 WL 76331, at *4 (S.D.N.Y. Jan. 7, 2021) (dismissing claims that "Vanilla Soymilk" was deceptively labeled because it was not exclusively flavored by vanilla extract); *Wynn, v. Topco Associates, LLC*, No. 19-cv-11104-RA, 2021 WL 168541, at *6 (S.D.N.Y. Jan. 19, 2021) (dismissing claims that "Vanilla Almondmilk" was deceptively labeled because it was not exclusively flavored by vanilla extract).  The same conclusion applies here.

Plaintiff's remaining arguments also fail.  Plaintiff has not plausibly alleged that 365 Almondmilk must be labeled "artificially flavored" under either FDA regulations or consumer deception standards.  Indeed, any such claim would be expressly preempted by the FDCA.  The case law cited in Plaintiff's Opposition does not overcome the fact that 365 Almondmilk contains vanilla extract and, therefore, is not deceptive under Plaintiff's theory as a matter of law.  Further, given Plaintiff's admission that the front label is, at most, ambiguous, reasonable consumers can check the back label ingredient statement if they were somehow confused about the product's flavoring ingredients.  Plaintiff fails to explain away the deficiencies presented in her consumer survey or reconcile the conflict between her survey conclusions and the fact that consumer expectations may actually be shaped by the common use of non-vanilla extract vanilla flavors, as alleged in Plaintiff's FAC.  Finally, Plaintiff has failed to demonstrate a violation of the federal

labeling regulations and her claims for equitable relief must be dismissed because she has an adequate remedy at law.

## II.       LEGAL ARGUMENT

### A.       Plaintiff's Opposition Fails to Show Reasonable Consumers Are Deceived by the 365 Almondmilk Label.

Plaintiff does not dispute that, in order to state an actionable consumer deception claim, she must set forth allegations establishing not just that she was deceived, but "a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quoting *Lavie v. Procter & Gamble Co.,* 105 Cal. App. 4th 496 (2003)).  It is not misleading to describe a product that has a vanilla taste as "vanilla."  The designation allows consumers to quickly understand the 365 Almondmilk's flavor and differentiate it from similar products like plain, chocolate or some other flavored almond milk.  *Cosgrove v. Blue Diamond Growers*, No. 19-cv-8993, 2020 WL 7211218, at *3 (S.D.N.Y. Dec. 7, 2020).  This is precisely the situation here.  Reasonable consumers understand that the "vanilla" statement on 365 Almondmilk's label is a flavor designation – not a representation that the product's flavor comes exclusively from vanilla beans or vanilla extract.

Plaintiff's Opposition offers nothing new to bolster the plausibility of her argument that reasonable consumers understand the "vanilla" statement on an almond milk label to mean the product's vanilla flavor comes exclusively or predominately from vanilla beans.  In fact, as detailed in WFM California's moving papers, a series of decisions in similar vanilla cases have rejected Plaintiff's precise argument and theory of deception.  *See* ECF NO. 21 at 13:6-14:26.  This Court should do the same.

### 1.       Plaintiff Relies on Inapposite Cases and Fails to Distinguish the Growing Number of Cases Dismissing Similar "Vanilla" Claims as Implausible.

Plaintiff cites to several cases addressing other types of products, labeling, and ingredients to argue that her deception theory is not unreasonable as a matter of law.  Specifically, Plaintiff

1   relies on *Williams v. Gerber Prods. Co., Mantikas v. Kellogg Co., Henderson v. Gruma Corp.,* and

2   *Kosta v. Del Monte Corp.* (none of which involve a vanilla label statement or Plaintiff's precise

3   theory of deception) to assert that the FAC plausibly alleges reasonable customers would in fact

4   conclude that the word "vanilla" on a product's front label implies that the product's flavoring was

5   derived exclusively from natural vanilla extract, such that the front label is misleading.  *See* ECF

6   No. 28 at 8:26-10:2.  None of these cases, however, support or address this deception theory and are

7   all distinguishable on their face.

8       In *Williams,* consumers challenged, as deceptive and misleading, the use of the phrase "fruit

9   juice" alongside images of real fruit on the front label of defendant's snack product because the

10  snack contained no fruit juice.  *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 936 (9th Cir. 2013).

11  Plaintiffs further argued that the alleged deception was reinforced by the package's statement that

12  the product was "[m]ade with real fruit juice and other natural ingredients."  *Id.*  The Ninth Circuit

13  overturned the district court's dismissal order, holding that reasonable consumers could view these

14  statements and conclude that the product was made with juice from the fruits identified on the

15  package.  *Id.* 939.

16      The present case is wholly distinguishable from *Williams* on several grounds – both as to

17  what was advertised (i.e., an ingredient rather than a flavor) and how it was advertised (i.e., with an

18  express claim).  365 Almondmilk does not expressly claim to be "made with vanilla" nor include

19  images of a vanilla plant or vanilla bean that might suggest the statement "vanilla" is an ingredient

20  claim.  ECF No. 19, ¶3.  Instead, the front label has a picture of two almonds and the word vanilla is

21  given second billing to larger statements such as "365 Everyday Value," "Almond," "Organic" and

22  "unsweetened."  *Id.*   The product in *Williams* also used a common ingredient, "fruit juice," as

23  opposed to 365 Almondmilk's use of "vanilla," which is commonly read as a flavor rather than a

24  specific ingredient.  Finally, and most importantly, 365 Almondmilk actually contains vanilla

25  extract.  Thus, none of the key facts underlying the *Williams* decision exist in the present matter.

26      Plaintiff's reliance on *Henderson v. Gruma Corp.,* No. 10-cv-04173-AHM, 2011 WL

27  1362188 (C.D. Cal. Apr. 11, 2011), fails for similar reasons.  In *Henderson*, plaintiff challenged the

28

packaging for "Guacamole Flavored Dip" as deceptive because, among other things, the word "guacamole" appeared in large type and was accompanied by pictures of avocados.[1]  *Id.* at *12. Although the label included a small type disclaimer, stating the product was guacamole flavored, the overall impression given by the pictures and green color conveyed that the dip could be, or contained, guacamole.  *Id.*  As with *Williams*, this case is distinguishable because 365 Almondmilk's packaging does not highlight the disputed ingredient with large type or pictures, the disputed ingredient is commonly thought of as a flavor (vanilla) rather than a product or ingredient (guacamole) and, again, 365 Almondmilk actually contains vanilla extract.

Plaintiff next relies on *Mantikas v. Kellogg Co.*, 910 F.3d 633 (2d Cir. 2018), to argue that consumers reasonably expect a product to contain an ingredient identified on the front label.  In *Mantikas*, plaintiffs alleged that crackers advertised as "MADE WITH WHOLE GRAIN" and "MADE WITH 8G OF WHOLE GRAIN PER SERVING" were deceptively labeled because they were made predominantly with white flower.  *Mantikas*, 910 F.3d at 635–36.  The Second Circuit overturned the district court's dismissal of plaintiff's statutory false advertising claims, holding that "the representation that a cracker is 'made with whole grain' would [] plausibly lead a reasonable consumer to conclude that the grain ingredient was entirely, or at least predominately, whole grain." *Id.* at 638.  The court focused on the fact that the disputed statements were express ingredient claims.  The court explained "reasonable consumers are likely to understand that crackers are typically made predominantly of grain.  They look to the bold assertions on the packaging to discern what type of grain."  *Id.* at 638.

Subsequent decisions have distinguished *Mantikas* on the ground that the challenged packaging statements were express statements about ingredients.  *See Steele v. Wegmans Food Markets, Inc.*, No. 19-cv-9227-LLS, 2020 WL 3975461, at **2-3 (S.D.N.Y. Jul. 14, 2020) ("This case is different [than *Mantikas*]. The Wegmans container does not mention vanilla beans, or bean

---

[1] Plaintiff also challenged the label statements "With Garden Vegetables," "The Authentic Tradition," "0 g transfat" and "All Natural."  *Henderson,* 2011 WL 1362188 at **10-15.  The Court dismissed Plaintiff's claims as to the first statement because it was true, the second because the statement constituted non-actionable puffery, the third because it was preempted and allowed the case to proceed as to the fourth.  *Id.*

extract, and even if vanilla or bean extract is not the predominant factor, if the sources of the flavor

are natural, not artificial, it is hard to see where there is deception."); *see also Wynn v. Topco*

*Associates*, 2021 WL 168541, at *4 (same); *Kennedy v. Mondelez Glob*. LLC, No. 19-cv-302-ENV,

2020 WL 4006197, at **1-3 (E.D.N.Y. Jul. 10, 2020) (graham crackers were not deceptively

labeled because the word "graham" in the title described the product's taste, not the ingredient

"graham flour").  These distinctions apply with equal force to the present matter.

Plaintiff lastly relies on *Kosta v. Del Monte Corp.*, No. 12-cv-01722-YGR, 2013 WL

2147413 (N.D. Cal. May 15, 2013), as yet another example of a court refusing to dismiss a false

advertising case at the motion to dismiss stage.  Yet, *Kosta* is distinguishable from the facts of this

case because the alleged deception involved freshness claims rather than ingredient or flavor

claims.  *Id.* at *12.  The court relied on factors such as where the product (a cup of cut fruit) was

displayed in the grocery store and a label claim that the product "must be refrigerated" to hold that

consumers could expect the product to contain fresh fruit.  *Id.*  No such factors are present here, and

*Kosta*'s relevance is unclear.

Plaintiff's reliance on *Williams*, *Henderson, Mantikas,* and *Kosta* is further undercut by the

increasing number of district court cases that have rejected Plaintiff's deception arguments and

theories in "vanilla" labeling cases that involve nearly identical allegations and supporting facts.

*See Steele*, 472 F. Supp. 3d at 50; *Clark v. Westbrae Natural, Inc*., No. 20-cv-03221-JSC, 2020 WL

7043879, at *1 (N.D. Cal. Dec. 1, 2020); *Pichardo v. Only What You Need, Inc.*, No. 20-cv-493-

VEC, 2020 WL 6323775, **3-5 (S.D.N.Y. Oct. 27, 2020); *Cosgrove*, 2020 WL 7211218, at *3.

Plaintiff attempts to cordon these cases off by discussing them briefly at the end of her Opposition

and arguing they are inapplicable because they contained no allegations that the products had

artificial flavors.  Plaintiff's argument fails for four reasons.

First, and foremost, contrary to Plaintiff's assertion, it appears from the district courts'

opinions that both the *Steele* and *Cosgrove* cases actually did involve allegations that the products

contained artificial flavors.  *See Steele*, 472 F. Supp. 3d at 49 ("Plaintiffs' claim that Wegmans' ice

cream is flavored by artificial flavors, not natural vanilla flavor, has no factual support.");

*Cosgrove*, 2020 WL 7211218, at * 1 ("Plaintiffs contend this labeling is misleading because 'it has less vanilla than the label represents, contains non-vanilla flavors which provide its vanilla taste and contains artificial flavors, not disclosed to consumers on the front label as required by law and consumer expectations.'").

Second, Plaintiff's contention that these cases did not involve artificial flavoring allegations is immaterial to the point on which the cases are offered in the present case.  The main thrust of these cases is that consumers read "vanilla" as a flavor, rather than an ingredient claim.  *See Steele*, 472 F. Supp. 3d at 50 ("The Wegmans container does not mention vanilla beans, or bean extract, and even if vanilla or bean extract is not the predominant factor, if the sources of the flavor are natural, not artificial, it is hard to see where there is deception.");  *see also Clark*, 2020 WL 7043879, at *3 (alleged facts do not  plausibly support inference that reasonable consumers interpret "vanilla" on label to mean Product's flavor  derived exclusively from the vanilla bean); *Pichardo*, 2020 WL 6323775, at *3 (same); *Cosgrove,* 2020 WL 7211218, at *3 ("vanilla" representation without additional language modifiers refers to flavor and not to flavoring ingredient).[2]  The holdings and reasoning of these cases are directly applicable to the present allegations, and defeat Plaintiff's reliance on *Williams*, *Henderson, Mantikas,* and *Kosta*.

Third, two recent decisions (in vanilla cases also brought by Plaintiff's counsel) concluded that consumers view "vanilla" as a flavor, not an ingredient claim and did so in the face of allegations that the product was artificially flavored.  *Barreto*, 2021 WL 76331, at *4 ("In assessing the product's packaging as a whole, a reasonable consumer would conclude that the soymilk has a vanilla flavor and at least some of it is natural vanilla flavor. There is no claim anywhere on the packaging that natural vanilla is the predominant source of the vanilla flavor and, as discussed below, the Complaint does not adequately allege the presence of artificial flavors."); *Wynn*, 2021

---

[2] Contrary to Plaintiff's suggestion, WFM California does not rely on these cases in an effort to encourage the Court to follow "the wisdom of crowds" or to "engage in herding" behavior. *See* ECF No. 28 at 19:10-21:8.  These cases are persuasive authority from six different federal judges presented with nearly identical claims.  WFM California contends the Court should consider and follow the same logic and reasoning that led these federal judges to conclude that reasonable consumers are not misled by the "vanilla" statements at issue.

WL 168541, at *4 ("Defendant's "Vanilla Almondmilk" front label makes no representations whatsoever about the source of the vanilla flavor or the ingredients constituting it—and indeed Plaintiffs acknowledge that the flavor is at least partially constituted by real vanilla..")

Finally, Plaintiff's reliance on *Vizcarra v. Unilever United States, Inc.*, No. 20-cv-2777, 2020 WL 4016810 (N.D. Cal. Jul. 16, 2020), and *Sharpe v. A&W Concentrate Co.*, No. 19-cv-768-BMC, 2020 WL 4931045, at *1 (E.D.N.Y. Aug. 24, 2020) as "vanilla" labelling cases that support her deception theory is misplaced.  Both cases are readily distinguishable.  The court in *Vizcarra* did not examine whether the product's labeling and "vanilla" statements and images were misleading to reasonable consumers.[3]  *Vizcarra*, 2020 WL 4016810, at *2.  Thus, it does address the issue at the heart of WFM California's motion.  Further, in *Sharpe*, the defendant's packaging expressly claimed the product was "MADE WITH AGED VANILLA."  *Sharpe,* 2020 WL 4931045, at *1.  The court's holding and analysis centered on this specific language.  The 365 Almondmilk front label does not include anything like the "made with" representation at issue in *Sharpe.*  ECF No. 19, ¶3.

### 2. The 365 Almondmilk Label Is Not Deceptive Because the Product Does Not Contain Artificial Flavors.

Plaintiff contends that labeling 365 Almondmilk as "vanilla" is misleading because the product "is flavored by artificial vanillin yet omits 'Artificial' from the product name."  Even assuming such a claim is not preempted for the reasons detailed in Section II.B below, this argument still fails.  Plaintiff has not sufficiently alleged that certain components of 365 Almondmilk's "organic natural flavors" - vanillin, maltol and piperonal - are artificial flavors.  ECF No. 19, ¶¶52, 59.  Assuming these compounds are present, as Plaintiff claims, which is not certain given Plaintiff's flawed GC-MS analysis, Plaintiff does not allege facts supporting a conclusion that

---

[3] Even if it had, the defendant's ice cream label used starkly different language and images than the simple "vanilla" statement on the 365 Almondmilk label.  The ice cream carton stated "natural vanilla" in large green lettering against a black back drop and included depictions of "two vanilla beans and vanilla flowers and a scoop of the ice cream with noticeable vanilla-bean specks." *Vizcarra*, 2020 WL 4016810, at *1.  This is the sort of additional language and imagery that can transform a vanilla statement from a flavor designation to an ingredient claim.

1    these compounds are artificial as opposed to natural.

2        As to vanillin, the FAC admits that vanillin may be derived from vanilla beans, wood pulp,

3    or petroleum.  ECF No. 19, ¶¶55, 65.  Of these options, only petroleum-derived vanillin would

4    qualify as artificial.  21 C.F.R. §101.22(a)(1) (defining artificial flavor as substances not derived

5    from "spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf

6    or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products

7    thereof.").  Plaintiff offers no allegations to support an inference that 365 Almondmilk's vanillin

8    was derived from petroleum, as opposed to wood pulp, vanilla beans, or some other unnamed

9    natural source.  Similarly, Plaintiff offers no facts regarding the source of the alleged maltol and

10    piperonal, each of which could be naturally derived.

11        In the last month alone, two courts have dispensed with nearly identical arguments brought

12    by Plaintiff's same lawyers in this action.  *Barreto*, 2021 WL 76331, at **3-4; *Wynn*, 2021 WL

13    168541, at *6.  In each case, the plaintiff argued with no supporting evidence that vanillin and other

14    chemicals discovered in a GC-MS analysis were artificially derived, and in each case, the Court

15    refused to credit these unsupported allegations.  *Barreto*, 2021 WL 76331, at **3-4 ("the [GC-MS]

16    analysis on which the Complaint heavily relies does not state or otherwise plausibly support the

17    conclusion that the added vanillin comes from artificial rather than natural sources...Although the

18    GC-MS analysis detected maltol, it contains no finding whether the maltol was derived artificially

19    or naturally."); *Wynn*, 2021 WL 168541, at *6 ("Absent any factually substantiated allegations that

20    the vanillin, maltol, and piperonal in Defendants' product are not derived from natural sources, the

21    Court finds that Plaintiffs have failed to allege the presence of artificial flavors, and their claim that

22    the ingredient list makes a materially misleading omission thus fails.")  Just as in *Barreto* and

23    *Wynn,* Plaintiff here is unable to allege facts showing that 365 Almondmilk contains artificial

24    flavors.

25        In contrast to the virtually identical allegations in *Barreto* and *Wynn*, Plaintiff cites several

26    cases that are readily distinguishable.  *See Hilsley v. Gen. Mills, Inc.*, 376 F. Supp. 3d 1043, 1046

27    (S.D. Cal. 2019) (dispute was about whether malic acid was used as flavor or pH control agent, not

28

Case No. 20-cv-06737-JST

REPLY ISO MTN. TO DISMISS FAC

about whether it was artificially derived); *Allred v. Frito-Lay N. Am., Inc.*, No. 17-cv-1345-JLS, 2018 WL 1185227, at *5 (S.D. Cal. Mar. 7, 2018) (same); *Engurasoff v. Coca-Cola Co.*, No. 13-cv-3990-JSW, 2014 WL 4145409, at *3 (N.D. Cal. Aug. 21, 2014) (dispute was about whether phosphoric acid used as flavor, not about whether it was artificially derived); *Ivie v. Kraft Foods Glob., Inc.*, No. 12-cv-2554-RMW, 2013 WL 685372, at *10 (N.D. Cal. Feb. 25, 2013) (dispute was about whether maltodextrin and sodium citrate used as sweeteners or flavors, not about whether they were artificially derived); *Vizcarra,* 2020 WL 4016810, at *1 (defendant did not challenge whether plaintiff adequately alleged the disputed ingredient was artificial); *Augustine v. Talking Rain Beverage Co., Inc.*, 386 F. Supp. 3d 1317, 1326 (S.D. Cal. 2019) (plaintiff adequately supported allegations that ingredient was artificial by testing "the Product and identified the malic acid used in the beverages as the synthetic industrial flavoring chemical called d-1 malic acid."); *Branca v. Bai Brands, LLC*, No. 18-cv-757-BEN, 2019 WL 1082562, at *3 (S.D. Cal. Mar. 7, 2019) ("Specifically, the FAC narrates "what, how, and why" the Defendants use artificial malic acid by discussing "with particularity" how artificial malic acid is created, is used in beverage products like Bai, and why Defendants use " 'd–1–malic acid' " in place of natural malic acid.").  In contrast to *Hilsley, Allred, and Engurasoff,* the parties do not argue whether vanillin, maltol and piperonal are flavors.  Unlike in *Vizcarra,* the adequacy of Plaintiff's allegations *is* at issue before the Court, and unlike in *Augustine* and *Branca*, Plaintiff here alleges no facts supporting the conclusion that these ingredients are artificially derived.

WFM California demonstrated in its moving papers that Plaintiff failed to include any plausible allegations that the 365 Almondmilk contains artificial ingredients.  *See* ECF No. 21 at 5:21-7:2, 16:20-18:4.  In fact, contrary to Plaintiff's arguments, the fact that 365 Almondmilk is certified organic, and the back label expressly identifies the source of non-vanilla flavor as "organic natural flavors" demonstrates any added flavoring is natural – not artificial.

### 3.    The Fact 365 Almondmilk Actually Contains Vanilla Extract Is Material to the Merits of Plaintiff's Claims.

Plaintiff contends that WFM California's reliance on the fact 365 Almondmilk actually

1  contains vanilla extract is immaterial because the cases WFM California cited in support of this

2  argument only apply in the context of a "made with" label claim, i.e., "made with real vanilla" or

3  "made with vanilla extract."  ECF No. 28 at 13:24-14:16.  This is a distinction without a difference.

4  The particular labeling statements allegedly imparting the impression that an ingredient is present

5  (i.e., whether the product is advertised as "vanilla" or "made with vanilla") do not affect the

6  reasoning applied in finding that consumers are not misled when the product actually contains the

7  disputed ingredient.

8  Plaintiff argues that *Romero v. Flowers Bakeries, LLC*, No. 14-cv-05189-BLF, 2016 WL

9  469370, at *6–7 (N.D. Cal. Feb. 8, 2016) does not apply where, as here, Plaintiff's argument deals

10  with the proportion of vanilla to non-vanilla flavoring in the product.  According to Plaintiff, since

11  the label in *Romero* disclosed the product contained a "blend" of grains, any amount of whole

12  wheat would render the label truthful.  Though this may be true in *Romero*, it does not entail that

13  the inverse is necessary – i.e., that 365 Almondmilk needs to be labeled as vanilla/non-vanilla

14  flavor blend.  Such a point is not supported by *Romero*, nor WFM California's other cited cases on

15  this point, none of which contain the qualifying "blend" language found in *Romero*.

16  Plaintiff also relies on *Williams* to argue that the presence of "organic vanilla extract" is

17  immaterial.  Plaintiff's reliance on *Williams* on this point makes little sense given that the presence

18  of vanilla extract is one of the primary reasons the reasoning of *Williams* does not apply to this

19  case.  Again, in *Williams*, the court found a reasonable consumer would expect the product to

20  contain juices derived from the fruits advertised on the label.  *Williams,* 552 F.3d at 936.  The court

21  held that the presence of white grape juice, a juice not advertised by the product's front label, did

22  not cure this alleged deception.  *Id.* at 939.  Here, unlike in *Williams*, the ingredient that Plaintiff

23  alleges is advertised (i.e., vanilla) is the same ingredient that is actually present in the product.

24  **4.**  **Reasonable Consumers Can Reference the Product's Ingredient Statement to**

25  **Dispel Any Ambiguity They Perceive in the Front Label "Vanilla" Statement.**

26  Plaintiff argues, in her Opposition, that 365 Almondmilk's front label "vanilla" statement

27  "creates an ***ambiguity*** regarding how a consumer interprets the phrase 'vanilla'" and therefore this

1  Court must rule that a reasonable consumer could construe it as imparting an ingredient, rather than

2  a flavor claim as a matter of law.  *See* ECF No. 28, at 15:15-20 (emphasis added).  Plaintiff further

3  argues that, under *Williams*, WFM California cannot rely on the back-label ingredient statements to

4  clarify any such ambiguity.  *See* ECF No. 28 at 16:21-17:14.  The Ninth Circuit, however, has

5  limited *Williams* as only applying where the front label contains an affirmative misrepresentation as

6  opposed to an ambiguity.  *See Ebner v. Fresh, Inc*. 838 F.3d 958, 965–66 (9th Cir. 2016) (*Williams*

7  stands for the "proposition that if the defendant commits an act of deception, the presence of fine

8  print revealing the truth is insufficient to dispel that deception.").

9       In *Ebner,* the plaintiff alleged that a lipstick label was misleading because, although it was

10  "undisputed that the [] label discloses the correct weight of included lip product," some amount of

11  product was inaccessible at the bottom of the tube following use.  *Ebner,* 838 F.3d at 961-2, 966.

12  The court ended up giving the reasonable consumer more credit than Plaintiff does here, holding:

13           [H]ere, unlike in *Williams*, there is no deceptive act to be dispelled.  As
             explained above, [the lip product's] weight label complies with both
14           federal and California law.  Further, the weight label does not contradict
             other representations or inferences on [the lip product's] packaging.
15           Apart from the accurate weight label, there are no other words, pictures,
             or diagrams adorning the packaging, as there were in *Williams*, from
16           which any inference could be drawn or on which any reasonable belief
             could be based about how much of the total lip product can be accessed
17           by using the screw mechanism.  In the absence of any statement or other
             depiction anywhere on the package about lip product accessibility, we
18           conclude that it is not plausible that "a significant portion of the general
             consuming public or of targeted consumers, acting reasonably in the
19           circumstances, could be misled" into thinking the entire lip bullet will
             clear the tube's opening.
20

21  *Id.* at 966, quoting *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 507 (2003).

22       Similarly, in *Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156 (2018), a California state

23  appellate court considered whether "One a Day" brand vitamins were deceptively labeled where the

24  back label disclosed that a user must take two vitamins per day.  The court characterized *Williams*

25  and its progeny applying where "a back label ingredients list [] conflicted with, rather than

26  confirm[ed], a front label claim [and thus] could not defeat an action." *Id.* at 1168.  The court in

27  *Brady* relied on this distinction to hold that the vitamins were deceptively labeled because the

28

1    product's name contained an affirmative misrepresentation with no qualifying language to render

2    the label ambiguous and justify referencing the back label. *Id.* at 1172.

3         The opposite situation exists here; 365's Almondmilk's front label accurately states that the

4    product is vanilla flavored.  There is no deception.  There is, at worst, ambiguity – as Plaintiff

5    readily admits.  In such cases, a reasonable consumer will review the product's back label.

6    *Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 892, 892 n.38 (C.D. Cal. 2013) ("In cases

7    where a product's front label is accurate and consistent with the statement of ingredients, courts

8    routinely hold that no reasonable consumer could be misled by the label, because a review of the

9    statement of ingredients makes the composition of the [product] clear.").  Contrary to Plaintiff's

10   assertion, this approach does not require consumers to scrutinize all back labels, only that a

11   reasonable consumer is expected to do so to confirm an understanding of an ambiguous front label.

12        This reasoning distinguishes *Williams* and its progeny cited in Plaintiff's Opposition.

13   *Robinson v. Unilever United States, Inc.*, No. 17-cv-3010-DMG, 2019 WL 2067941, at *3 (C.D.

14   Cal. Mar. 25, 2019) is not on point because the defendant did not cite to *Ebner* and the court was

15   not forced to reconcile the holding with *Ebner*'s limitation of *Williams*.  Likewise, Plaintiff's out-

16   of-circuit case law is not binding and fails to address the holding in *Ebner*.

17        **5.    Plaintiff's Consumer Survey Does Not Satisfy the Reasonable Consumer**

18             **Standard.**

19        Plaintiff argues that the Court is required to accept the conclusions of her consumer survey,

20   regardless of flaws in her survey methodology.  This argument fails to account for the Ninth Circuit

21   decision in *Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1231 (9th Cir. 2019), holding that

22   courts are not so bound.  As the district court in *Becerra* explained, it is not the law that a court

23   must accept all allegations regarding a survey as true for purposes of a motion to dismiss.  The

24   court may have to accept that the survey exists and that its purported results were as pled, but not

25   that it was valid or that it provides support for the plaintiff's interpretation of it.  *Becerra v. Dr*

26   *Pepper/Seven Up, Inc.*, No. 17-cv-05921-WHO, 2018 WL 3995832, at **6-7 (N.D. Cal. Aug. 21,

27   2018), aff'd, 945 F.3d 1225 (9th Cir. 2019).  Plaintiff's consumer survey, as detailed in WFM

28

California's motion, adds nothing to the reasonable consumer analysis because it suffers from at least three fatal flaws – a lack of response options, leading questions and a failure to address the core issue. *See* ECF No. 21 at 15:3-16:2. Further, even if a court were to credit the underlying facts alleged in the study, it does not follow that it must credit Plaintiff's attorney's flawed lay-interpretation of that data.

Plaintiff separately argues that a consumer survey is not necessary to establish that reasonable consumers are likely to be misled by 365 Almondmilk's label. The survey, however, is Plaintiff's only factual support that reasonable consumers are deceived by the 365 Almondmilk label. Given this fact and that Plaintiff's allegations of consumer perception are otherwise implausible, Plaintiff's FAC cannot survive a motion to dismiss.

Plaintiff's next argument that consumer expectations are set by FDA labeling regulations is unsupported by any foundational facts and has been dismissed by other courts. *See Clark*, 2020 WL 7043879, at *4 (allegations that FDA regulations regarding vanilla flavoring effectively establish custom and practice are conclusory because plaintiff "does not include any facts that plausibly support the inference Plaintiff wants the Court to draw..."); *see also Wynn*, 2021 WL 168541, at *3 (complaint does not allege facts showing reasonable consumers are aware of complex federal labeling regulations or that consumers incorporate "regulations into their day-to-day marketplace expectations.") (internal citations and references omitted).

Similarly, Plaintiff's survey fails to account for the fact that, as the FAC admits, consumers are used to purchasing products where vanilla flavoring is not provided by vanilla extract. ECF No. 19, ¶38; *Pichardo*, 2020 WL 6323775, at *6 (disregarding consumer survey because "it runs headlong into Plaintiffs' acknowledgement in the original complaint that approximately 98% of commercial vanillin does not come from vanilla extract."). If consumers are used to products that are advertised as vanilla and not flavored exclusively with vanilla extract, then they will not be deceived as Plaintiff suggests.

**B.      Plaintiff Does Not State an Actionable Claim for Violation of FDA Regulations.**

Unable to establish that 365 Almondmilk's label is deceptive to reasonable consumers,

Plaintiff attempts to fabricate a regulatory violation by insisting that the product must be labeled "artificially flavored" or, at the very least, labeled "with other natural flavors," under 21 C.F.R. section 101.22(i).  *See* ECF No. 28 [Opposition] at 6:20-7:1.  According to Plaintiff, the fact that 365 Almondmilk may taste like vanilla does not relieve WFM California from these labeling obligations.  *Id*. at 6:15-19.  Plaintiff's argument, however, misconstrues WFM California's regulatory and preemption arguments and completely ignores its detailed explanation (ECF No. 21 [Motion] at 4:21-9:25) as to why neither of these labeling statements are required.  *See* ECF No. 21 at 4:21-9:25.

Plaintiff's allegations and arguments do not plausibly demonstrate a regulatory violation. WFM California will not fully rehash its regulatory and preemption arguments here.  However, by way of response, WFM California does not contend that it complies with the federal labeling regulations merely because the product has a vanilla taste.  *See* ECF No. 21 at 4:21-9:25.  Rather, its argument is threefold.  First, Plaintiff admits 365 Almondmilk contains both organic vanilla extract (the contested ingredient) and organic natural flavors.  *See* ECF No. 19 [FAC], ¶50. Second, because both of these are natural and organic ingredients, the federal regulations do not require 365 Almondmilk be labeled as "artificial" or "artificially flavored."  *See* 21 C.F.R. §§ 101.22(i)(1)(ii) and (i)(2); *see also* ECF No. 21 at 5:21-7:27.  Finally, the FAC does not allege sufficient facts to infer either:  1) that the amount of vanilla extract in the product is insufficient to supply the vanilla taste; or 2) that the organic natural flavors simulate, resemble or reinforce the vanilla taste (as opposed to supplying almond flavor, smoothness, thickness, aroma or some other attribute of the 365 Almondmilk taste profile).  *See* 21 C.F.R. § 101.22(i)(1)(i), (iii); *see also* ECF No. 21 at 8:1-9:25.  Thus, any claim that 365 Almondmilk's label must state "artificially flavored" or "with other natural flavors," based on these allegations and theory of deception, would impose requirements "different from, or in addition to" the federal food labeling regulations and is therefore preempted.  *See* 21 U.S.C. § 343-1(a); *see also* ECF No. 21 at 9:28-11:16.

## C.     Plaintiff's Claims for Equitable Relief Must Be Dismissed.

WFM California demonstrated in its moving papers that Plaintiff's equitable claims must be

dismissed for the fundamental reason that Plaintiff has not established that she lacks an adequate remedy at law.  *See* ECF No. 21 at 20:9-21:21.  Plaintiff does not dispute that she has not alleged that she lacked an adequate remedy at law.  *See* ECF No. 28 at 22:23-23:18.  Nor could Plaintiff have plausibly alleged that she lacks an adequate remedy at law for her restitution claims, given that she pleads a CLRA claim for damages.  *See* ECF No. 19, ¶ 153.  This alone is fatal to each of her claims for equitable relief.  *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (dismissing equitable claims because "the operative complaint" failed to "allege that Sonner lacks an adequate legal remedy").

Plaintiff's only argument in response is that her equitable claim for injunctive relief should survive because "Plaintiff is suffering continual injury." *See* ECF No. 28 at 22:27-23:10.  All of the cases Plaintiff cites in support of this argument, however, were decided before the Ninth Circuit clarified the law governing claims for equitable relief in *Sonner*.  *See id.* (citing *Spirtos v. Allstate Inc.*, 2003 WL 25900368 at *4 (C.D. Cal. Jan. 10, 2003) and *Deras v. Volkswagen Group of America, Inc.*, 2018 WL 2267448 at *6 (N.D. Cal. May 17, 2018)).  Those cases are superseded by *Sonner*.  Plaintiff also notes that *Sonner* did not involve a claim for injunctive relief.  ECF No. 28 at 23:11-18.  While this appears true, it is yet again a distinction without a difference.  An injunction is an equitable remedy and the Ninth Circuit expressly held that a claim for equitable relief fails when the plaintiff has not alleged that she lacks an adequate remedy at law.  *Sonner*, 971 F.3d at 844.  "In fact, numerous courts in this circuit have applied *Sonner* to injunctive relief claims." *In re MacBook Keyboard Litig.*, 2020 WL 6047253, at *3 (N.D. Cal. Oct. 13, 2020) (collecting cases).  Because Plaintiff has not and cannot allege that she lacks an adequate remedy at law, her equitable claims—both for restitution and injunctive relief—must be dismissed.

## III.   CONCLUSION

For the reasons stated herein, WFM California asks that this Court grant its motion and dismiss Plaintiff's FAC with prejudice.

1 | Dated: January 27, 2021                          BLAXTER | BLACKMAN LLP

2

3                                             By _____
                                                    */s/ Brian R. Blackman*
4                                                  BRIAN R. BLACKMAN
                                                   J.T. WELLS BLAXTER
5                                                   DAVID P. ADAMS
                                              Attorneys for Defendant WHOLE FOODS
6                                               MARKET CALIFORNIA, INC

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28