UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER FAHEY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>WHOLE FOODS MARKET, INC., et al.,<br><br>　　　　Defendants. | Case No. 20-cv-06737-JST<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: ECF No. 21 |

Before the Court is Defendant Whole Foods Markets California, Inc.'s ("Whole Foods") motion to dismiss Plaintiff Jennifer Fahey's first amended complaint ("FAC"). ECF No. 21. The Court will grant the motion.

## I. BACKGROUND

Fahey brings this action against Whole Foods for its allegedly "false and misleading marketing practices with regards to its [365 Organic Unsweetened Almond Vanilla Almondmilk Beverage ("365 Vanilla Almondmilk" or "the Product")]." ECF No. 19 ("FAC") ¶ 6. The packaging at issue is reproduced below:



*Id.* ¶ 3. Fahey contends that the use of "vanilla" on the 365 Vanilla Almondmilk's front label without any qualifying terms causes consumers to believe that the product's vanilla flavor comes exclusively or predominately from vanilla beans. *Id.* ¶¶ 3, 45, 48; *see also id.* ¶ 46 ("[A] consumer survey commissioned by plaintiff's counsel[] [found] that over seventy-one (71) percent of consumers expected the Product's vanilla tase 'comes from vanilla beans' from the vanilla plant."). In reality, Fahey alleges, the 365 Vanilla Almondmilk "*may* contain a trace or de minimus amount of vanilla, but this is boosted by synthetic vanillin from wood pulp or petroleum derivatives." *Id.* ¶ 55 (emphasis in original). Fahey also alleges that the Product contains "undisclosed artificial flavors – maltol and piperonal." *Id.* ¶ 59. These allegations are based on a scientific analysis of the Product that "reveal[ed] an abnormal excess of vanillin . . . relative to the amount and presence of the key odor-active compounds in authentic vanilla." *Id.* ¶ 53.

Fahey contends that she "would not have purchased the Product had [she] understood the true flavor composition and taste of the Product," or would have paid less than what she did for it. *Id.* ¶¶ 13, 128. Fahey also alleges that she "would purchase the Product again in the future if the Product were remedied to reflect Defendant's labeling and marketing claims for it." *Id.* ¶ 13. Fahey brings this class action on behalf of herself and others similarly situated, and makes two claims under California's Unfair Competition Law ("UCL"), one claim under California's False and Misleading Advertising Law ("FAL"), and one claim under California's Consumer Legal Remedies Act, ("CLRA"). *Id.* ¶¶ 110-53. On October 3, 2020, Fahey sent Whole Foods a CLRA Notice via certified mail that provided Whole Foods with notice of the alleged misconduct and requested that it cure the misconduct within 30 days pursuant to Cal. Civ. Code § 1782. *Id.* ¶¶ 149-51. Whole Foods now moves to dismiss the FAC. ECF No. 21. Fahey filed an opposition to this motion, ECF No. 28, to which Whole Foods replied, ECF No. 31.

**II.    JURISDICTION**

This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d).

**III.   LEGAL STANDARD**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and

2

1    the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (ellipsis in
2    original) (quotation marks omitted). While a complaint need not contain detailed factual
3    allegations, facts pleaded by a plaintiff must be "enough to raise a right to relief above the
4    speculative level." *Twombly*, 550 U.S. at 555. "To survive a [Rule 12(b)(6)] motion to dismiss, a
5    complaint must contain sufficient factual matter that, when accepted as true, states a claim that is
6    plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "A
7    claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw
8    the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While this
9    standard is not a probability requirement, "[w]here a complaint pleads facts that are merely
10   consistent with a defendant's liability, it stops short of the line between possibility and plausibility
11   of entitlement to relief." *Id.* (quotation marks omitted). In determining whether a plaintiff has met
12   this plausibility standard, the Court must "accept all factual allegations in the complaint as true
13   and construe the pleadings in the light most favorable" to the plaintiff. *Knievel v. ESPN*, 393 F.3d
14   1068, 1072 (9th Cir. 2005). "Dismissal under Rule 12(b)(6) is appropriate only where the
15   complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."
16   *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (citation omitted).

**IV.   DISCUSSION**

18   This lawsuit is one of many class action complaints filed across the country regarding food
19   manufacturers' use of the term "vanilla" in their labels or advertising. *See, e.g.*, *Clark v. Westbrae*
20   *Natural, Inc.*, No. 20-cv-03221-JSC, 2020 WL 7043879 (N.D. Cal. Dec. 1, 2020) ("*Clark I*");
21   *Cosgrove v. Blue Diamond Growers*, No. 19-cv-8993-VM, 2020 WL 7211218 (S.D.N.Y. Dec. 7,
22   2020); *Zaback v. Kellogg Sales Co.*, No. 20-cv-00268-BEN, 2020 WL 6381987 (S.D. Cal. Oct.
23   29, 2020). Most notably, this suit contains many of the same allegations – and is brought by some
24   of the same counsel – as *Clark v. Westbrae Natural Inc.*, a case that has now been dismissed by
25   another court in this district. No. 20-cv-3221-JSC, 2021 WL 1580827 (N.D. Cal. Apr. 22, 2021)
26   ("*Clark II*"). *Clark* involved very similar claims – based on allegations that also included a
27   consumer survey and scientific testing – regarding an "organic unsweetened vanilla soymilk."
28   *Clark I*, 2020 WL 7043879, at *1. This Court finds the reasoning of the *Clark* court to be

3

persuasive and correct, and largely follows that court's analysis in concluding that Fahey has failed to state a claim under the FAL, CLRA, or UCL.

### A. Deception Claims

The Court first considers whether Fahey has plausibly alleged that reasonable consumers are deceived by the use of "vanilla" on the Product's label.

Fahey argues that "the term 'Vanilla' and the absence of any qualifying terms" causes "consumers and [Fahey to] expect[] the Product to have a vanilla taste, exclusively or predominantly from vanilla beans." FAC ¶ 45. Fahey does not dispute that natural vanilla "was actually in the product[]," but explains that the focus of her lawsuit is the misleading "proportion of a particular ingredient" – vanilla from vanilla beans – "that was actually in the product." ECF No. 28 at 19. Fahey contends that scientific testing reveals "that the predominant, if not exclusive, source of the vanilla flavor is from added vanillin not from the vanilla plant." *Id.* at 12. Fahey also relies on results of "a consumer survey commissioned by plaintiff's counsel," FAC ¶ 46, to support her contention that a reasonable consumer – as reflected by 71 percent of respondents to the survey – "believed the Product's vanilla taste comes from the vanilla plant," ECF No. 28 at 17.

"False advertising claims under the FAL, the CLRA, and the fraudulent and unfair prongs of the UCL are governed by the 'reasonable consumer' standard." *Maxwell v. Unilever U.S., Inc.*, No. 5:12-CV-01736-EJD, 2018 WL 1536761, at *5 (N.D. Cal. Mar. 28, 2018) (citing *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)). "Under this standard, [Fahey] must show that 'members of the public are likely to be deceived.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quoting *Williams*, 552 F.3d at 938). The reasonable consumer standard "requires more than a mere possibility" that Whole Food's use of the term "vanilla" on the Product "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Id.* (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003)). Rather, it must be "probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Lavie*, 105 Cal. App. 4th at 508.

First, the Court holds – as many district courts across the country have – that the word "vanilla" without any qualifying terms does not lead a reasonable consumer to believe that the

4

vanilla flavor came exclusively or predominantly from vanilla beans. *See, e.g.*, *Dashnau v. Unilever Mfg. (US), Inc.*, No. 19-CV-10102 (KMK), 2021 WL 1163716, at *6 (S.D.N.Y. Mar. 26, 2021) ("[T]he SDNY Vanilla Cases have concluded that the word 'vanilla,' when used to describe a product such as ice cream or almond milk, describes a flavor, not a particular ingredient."); *Barreto v. Westbrae Nat., Inc.*, No. 19-CV-9677 (PKC), 2021 WL 76331, at *4 (S.D.N.Y. Jan. 7, 2021) ("Like the product's labeling in [three other New York district court cases], Westbrae's product makes a representation regarding its flavor and does not imply or represent the source of that flavor comes exclusively or predominantly from natural vanilla."); *Harris v. McDonalds*, No. 20-cv-06533-RS ECF No. 40 at 3 (N.D. Cal. Mar. 24, 2021) ("[P]articularly in the case of 'vanilla'—a word that can be used to mean 'plain'—it is not obvious or indisputable what 'a significant portion of the general consuming public or of targeted consumers acting reasonably in the circumstances,' would believe.").[1]

This conclusion is bolstered by the fact that the Product's label does not include any phrases or images that would lead a reasonable consumer to understand "vanilla" to be referencing an ingredient rather than a flavor. *See, e.g.*, *Dailey v. A&W Concentrate Co.*, No. 19-CV-768 (BMC), 2021 WL 777114, at *1 (N.D. Cal. Feb. 16, 2021) (holding that plaintiffs plausibly alleged that a label with "made with aged vanilla" implies that the product's vanilla flavor is derived predominantly from the vanilla plant); *Zaback v. Kellogg Sales Co.*, No. 3:20-cv-00268-BEN-MSB, 2020 WL 6381987, at*1 (S.D. Cal. Oct. 29, 2020) (considering claims based on "a vignette of a vanilla plant with only the word 'vanilla' below the vignette"); *but see Steele v. Wegmans Food Markets, Inc.*, 472 F. Supp. 3d 47, 50 (S.D.N.Y. 2020) (holding that a label representing that vanilla ice cream was made with "natural vanilla flavor" did not imply that it was flavored predominantly with the vanilla bean because the "container does not mention vanilla beans, or bean extract, and even if vanilla or bean extract is not the predominant factor, if the sources of the flavor are natural, not artificial, it is hard to see where there is deception"). Fahey

---

[1] Fahey encourages the Court to avoid "the supposed 'wisdom of crowds.'" ECF No. 28 at 29. The Court recognizes that these orders from other district courts are not binding or precedential. However, the Court finds their analyses to be persuasive and their conclusions to be correct.

does not allege that any part of the Product's packaging could lead a consumer to believe that the word "vanilla" on the label referred to an ingredient rather than the flavor of the almond milk.

In addition, the Court notes that Fahey asserts that "Whole Foods charges a price premium for its Vanilla Almondmilk," FAC ¶ 5, but fails to state how much the Product costs. The FAC also does not allege how comparable products are priced or why else a reasonable consumer would find the Product's cost to include a "premium." Thus, to the extent that Fahey relies on the price of the Product to support her allegation that a reasonable consumer would expect the Product's vanilla flavor to come exclusively or predominantly from vanilla beans, the FAC does not support such a finding.[2]

Second, the Court holds that the survey data does not save Fahey's false advertising claims. Fahey alleges that "a consumer survey commissioned by plaintiff's counsel [found] that over seventy-one (71) percent of consumers expected the Product's vanilla tase 'comes from vanilla beans' from the vanilla plant." FAC ¶ 46. The FAC does not provide any information about how the survey was conducted, what questions were asked, or how many consumers participated in the survey. Another court in this district concluded that similarly vague allegations of consumer survey data did not save a plaintiff's deceptions claims. *See Clark I*, 2020 WL 7043879, at *4 ("Plaintiff does not even allege what the survey asked so it is impossible to infer that notwithstanding the commonsense interpretation of 'vanilla' as not implying flavored exclusively with vanilla bean, [p]laintiff has plausibly alleged that it does. At bottom, the vague survey allegation does not make plausible that reasonable consumers understand that 'vanilla' soymilk is flavored exclusively with vanilla bean."). The Court notes that even if Fahey provides more information about how this survey was conducted, the Court is likely to conclude that "adding surveys cannot alone salvage implausible claims." *Yu v. Dr Pepper Snapple Grp., Inc.*,

---

[2] Whole Foods contends that it "sells the unflavored version of 365 Almondmilk for the exact same price [as the vanilla version]." ECF No. 21 at 9. The Court cannot consider this contention because, subject to exceptions that are not present here, "the scope of review on a motion to dismiss for failure to state a claim is limited to the contents of the complaint." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). The contention also is not supported by evidence. If the assertion is true, however, it further undercuts Fahey's contention that the price of 365 Vanilla Almondmilk signals anything about the degree to which the vanilla flavor comes from vanilla beans.

No. 18-CV-6664, 2020 WL 5910071, at *5 (N.D. Cal. Oct. 6, 2020). *See also Clark II*, 2021 WL 1580827, at *2-3 (following two other courts that "considered nearly identical surveys by the same counsel" to find that the survey was flawed and did "not contribute enough to render the claims plausible" (citation omitted)); *Pichardo v. Only What You Need, Inc.*, No. 20-cv-0493 (VEC), 2020 WL 6323775, at *3-6 (S.D.N.Y. Oct. 27, 2020) (holding that a reasonable consumer would not believe a label with "smooth vanilla" means that the vanilla flavor comes exclusively or predominantly from the vanilla bean despite results of a consumer survey conducted by plaintiffs' counsel).

Finally, the cases relied on by Fahey are unavailing because they involved labels that had far greater potential to be misleading than the word "vanilla." For example, many of the cases considered packaging that had pictures of fruit or other phrases that implied the use of certain ingredients rather than the flavor of a product. *See Williams*, 552 F.3d at 938 (label of fruit snacks that included the phrase "made with fruit juice" and images of fruits that were not ingredients was potentially deceptive); *Mantikas v. Kellogg Co.*, 910 F.3d 633, 637 (2d Cir. 2018) (Cheez-Its crackers labeled as "whole grain" could be misleading because it falsely implied that the predominant ingredient was whole grain flour, not white flour); *Henderson v. Gruma Corp.*, No. 10-cv-4173-AHM, 2011 WL 1362188 at *12 (C.D. Cal. Apr. 11, 2011) (packaging displaying pictures of avocados and the word "GUACAMOLE" was potentially deceptive because the product contained less than 2% avocado powder); *Kosta v. Del Monte Corp.*, No. 12-cv-1722-YGR, 2013 WL 2147413, at *12 (N.D. Cal. May 15, 2013) (a reasonable consumer could find "a plastic container of fruit in the refrigerated produce section labeled 'must be refrigerated' and identifying no ingredients on the label as chemical preservatives" to be deceptively advertised as fresh cut fruit). These cases are readily distinguishable from the facts presented here and do not affect the outcome of this case.

Fahey also attempts to distinguish the non-binding vanilla cases discussed above by pointing to her allegations that the Product contains undisclosed artificial flavors. ECF No. 28 at 28-30. Fahey alleges that "the Product contains undisclosed artificial flavors – maltol and piperonal" and "should be labeled as 'artificially flavored'" because "it contains vanillin not from

7

vanilla beans." FAC ¶¶ 59, 69; *see also id.* ¶¶ 59-62. However, when another district court considered the same or similar allegations, it dismissed a case involving vanilla almond milk because it found allegations regarding purportedly artificial vanillin, maltol, and piperonal to be insufficient because the plaintiff failed to allege that the non-vanilla flavors were artificially, as opposed to naturally, derived. *Wynn v. Topco Assocs., LLC*, No. 19-CV-11104 (RA), 2021 WL 168541, at \*5-6 (S.D.N.Y. Jan. 19, 2021). *See also Barreto*, 2021 WL 76331, at \*4 ("Although the [scientific testing] detected maltol, it contains no finding whether the maltol was derived artificially or naturally."). The same is true here. The Court therefore holds that "[a]bsent any factually substantiated allegations that the vanillin, maltol, and piperonal in [Whole Food's] product are not derived from natural sources," Fahey has "failed to allege the presence of artificial flavors, and [her] claim that the ingredient list makes a materially misleading omission thus fails." *Id.* at \*6. For the same reason, this case cannot be distinguished from the numerous cases in which district courts have held that a label including the word "vanilla" without any qualifying terms does not mislead a reasonable consumer.

Accordingly, Fahey has failed to plausibly allege that a reasonable consumer would expect that almond milk labelled as "vanilla" derives its vanilla flavor exclusively or predominantly from vanilla bean and her deception claims under the FAL, the CLRA, and the fraudulent and unfair prongs of the UCL must be dismissed. Out of an abundance caution, the Court grants leave to amend. *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) ("[A] district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts." (quotation marks and citations omitted)).

### B. UCL Unlawful Business Practice Claim

Whole Foods contends that Fahey's failure to satisfy the reasonable consumer test is also grounds to dismiss her claim under the unlawful conduct prong of the UCL. ECF No. 21 at 17. However, courts in this district have recognized that "[t]he reasonable consumer test is a requirement under the UCL's unlawful prong only when it is an element of the predicate violation." *Maxwell*, 2018 WL 1536761, at \*5 (quoting *Bruton v. Gerber Prod. Co.*, 703 Fed. App'x 468, 472 (9th Cir. 2017)). Here, Plaintiff's unlawful claim is based on Whole Food's

alleged violation of the Federal Food, Drug, and Cosmetic Act ("FFDCA") and its implementing regulations and the California Sherman Food, Drug, and Cosmetic Law ("Sherman Act"), which include no requirement that the public be likely to experience deception. FAC ¶¶ 111-27.[3]

The Court first considers Whole Foods' argument that Fahey's claims based on the Sherman Act are preempted by the FDCA. ECF No. 21 at 4. Fahey responds to this argument by asserting that "Defendant claims that Plaintiff is attempting to [add] additional requirements inconsistent with the FDCA regulations. . . . As explained below, the regulations Defendant claims do not apply are, in fact, applicable, and Plaintiff's claims are not preempted." ECF No. 28 at 15 (citation omitted). The parties therefore do not dispute that Fahey's Sherman Act claims survive only if there is a violation of the FDCA regulations. *See also* 21 U.S.C. § 343-1(a) ("no State . . . may directly or indirectly establish . . . any requirement for a food which is the subject of a standard of identity established under section 342 of this title that is not identical to such standard of identity"); *Salazar v. Honest Tea Inc.*, 74 F. Supp. 3d 1304 (E.D. Cal. 2014) (holding that "because plaintiff's allegations [did] not show a violation of the FDCA, plaintiff's state laws claims [were] preempted; if allowed to proceed, the state law claims would impose liability inconsistent with the FDCA.").

Accordingly, Fahey's claim under the unlawful conduct prong of the UCL depends on her allegations that the Product's labelling violates 21 C.F.R. § 101.22(i)(1). Section 101.22 is titled "Foods; labeling of spices, flavorings, colorings and chemical preservatives," and provides that:

> (i) If the label, labeling, or advertising of a food makes any direct or indirect representations with respect to the primary recognizable flavor(s), by word, vignette, e.g., depiction of a fruit, or other means, or if for any other reason the manufacturer or distributor of a food wishes to designate the type of flavor in the food other than through the statement of ingredients, such flavor shall be considered the characterizing flavor and shall be declared in the following way:
>
> (1) If the food contains no artificial flavor which simulates, resembles or reinforces the characterizing flavor, the name of the food on the principal display panel or panels of the label shall be accompanied by

---

[3] Fahey's unlawful claim based on violations of the FAL and CLRA fail because the Court has dismissed the predicate claims, as discussed above. *See Krantz v. BT Visual Images, LLC*, 89 Cal. App. 4th 164, 178 (2001) (holding that UCL claims under the unlawful prong "stand or fall depending on the fate of the antecedent substantive causes of action.").

> the common or usual name of the characterizing flavor, e.g., "vanilla", in letters not less than one-half the height of the letters used in the name of the food, except that:
>
> (i) If the food is one that is commonly expected to contain a characterizing food ingredient, e.g., strawberries in "strawberry shortcake", and the food contains natural flavor derived from such ingredient and an amount of characterizing ingredient insufficient to independently characterize the food, or the food contains no such ingredient, the name of the characterizing flavor may be immediately preceded by the word "natural" and shall be immediately followed by the word "flavored" in letters not less than one-half the height of the letters in the name of the characterizing flavor, e.g., "natural strawberry flavored shortcake," or "strawberry flavored shortcake".
>
> (ii) If none of the natural flavor used in the food is derived from the product whose flavor is simulated, the food in which the flavor is used shall be labeled either with the flavor of the product from which the flavor is derived or as "artificially flavored."
>
> (iii) If the food contains both a characterizing flavor from the product whose flavor is simulated and other natural flavor which simulates, resembles or reinforces the characterizing flavor, the food shall be labeled in accordance with the introductory text and paragraph (i)(1)(i) of this section and the name of the food shall be immediately followed by the words "with other natural flavor" in letters not less than one-half the height of the letters used in the name of the characterizing flavor.

21 C.F.R. § 101.22(i)(1). "As relevant here, this Section states that a manufacturer can label its product as a 'vanilla' product so long as it contains no artificial ingredients that provide the vanilla flavor, although there are certain exceptions." *Clark II*, 2021 WL 1580827, at *5.

Fahey argues that Whole Foods has not complied with the minimum disclosure requirements articulated in 101.22(i)(1) because the Product's label must include either the phrase "artificially flavored" or "with other natural flavor." ECF No. 28 at 15-16. Whole Foods contends that the 365 Vanilla Almondmilk does not include artificial flavoring and that the "FAC does not allege sufficient facts to infer either: 1) that the amount of vanilla extract in the product is insufficient to supply the vanilla taste; or 2) that the organic natural flavors simulate, resemble or reinforce the vanilla taste (as opposed to supplying almond flavor, smoothness, thickness, aroma or some other attribute of the 365 Almondmilk taste profile)." ECF No. 31 at 19. The Court finds Whole Foods' second argument to be unsupported. *See, e.g.*, FAC ¶ 52 ("artificial vanilla flavor which provides much of the Product's vanilla taste").

1  However, the Court nevertheless holds that the FAC has not pleaded a violation of the
2  FDCA.  First, Fahey has not alleged a violation of § 101.22(i)(1)(ii) because the FAC does not
3  allege that none of the natural flavor used in the Product is derived from vanilla beans. *See, e.g.*,
4  *id.* at ¶ 50 ("the Product contains *more* non-vanilla flavor than flavor from vanilla beans"
5  (emphasis in original)).  Second, Fahey has not alleged a violation of § 101.22(i)(1)(iii).  "This
6  section means that if, for example, a product does not contain enough real vanilla to independently
7  characterize a product's vanilla flavor (hence, the product falls within (i)(1)(i)), *and* the product
8  contains other natural flavors which simulate, resemble or reinforce the vanilla flavor, *then* the
9  label must comply with (i)(1)(i) and have the word 'natural' precede 'vanilla' *and* it must also say
10 'with other natural flavor' after the name of the food." *Clark II*, 2021 WL 1580827, at *6.  Fahey
11 has not adequately alleged that the amount of natural vanilla is insufficient to independently
12 characterize the product.  Her allegations rely on the results of scientific testing that demonstrate
13 that "the Product has an excess of vanillin," but this testing – which lists "vanillin" among a list of
14 other compounds found in the Product – does not adequately support Fahey's conclusory
15 allegation that the vanillin in the 365 Vanilla Almondmilk is "from non-vanilla sources."  FAC ¶
16 64.  *See Clark II*, 2021 WL 1580827, at *5-6 ("Plaintiff conceded that vanillin is or can be derived
17 from the vanilla bean and that Plaintiff has no good faith basis for alleging that the vanillin in the
18 Product is not from the vanilla bean.").  Absent support for her allegation that the vanillin in the
19 Product is "from non-vanilla sources," Fahey has failed to allege that the amount of natural
20 vanilla in the 365 Vanilla Almondmilk is insufficient to independently characterize the product.
21 Therefore, Fahey's claim under the UCL's unlawful prong must be dismissed.  Out of an
22 abundance caution, the Court grants leave to amend.  *See Lopez v. Smith*, 203 F.3d 1122, 1127.

## CONCLUSION

24 For the foregoing reasons, the Court grants Whole Food's motion to dismiss Fahey's FAC.
25 Because the Court has concluded that Fahey's FAC fails to state a claim, it need not and does not
26 address Whole Food's restitution arguments.  Fahey is granted leave to amend all claims, to the
27 extent that it can do so without contradicting its prior pleadings and representations or the rulings
28 / / /

11

in this order. An amended complaint is due 21 days from the date of this order. Failure to timely file an amended complaint will result in dismissal of the claims with prejudice.

The case management conference scheduled for July 6, 2021 is continued to August 31, 2021 at 2:00 p.m. An updated case management statement is due August 24, 2021.

**IT IS SO ORDERED.**

Dated: June 30, 2021

_____
JON S. TIGAR
United States District Judge